# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕱𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖑𝖆𝖎𝖒𝖘

## Nos. 15-1252L, 15-1253L, 15-1268L
### Filed: April 10, 2018

| | |
|---|---|
| * * * * * * * * * * * * * * * | * |
| **JOHN ARNOLD, et al.,** | * |
| **FLYING S. LAND CO., et al.,** | * |
| **JOE L. DAWSON, et al.,** | * |
| | * |
| **Plaintiffs,** | * |
| **v.** | * |
| | * |
| **UNITED STATES,** | * |
| | * |
| **Defendant.** | * |
| * * * * * * * * * * * * * * | * |

**Fifth Amendment Taking; Rails to Trails; Fee Simple; Easement; Deed Interpretation; Adjacency; Motion to Strike.**

**R. Deryl Edwards**, Law Offices of R. Deryl Edwards, Joplin, MO, for plaintiffs in Arnold, et al. v. United States, Case No. 15-1252L.

**Thomas S. Stewart**, Stewart, Ward & McCulley, LLC, Kansas City, MO, for plaintiffs in Flying S. Land Co., et al. v. United States, Case No. 15-1253L. With him was **Elizabeth G. McCulley**, Stewart, Ward & McCulley, LLC, Kansas City, MO and **Steven M. Wald** and **Michael Smith**, Stewart, Ward & McCulley, LLC, St. Louis, MO.

**Megan S. Largent**, Arent Fox, LLP, Clayton, MO, for plaintiffs in Dawson, et al. v. United States, Case No. 15-1268L. With her was **Mark F. Hearne**, **Lindsay S.C. Brinton**, and **Stephen S. Davis,** Arent Fox, LLP, Washington, D.C.

**Davené D. Walker**, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant. With her was **Jeffrey H. Wood**, Acting Assistant Attorney General, Environment and Natural Resources Division, Washington, D.C.

## O P I N I O N

### HORN, J.

In these Rails-to-Trails cases, plaintiffs are landowners in Kansas and Nebraska who allege that they are entitled to receive just compensation under the Fifth Amendment to the United States Constitution because the United States government allegedly effected takings of their reversionary property interests through operation of the National Trails System Act, 16 U.S.C. § 1241 et seq. (2012) (the Trails Act). Plaintiffs allege that when the United States Surface Transportation Board (STB) issued a Notice of Interim

Trail Use (NITU) on October 22, 2015, related to the railroad line allegedly adjacent and near to plaintiffs' property, defendant preempted plaintiffs' state-law right to regain full, unencumbered title to their property. Although plaintiffs' claims in all three cases relate to the same railroad line in Harlan County, Nebraska, and Norton, Decatur, and Phillips Counties, Kansas, plaintiffs filed their takings claims as three separate cases, represented by three separate counsels of record, in the United States Court of Federal Claims. The cases, which each include multiple types of plaintiffs, are captioned as <u>John Arnold, et al. v. United States</u>, No. 15-1252L (<u>Arnold</u>),[1] <u>Flying S. Land Co., et al. v. United</u>

---

[1] The plaintiffs in <u>Arnold</u> are as follows: John Arnold and Susan Bolek, B & D Farm, LLC (B & D Farm), Mark and Shayla Bailey, H. Drake and Karen Gebhard, Cecilia (Griffin) Hillebrand, Jackson Irrevocable Farm Trust, Lee Martin Revocable Trust, Lee Martin, Bernice Martin, Harold and Kristelle Mizell, Rodney and Tonda Ross, Robert Strevey, Ricky Temple, L & S Tubbs Family, L.P. (L & S Tubbs Family), John C. and Joann Tweed Trusts, Edwin and Phyllis Yeater, Ivan and Cathy Bohl Living Trust, and Morlock Children's Trust. Counsel of record for the <u>Arnold</u> plaintiffs is R. Deryl Edwards of the Law Offices of R. Deryl Edwards.

At the beginning of this litigation, <u>Arnold</u> plaintiffs B & D Farm, LLC, was pursuing a takings claim for two parcels, parcel numbers 136-14-0-00-00-001-00-0 and 136-14-0-00-00-002-00-0, as was H. Kent and Diana Euhus Living Trusts, parcel numbers 141-01-0-30-12-011 and 141-01-0-30-12-012. Similarly, <u>Arnold</u> plaintiffs Royce and Vicky Leitner were identified in the complaint and alleged that the government effected a temporary taking of their property interest.

Subsequently, plaintiffs in <u>Arnold</u> voluntarily moved to dismiss the claim for B & D Farm, LLC parcel number 136-14-0-00-00-001-00-0, as well as the claim for Royce and Vicky Leitner, on July 12, 2017, which the court granted, without prejudice, on August 16, 2017. On January 4, 2018, plaintiffs in <u>Arnold</u> voluntarily moved to dismiss the two claims of H. Kent and Diana Euhus Living Trusts, which the court granted, without prejudice, on January 10, 2018.

States, No. 15-1253L (Flying S. Land Co.),[2] and Joe L. Dawson, et al. v. United States, No. 15-1268L (Dawson).[3]

---

[2] The plaintiffs in Flying S. Land Co. are as follows: Flying S. Land Company, Flying S. Partnership, Jonathan and Karen Cozad, Dale and Lenora Soderland, William C. and Bertha G. Rea, Oberlin Concrete Co., Judith E. Nelson, Jerry G. and Connie K. Cox, J & C Partnership LP, James and Janice Bricker, Clayton and Catherine Cox, Garth Gebhard, Paul and Tammy Vincent, James Holterman, and Orville & Pauline Holterman Revocable Trust, Sauvage Gas Service, Inc., Culbertson Farms, LLC, Silverstone & Dake's Canal, Inc., Dolores M. Koerperich Revocable Living Trust, c/o Dolores M. Koerperich, Gerry N. and Theresa M. Tally, Perry and Ila Mae Schelling, Leo and Carolyn Zodrow, Edward Braun, Cecil and Lavon Wright, GRS Revocable Trust, Craig E. Ingram and Genie L. Ingram Living Trusts, AG Valley Cooperative, Arnold K. Graham, Gilbert T. Graham, Gayle Mourin, Joan G. Poulus, and Richard and Robert McChesney. Counsel of record for the Flying S. Land Co. plaintiffs is Thomas S. Stewart of Stewart, Wald & McCulley LLC.

At the time the complaint was filed in Flying S. Land Co., the Edna M. Boettger Trust was identified as a plaintiff in the case, however, at plaintiffs' request, the court dismissed with prejudice the claim of the Edna M. Boettger trust on January 24, 2017. Kevin L. Tubbs Living Trust c/o Kevin L. and Miriam L. Ostmeyer Tubbs also was identified as a plaintiff in the complaint filed in Flying S. Land Co. On January 12, 2018, plaintiffs in Flying S. Land Co. moved to voluntarily dismiss the claim of Kevin L. Tubbs Living Trust c/o Kevin L. Tubbs and Miriam L. Ostmeyer Tubbs, which the court granted, without prejudice, on February 7, 2018.

Additionally, Flying S. Land Co. plaintiffs have identified plaintiffs Arnold K. Graham, Gilbert T. Graham, Gayle Mourin, and Joan G. Poulus (Arnold K. Graham, et al.) as the owners of parcel 074-059-31-0-00-00-001.00-0. Flying S. Land Co. plaintiffs have identified plaintiff Arnold K. Graham as the sole owner of parcel 074-059-31-0-00-00-004.00-0.

[3] The plaintiffs in Dawson are as follows: Joe L. Dawson, Conrad C. Cox and Mary R. Cox, trustees of the Conrad C. Cox Trust No. 1 and the Mary R. Cox Trust No. 1, Lloyd E. and Pamela Y. Edgett, G & M Properties, LP (G & M Properties), Bruce G. Guinn, Jr., Duane R. and Darlene McEwen, M. Lee and Angela Juenemann, trustees of the M. Lee Juenemann Living Trust and Angela Juenemann Living Trust (M. Lee and Angela Juenemann), Shirley Kats and Derek T. Kats, trustees of the Shirley Kats Revocable Trust and the Derek Kats Revocable Trust, Rosemary L. Mathes, Duane R. Mathes and Darlene McEwen, Carol K. Ross and Kay L. Lee, trustees of the Carol K. Ross Trust No. 1 (Carol K. Ross and Kay L. Lee), Linda J. Tomasch, John E. Bremer, David G. Bremer, and Larry L. and Iris L. Smith, trustees of the Larry L. Smith and Iris L. Smith Revocable Living Trust. Counsel of record for the Dawson plaintiffs is Meghan S. Largent of Arent Fox, LLP.

At the time plaintiffs in Dawson initiated Case No. 15-1268L, the complaint identified as plaintiffs Eric Brown, trustee for the Ackerman Trust, Mark and Kathryn Christensen,

# FINDINGS OF FACT

The Nebraska, Kansas & Colorado Railway (NKCR) previously operated a railroad line that extended, in relevant part, approximately 57.31 miles through Harlan County, Nebraska, and Norton, Decatur, and Phillips Counties in Kansas. Plaintiffs are landowners in Harlan County, Nebraska, and Norton, Decatur, and Phillips Counties, Kansas.

On May 14, 2015, NKCR proposed to the STB its intent to abandon 57.31 miles of the railroad line through Nebraska and Kansas, specifically (1) from milepost 3.35 near Orleans, Nebraska to milepost 29.84 at Almena, Kansas; (2) from milepost 47.23 at Reager, Kansas to milepost 78.05 at Oberlin, Kansas; and (3) the Norton Spur in Norton, Kansas. The railroad formalized its proposed abandonment of these segments on June 12, 2015, when it filed a verified Notice of Exemption with the STB. In its Notice of Exemption, the NKCR certified that no traffic had been handled over the railroad line segments for more than two years. The STB issued an abandonment exemption on August 7, 2015, giving the railroad until August 2016 to consummate abandonment. Subsequently, on September 2, 2015, Sunflower Rails-to-Trails Conservancy (Sunflower) filed a statement of willingness to assume financial responsibility over the portion of the rail line that NKCR sought to abandon. On September 14, 2015, Sunflower filed a request with the STB for trail use over the railroad segments that NKCR had proposed for

---

Robert Duane, Leanna Henry, and Stacy A. Lambert, Stephen and Rhonda Mees, and Christina and Nye Pelton. Plaintiffs moved to voluntarily dismiss these plaintiffs, without prejudice, on July 28, 2017, and the court granted the motion on August 16, 2017.

Defendant originally disputed whether <u>Dawson</u> plaintiff Rosemary L. Mathes was the sole owner of parcel 069-132-03-0-00-03-001-00-0-01. On July 20, 2017, <u>Dawson</u> plaintiffs joined <u>Dawson</u> plaintiffs Duane and Darlene McEwen to Rosemary L. Mathes' claim in its Fifth Amended Complaint and also asserted a separate claim by Duane and Darlene McEwen against defendant. Plaintiffs submitted to the court an affidavit of equitable interest filed with the Norton County Recorder of Deeds' Office by Duane and Darlene McEwen in June 2014, which indicated that the McEwens and Rosemary L. Mathes had entered into an agreement for the purchase and sale of real estate. The agreement provided the Rosemary L. Mathes was the fee owner of tract one in parcel 069-132-03-0-00-03-001-00-0-01, subject to the McEwens' equitable interest. Additionally, plaintiffs submitted to the court a joint tenancy warranty deed entered into by Rosemary L. Mathes and Duane and Darlene McEwen on June 13, 2014. The joint tenancy warranty deed conveyed to the McEwens fee interest in tract two of parcel 069-132-03-0-00-03-001-00-0-01. Defendant has not submitted any evidence to the court disputing the interest of <u>Dawson</u> plaintiffs Rosemary L. Mathes and Duane and Darlene McEwen in parcel 069-132-03-0-00-03-001-00-0-01 and states "there is also no dispute as to whether the remaining Plaintiffs owned their properties on the date that the STB issued the NITU" in its motion for summary judgment filed in <u>Dawson</u> on August 18, 2017. For purposes of clarity, the court refers to the joined claim of Rosemary L. Mathes and Duane and Darlene McEwen as "Rosemary L. Mathes" and to the McEwens' separate claim as "Duane and Darlene McEwen."

abandonment. NKCR filed a notice on September 24, 2015 that it was willing to negotiate with Sunflower concerning the rail line.

On October 22, 2015, the STB issued a NITU, which invoked Section 1247(d) of the Trails Act Amendment of 1983, 16 U.S.C. § 1247(d), and authorized the railroad to negotiate a trail use agreement with Sunflower. Although the NITU was originally for a period of 180 days, and initially expired on April 19, 2016, Sunflower requested, and NKCR did not oppose, an extension of the negotiation period. The STB issued a decision on April 14, 2016, extending the negotiation period until October 16, 2016. Thereafter, Sunflower requested, but NKCR opposed, a second extension. The STB did not grant any further extensions, and the NITU expired on October 16, 2016. On November 17, 2016, the STB issued a decision providing that if NKCR chose to abandon its rail line, it must file a notice of consummation by December 15, 2016. On December 14, 2016, NKCR requested an extension of its consummation deadline to March 15, 2017, and the STB granted NKCR's request on December 15, 2016.  NKCR requested another extension of its consummation deadline on February 16, 2017, which the STB granted on March 3, 2017, thereby extending NKCR's deadline to consummate abandonment of the rail line to September 11, 2017.  On September 11, 2017, the STB granted NKCR's request to extend the deadline for NKCR to consummate its abandonment of the rail line from September 11, 2017 to March 1, 2018. NKCR submitted an additional extension of time to consummate abandonment on February 23, 2018, and, on February 28, 2018, the STB granted NKCR an extension of time until March 1, 2019 to consummate abandonment of the railroad corridor. NKCR and Sunflower have not reached a trail use agreement, and, as of the date of this opinion, NKCR has not filed a notice of consummation of abandonment.

The parties in <u>Arnold</u>, <u>Dawson</u>, and <u>Flying S. Land Co.</u> have been unable to reach stipulations regarding title issues, including fee or easement, as well as issues of adjacency.

## Ownership Disputes

In <u>Flying S. Land Co.</u>, the parties dispute ownership with regard to plaintiff United Methodist Church. Defendant contends that <u>Flying S. Land Co.</u> plaintiff United Methodist Church has not presented adequate evidence to establish its ownership of the property at issue on October 22, 2015, the date the NITU was issued. Plaintiffs allege that United Methodist Church acquired the property at issue upon the death of the previous owner, Loren Gill Sharp. According to plaintiffs, Isiah Sharp devised the property to his son, Loren Gill Sharp, and plaintiffs argue that in probate documents submitted to the court, Isiah Sharp intended to convey the property to Loren Gill Sharp, and, if Loren Gill Sharp did not have children, then the property would pass to the Methodist Episcopal Church at Norcatur, Kansas, upon the death of Loren Gill Sharp. Plaintiffs submit that Loren Gill Sharp died without children on March 8, 1960, and, therefore, title to the property was conveyed to United Methodist Church. In response, defendant argues that, even if Loren Gill Sharp died without children, plaintiffs have not established that <u>Flying S. Land Co.</u> plaintiff United Methodist Church ever acquired title to the property.

**Adjacency Disputes**

The parties have stipulated to many of the adjacency issues. The parties, however, dispute whether the following plaintiffs' properties are adjacent to the portion of the railroad corridor affected by the NITU: <u>Arnold</u> plaintiffs Mark and Shayla Bailey, Harold and Kristelle Mizell parcel 107-36-0-10-04-001,[4] Rodney and Tonda Ross' parcel 102-03-0-00-00-004.00-0 on the south side of the railroad corridor,[5] and Robert Strevey; <u>Flying S. Land Co.</u> plaintiffs Gerry and Theresa Tally parcel 020-141-01-0-30-20-010.00-0,[6] James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0,[7] Arnold K. Graham parcel 074-059-31-0-00-00-004.00-0,[8] J & C Partnership, Garth Gebhard, and Silverstone & Dake's Canal, Inc. parcels 074-056-24-0-20-01-002.00-0 and 074-056-24-

---

[4] <u>Arnold</u> plaintiffs Harold and Kristelle Mizell own two land parcels at issue in this case, parcels 107-36-0-10-04-001 and 069-151-01-0-00-00-003-00-0-01. Defendant only challenges the adjacency of parcel 107-36-0-10-04-001.

[5] <u>Arnold</u> plaintiffs Rodney and Tonda Ross own parcels on both the southern and northern sides of the railroad corridor. Defendant asserts that the Ross parcel 069-101-02-0-00-00-001-00-0-01 on the north side of the railroad corridor is bisected by a state highway, but defendant agrees that Ross parcel 069-101-02-0-00-00-001-00-0-01 is adjacent to the railroad corridor.

[6] As discussed below, <u>Flying S. Land Co.</u> plaintiffs Gerry and Theresa Tally own two parcels at issue. Defendant only challenges the adjacency of parcel 020-141-01-0-30-20-010.00-0.

[7] <u>Flying S. Land Co.</u> plaintiffs James and Janice Bricker own three parcels at issue in <u>Flying S. Land Co.</u>, parcel 020-124-18-0-00-09-004.00-0, parcel 020-124-18-0-00-03-001.00-0, and parcel 020-124-18-0-00-01-001.00-0. The parties only dispute the adjacency of parcel 020-124-18-0-00-03-001.00-0. The parties have stipulated that parcel 020-124-18-0-00-09-004.00-0 and parcel 020-124-18-0-00-01-001.00-0 are adjacent to the railroad corridor.

[8] <u>Arnold</u> plaintiff Arnold K. Graham owns two parcels at issue in the above-captioned case, parcel 074-059-31-0-00-00-001.00-0 and parcel 074-059-31-0-00-00-004.00-0. The parties only dispute the adjacency of parcel 074-059-31-0-00-00-004.00-0. The parties have stipulated parcel 074-059-31-0-00-00-001.00-0 is adjacent to a portion of the railroad corridor.

0-20-01-001.00-0;[9] and <u>Dawson</u> plaintiffs Conrad C. and Mary R. Cox Trusts No. 1 parcel 740-056-13-0-00-00-005.00-0.[10]

<u>Kansas State Highway 383</u>

Kansas State Highway 383 (K-383) runs between a segment of the railroad corridor and the following plaintiffs' properties: <u>Arnold</u> plaintiffs Rodney and Tonda Ross' parcel 102-03-0-00-00-004.00-0 on the south side of the railroad corridor; <u>Flying S. Land Co.</u> plaintiffs Arnold K. Graham parcel 074-059-31-0-00-00-004.00-0, J & C Partnership, Garth Gebhard, and Silverstone & Dake's Canal, Inc. parcels 074-056-24-0-20-01-002.00-0 and 074-056-24-0-20-01-001.00-0; and <u>Dawson</u> plaintiffs Conrad C. and Mary R. Cox Trusts No. 1 parcel 74-056-130-00-00-005-000. Plaintiffs contend that K-383 is an easement on these plaintiffs' properties, so these plaintiffs still own the underlying servient estate and there are no adjacency issues. Defendant disagrees and argues that the Kansas Department of Transportation (KDOT) owns the highway land in fee, so these plaintiffs' parcels are separated from the railroad right-of-way by the highway such that they are not adjacent to the railroad.

Based on submissions from the parties, it appears that the Kansas State Highway Commission acquired the land for a state highway in Phillips County, Kansas, through condemnation proceedings, however, it is not clear if the land for the state highway referenced in the records of the condemnation proceedings submitted to the court became K-383. Excerpts from the condemnation proceeding document are reproduced below, in pertinent part:

The State Highway Commission of the State of Kansas for its petition alleges:

1. That said State Highway Commission is a body corporate under the laws of the State of Kansas, with powers to lay out, establish, open, construct, improve and maintain highways for the State of Kansas.

---

[9] <u>Flying S. Land Co.</u> plaintiff Silverstone & Dake's Canal, Inc. owns six parcels of land at issue in <u>Flying S. Land Co.</u>, which are identified with different parcel numbers. Because each parcel implicates different issues, throughout the court's analysis, the court refers to the number of the parcel at issue. The parties have stipulated Silverstone & Dake's Canal, Inc. parcels 074-056-24-0-20-02-001-00-0, 260014100, 360004300, and 380012500 are adjacent to a portion of the railroad corridor.

[10] <u>Dawson</u> plaintiffs Conrad Cox and Mary Cox, Trustees of the Conrad Cox Trust No. 1 and the Mary Cox Trust No. 1, own two parcels at issue, parcels 74-044-180-0-00-00-03-00-0 and 74-056-130-00-00-005-00-0. The parties only dispute the adjacency of parcel 74-056-130-00-00-005-00-0 to the railroad corridor. In their partial motion to dismiss, counsel for <u>Dawson</u> plaintiffs indicates that plaintiffs are only moving for partial summary judgment "for the portion of the Cox Trust property that abuts and underlies the portion of the railroad right-of-way acquired by the Follett 'Right of Way' Deed," however, plaintiffs discuss both Cox Trust parcels at length in their briefs. As such, the court addresses plaintiffs' arguments with regard to both Cox Trust parcels.

2.  That said State Highway Commission desires to acquire in the name of the State of Kansas for the establishment, laying out, opening, construction, maintenance, improvement and drainage of the State Highway System in Phillips County, Kansas, certain lots and parcels of land situated in said county owned and described as follows:

[legal descriptions of lots and sections]

3.  That on the ___ day of _____, 193_, the State Highway Commission of Kansas, in regular session, found that in order to establish, lay out, open, construct, improve, maintain and drain the State Highway System in Phillips County, Kansas, it is necessary to acquire for such purposes the lots and parcels of land above described and ordered that said lots and parcels of land be acquired by the State Highway Commission for the State of Kansas by the exercise of the right of eminent domain, as provided by R.S. Supp. 1930, 68-413, as amended by Chapter 246, Laws of Kansas, 1931.

4.  That the State Highway Commission of Kansas, under and by virtue of R.S. Supp. 1930, 68-413, as amended by Chapter 246, Laws of Kansas, 1931, has the power to acquire in the name of the State of Kansas said lots and parcels of ground or interests or rights therein by the exercise of the right of eminent domain in accordance with the provisions of article 1, chapter 26, of the Revised Statutes of 1923.

WHEREFORE, the State Highway Commission of Kansas respectfully petitions that the Hon. E.E. Kite, Judge of the District Court of Phillips County, Kansas, to examine this petition and find that this petitioner has the power of eminent domain that said lands are necessary to said petitioner's lawful corporate purposes in the establishment, laying out, opening, construction, improving, maintenance and drainage of the State Highway System of Kansas, and that he appoint three disinterested householders of Phillips County, Kansas, to view and appraise such lands and parcels of ground; that such appraisers be ordered to take an oath to well and truthfully make such appraisal and to report their appraisal of each tract in writing under oath to said Judge;  that said report when so made be ordered filed with the Clerk of the District Court; that said Judge order that notice of the filing of this petition be given either personally or by registered mail to the lienholders of record of said lots and parcels of land, as required by Chapter 246, Laws of Kansas, 1931, and that when these proceedings are ended a record of said proceedings be filed with the Register of Deeds of said County and be recorded in the same manner as other conveyances of title.

(capitalization in original). The legal descriptions of some of the parcels described in this condemnation appear to correspond with the legal description of the property owned by <u>Flying S. Land Co.</u> plaintiffs J & C Partnership and Silverstone & Dake's Canal, Inc.

8

parcels 074-056-24-0-20-01-002.00-0 and 074-056-24-0-20-01-001.00-0 and Dawson plaintiffs Conrad C. and Mary R. Cox Trusts No. 1, but it is unclear whether the condemnation proceedings included the parcels owned by Arnold plaintiffs Rodney and Tonda Ross's parcel 102-03-0-00-00-004.00-0 and Flying S. Land Co. plaintiffs Arnold K. Graham parcel 074-059-31-0-00-00-004.00-0 and Garth Gebhard. Additionally, although it appears that the condemnation proceedings involved land for a state highway in Phillips County, Kansas, it is unclear if that state highway was K-383.

A chart created and emailed to defendant's counsel by an employee of KDOT identifies the plaintiffs' parcels that are allegedly separated from the railroad corridor by K-383. This Kansas Department of Transportation, employee-crafted chart indicates that it is KDOT's position that it holds fee title for all but one of the portions of K-383 adjacent to the plaintiffs' parcels at issue in these cases. This chart states that KDOT obtained this part of the state highway right-of-way by deed in 1935 and holds fee simple in these parcels.

Miscellaneous Adjacency Issues

The parties also have been unable to agree upon miscellaneous adjacency issues that are distinct from K-383 for the following plaintiffs: Arnold plaintiffs Mark and Shayla Bailey, Robert Strevey, and Harold and Kristelle Mizell parcel 107-36-0-10-04-001; and Flying S. Land Co. plaintiffs Gerry and Theresa Tally and James and Janice Bricker.

A road, W. Opelik Street, which is distinct from K-383, appears to run between the parcel owned by Arnold plaintiffs Mark and Shayla Bailey and the railroad corridor. Additionally, N. Decatur Street, which is also distinct from K-383, appears to run between both Arnold plaintiffs Robert Strevey parcel 107-36-0-10-04-002 and Harold and Kristelle Mizell parcel 107-36-0-10-04-001 and the railroad corridor.

The parties also dispute whether certain parcels belonging to Flying S. Land Co. plaintiffs Gerry and Theresa Tally and James and Janice Bricker are adjacent to the railroad corridor. Plaintiffs in Flying S. Land Co. hired an external firm to map these parcels in relation to the railroad corridor. In reliance on information gathered by this external firm, plaintiffs argue that Tally parcel 020-141-01-0-30-20-010.00-0[11] is "adjacent to the railroad corridor for approximately 345 feet. There is no road or parcel in between the parcel and the corridor on the eastern 345 feet of the parcel. The western portion of this parcel is blocked by the Church . . . ." In submissions to the court, plaintiffs represent that, "[t]he County reported that a former street, South Mill Street, was vacated and the south half of the road sent to the Tally parcel and the north half of the road went to the Church of Christ parcel." Plaintiffs rely on a map they allegedly received from the Decatur County Assessor's office that appears, albeit blurrily, to state "VACATED STREET" above

---

[11] As noted above, Gerry and Theresa Tally have two claims for two parcels of land. The parties have stipulated that parcel 020-141-01-0-30-19-005.00-0 is adjacent to the railroad corridor. The parcel discussed above with adjacency issues is parcel 020-141-01-0-30-20-010.00-0.

the street at issue. (capitalization in original). There is no definitive evidence in the record that South Mill Street, indeed, was vacated or that the road "went" to the Church of Christ and <u>Flying S. Land Co.</u> plaintiffs Gerry and Theresa Tally upon being vacated, nor is there a legal description of what the word "went" means in the submitted document.

With regard to <u>Flying S. Land Co.</u> plaintiffs James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0,[12] plaintiffs represent that it was separated from the railroad corridor by a road, South Railroad Street. According to plaintiffs, South Railroad Street does not appear to be "on the list of vacated streets," provided by the Recorder of Deeds in Decatur County, Kansas. Thus, although plaintiffs assert that James and Janice Bricker's parcel 020-124-18-0-00-03-001.00-0 is adjacent to the railroad corridor, plaintiffs recognize that there is a road separating the Bricker parcel from the railroad corridor.

## Conveyances

NKCR acquired the railroad line at issue in these cases from its predecessors-in-interest, the Burlington, Kansas & Southwestern Railroad Company and the Chicago, Burlington & Quincy Railroad Company. The railroad, and its predecessors, obtained its interests in the railroad corridor in five ways: condemnation proceedings, the General Railroad Right-of-Way Act of 1875, 43 U.S.C. § 934 (1875), private "Right of Way Deeds," 1950 deeds from the United States, and deeds from the Lincoln Land Company.

In and around 1885, the Burlington, Kansas & Southwestern Railroad Company, one of NKCR's predecessors-in-interest, began construction of a railroad line that traveled through Kansas and Nebraska and acquired land needed to construct the railroad by condemnation proceedings, the General Railroad Right–of–Way Act of 1875, private "Right of Way Deeds," and deeds from the Lincoln Land Company. In 1950, the Chicago, Burlington & Quincy Railroad Company, which was the successor-in-interest to the Burlington, Kansas & Southwestern Railroad Company, acquired a portion of the railroad corridor through deeds entered into by the United States, the railroad company, Phillips County, Kansas, and Harlan County, Nebraska, to facilitate the construction of the Harlan County Reservoir and Dam. At the time, part of the railroad line interfered with the construction of the Harlan County Reservoir and Dam, which was necessary to address severe flooding in the region, and the Chicago, Burlington & Quincy Railroad Company entered into an agreement with the United States to construct an alternate railroad line around the reservoir, through which it obtained the right-of-way to bypass the reservoir.

The parties have stipulated to the applicable conveyance documents from plaintiffs' predecessors-in-interest to the railroad company's predecessor-in-interest for all plaintiffs except <u>Flying S. Land Co.</u> plaintiffs Gerry N. and Theresa M. Tally parcels 020-141-01-0-30-20-010.00-0 and 020-141-01-0-30-19-005.00-0, Oberlin Concrete Co.,

---

[12] <u>Flying S. Land Co.</u> plaintiffs James and Janice Bricker have three claims for three parcels of land. The parties have stipulated that parcels 020-124-18-0-00-09-004.00-0 and 020-124-18-0-00-01-001.00-0 are adjacent to the railroad corridor.

James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0, 020-124-18-0-00-03-001.00-0, and 020-124-18-0-00-01-001.00-0, Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0, Garth Gebhard, Paul and Tammy Vincent, and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0.

<u>Lincoln Land Company Deeds or Condemnation</u>

The parties dispute the applicable source conveyances from plaintiffs' predecessors-in-title to the railroad company's predecessor-in-interest for the following <u>Flying S. Land Co.</u> plaintiffs: Gerry and Theresa Tally parcels 020-141-01-0-30-20-010.00-0 and 020-141-01-0-30-19-005.00-0, Oberlin Concrete Co., James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0, 020-124-18-0-00-03-001.00-0, and 020-124-18-0-00-01-001.00-0, Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0, Garth Gebhard, Paul and Tammy Vincent, and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0. Plaintiffs contend that the Burlington, Kansas & Southwestern Railroad Company acquired the railroad corridor over these plaintiffs' properties through condemnation proceedings in Decatur and Phillips Counties, Kansas. According to documents submitted by plaintiffs, the Decatur County condemnation was filed on June 30, 1885, "to lay out a . . . Right of Way for the Burlington, Kansas and Southwestern Railroad Company . . . ." The Decatur County condemnation includes legal descriptions of parcels that belonged to Gerry & Theresa Tally parcels 020-141-01-0-30-20-010.00-0 and 020-141-01-0-30-19-005.00-0 and Oberlin Concrete Co.'s predecessor-in-title. The Phillips County condemnation was filed on June 30, 1885, for "laying off right of way . . . for the Burlington, Kansas and South Western Rail Road." The Phillips County condemnation does not include legal descriptions matching the legal descriptions owned by <u>Flying S. Land Co.</u> plaintiffs Gerry and Theresa Tally parcels 020-141-01-0-30-20-010.00-0 and 020-141-01-0-30-19-005.00-0, Oberlin Concrete Co., James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0, 020-124-18-0-00-03-001.00-0, and 020-124-18-0-00-01-001.00-0, Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0, Garth Gebhard, Paul and Tammy Vincent, and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0. Defendant, however, contends that the applicable conveyances for these parcels are a series of deeds in which the Lincoln Land Company granted the land to the railroad company in fee. Defendant also states that a valuation chart created by the Interstate Commerce Commission (ICC) in 1917 "clearly identifies four deeds from the Lincoln Land Company to the railroad as the source conveyance" for the section of the railroad corridor that is adjacent to <u>Flying S. Land Co.</u> plaintiffs Gerry and Theresa Tally parcels 020-141-01-0-30-20-010.00-0 and 020-141-01-0-30-19-005.00-0, Oberlin Concrete Co., James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0,  020-124-18-0-00-03-001.00-0,  and  020-124-18-0-00-01-001.00-0, Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0, Garth Gebhard, Paul and Tammy Vincent, and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0.

Lincoln Land Co. Deeds

The parties have stipulated that NKCR's predecessor-in-interest obtained its interest in the sections of the railroad corridor adjacent to Arnold plaintiffs John Arnold and Susan Bolek parcel 107-36-0-20-02-009-00-0, Mark and Shayla Bailey parcel 107-36-0-20-13-005, Harold and Kristelle Mizell parcel 107-36-0-10-04-0001, Robert Strevey, Edwin and Phyllis Yeater through a Lincoln Land Company deed dated February 27, 1886, which is located at book 4, page 424 (Lincoln Land Company Deed 4-424). The pertinent portion of Lincoln Land Company Deed 4-424 provides:

> The Lincoln Land Company to Burlington Kansas & S W. R. R. Co.
>
> In consideration of the payment of One ($1.00[)], Dollar, The Lincoln Land Company hereby sells and conveys to The Burlington Kansas and South Western Railroad Company, all of its, right, title, and interest in and to the following described real estate in Decatur County, and State of Kansas to wit: [legal description of lots and sections]
>
> Also conveying to said Railroad Company the right of way for the railroad One hundred feet in width being fifty (50) feet on each side of the center line thereof and commencing at the North East end of the tract of land herein before described and running with said center line to its intersection with the north line of Section No. Thirty six (36) in Township No. Two (2) South, of Range No. Twenty six (26) west, of the Sixth Principal Meridian. Also the right of way as aforesaid, commencing at the South West end of said tract, and running in a South Westerly direction with said Railroad, to intersect the west line of said Section No. Thirty six (36), subject to the taxes of the year – 1885 and thereafter. In Witness Whereof, The President of the Lincoln Land Company has hereunto set his hand, and affixed the seal of the Company this 29th day of February, 1886.

The parties also have stipulated that NKCR's predecessor-in-interest obtained an easement from Lincoln Land Company Deed 4-424 in the section of the railroad corridor adjacent to Arnold plaintiffs John Arnold and Susan Bolek parcel 107-36-0-20-02-009-00-0, Mark and Shayla Bailey parcel 107-36-0-20-13-005, Harold and Kristelle Mizell parcel 107-36-0-10-04-0001, and Robert Strevey.

The parties, however, dispute whether NKCR's predecessor-in-interest obtained a fee interest or an easement in the section of the railroad corridor adjacent to Arnold plaintiffs Edwin and Phyllis Yeater's parcels. Defendant asserts that only the first granting clause in Lincoln Land Company Deed 4-424 applies to the land underlying the railroad corridor adjacent to Arnold plaintiffs Edwin and Phyllis Yeater's parcels. Defendant contends that the language in the first granting clause of Lincoln Land Company Deed 4-424 conveyed a fee simple to NKCR's predecessor-in-interest because the first granting clause did not contain any restrictions limiting the conveyance to an easement. Plaintiffs,

however, argue that Lincoln Land Company Deed 4-424 only conveyed an easement because the land was conveyed "for the inadequate consideration of $1."

Condemnation

According to submissions from the parties, the Burlington, Kansas & Southwestern Railroad Company, NKCR's predecessor-in-interest, acquired land needed to construct the railroad, in part, through condemnation proceedings relevant to the following plaintiffs' predecessors-in-interest: Arnold plaintiffs Susan Bolek and John Arnold parcel 107-35-0-00-00-003-00-0, B&D Farm, LLC,[13] and Rodney and Tonda Ross parcel 102-03-0-00-00-004.00-0; Flying S. Land Co. plaintiffs Dolores M. Koerperich Revocable Living Trust parcel  020-133-05-0-00-00-004.00-0,  Clem  Koerperich  parcels  020-133-05-0-00-00-003.00-0 and 020-133-08-0-00-00-004.00-0, William C. and Bertha G. Rea,[14] Leo and Carolyn Zodrow parcel 020-122-09-0-00-00-001.00-0,[15] Flying S. Land Company parcels 020-123-08-0-00-00-004.00-0, 020-122-04-0-00-00-002.00-0, and 020-121-01-0-00-00-001.00-0, Flying S. Partnership, Dale and Lenora Soderland, Cecil and Lavon Wright, AG Valley Cooperative,[16] Clayton and Catherine Cox, and J&C Partnership LP; and Dawson plaintiffs G & M Properties, LP,[17] Linda J. Tomasch, John E. Bremer, and David G. Bremer. The parties have stipulated that the Burlington, Kansas & Southwestern Railroad Company obtained only an easement over the land acquired through condemnation that is adjacent to the above-identified plaintiffs, pursuant to Kansas state law.[18] See Kan. Gen. Stat. Ch. 23, § 81 (1868); Kan. Cent. Ry. Co. v. Allen, 22 Kan. 285 (1879).

[13] The parties have stipulated that NKCR's interest in the section of the railroad corridor adjacent to Arnold plaintiff B&D Farm, LLC was obtained by both condemnation and Right of Way deed.

[14] The parties have stipulated that NKCR's interest in the section of the railroad corridor adjacent to Flying S. Land Co. plaintiffs William C. and Bertha G. Rea parcel 020-135-15-0-00-00-003.00-0 was obtained by both condemnation and the General Right-of-Way Act of 1875 discussed below.

[15] The parties have stipulated that NKCR's interest in the section of the railroad corridor adjacent to Flying S. Land Co. plaintiffs Leo and Carolyn Zodrow parcel 020-122-09-0-00-00-001.00-0 was obtained by both condemnation and the General Right-of-Way Act of 1875.

[16] The parties have stipulated that NKCR's interest in the section of the railroad corridor adjacent to Flying S. Land Co. plaintiff AG Valley Cooperative parcel 069-151-02-0-00-00-001.00-0-01 was obtained by both condemnation and Right of Way deed.

[17] The parties have stipulated that NKCR's interest in the section of the railroad corridor adjacent to Dawson plaintiff G & M Properties, LP parcel 069-068-34-0-00-00-003-00-0-01 was obtained by both condemnation and Right of Way deed.

[18] In its cross-motion for summary judgment, defendant states that Arnold plaintiffs John Arnold and Susan Bolek "are the only plaintiffs that have set forth sufficient evidence to

General Railroad Right–of–Way Act of 1875

In 1875, the United States Congress passed the General Railroad Right–of–Way Act of 1875 to provide railroad companies "right[s] of way through the public lands of the United States . . . ." 43 U.S.C. § 934 (1875). The Burlington, Kansas & Southwestern Railroad Company acquired land needed to construct the railroad at issue, in part, through the General Railroad Right–of–Way Act of 1875. The land acquired through the General Railroad Right–of–Way Act of 1875 includes the following plaintiffs' properties: Flying S. Land Co. plaintiffs William C. and Bertha G. Rea, Leo and Carolyn Zodrow, and GRS Revocable Trust. The parties have stipulated that the railroad company obtained only an easement over the land acquired by the General Railroad Right–of–Way Act of 1875, pursuant to the United States Supreme Court's ruling in United States v. Brandt, which held that the General Railroad Right–of–Way Act of 1875 conveyed to railroads only an easement. See United States v. Brandt, 134 S. Ct. 1257 (2014).

Right of Way Deeds

Additionally, the Burlington, Kansas & Southwestern Railroad Company acquired land needed to construct the railroad, in part, through private "Right of Way" deeds exchanged between the railroad company and the following plaintiffs' predecessors-in-title: Arnold plaintiffs B&D Farm, LLC, H. Drake and Karen Gebhard, Cecilia Hillebrand, Jackson Irrevocable Farm Trust, Lee Martin Revocable Trust, Bernice Martin, Harold and Kristelle Mizell parcel 069-151-01-0-00-00-003-00-0-01, Rodney and Tonda Ross parcel 069-101-02-0-00-00-001-00-0-01, Ricky Temple, L & S Tubbs Family, L.P., John C. Tweed Trust and Joann Tweed Trust, Ivan and Cathy Bohl Living Trust, and Morlock Children's Trust; Flying S. Land Co. plaintiffs Dolores M. Koerperich Revocable Living Trust parcel 020-133-05-0-00-00-001.00-0, Sauvage Gas Service, Flying S. Land Company parcel 020-109-31-0-00-001.00-0, Judith E. Nelson, United Methodist Church, Jonathan and Karen Cozad,[19] Richard and Robert McChesney, Edward Braun, Arnold K. Graham, et al., Arnold K. Graham, Jerry G. and Connie K. Cox parcel 074-056-23-0-00-00-003.00-0, Silverstone & Dake's Canal, Inc. parcels 074-056-24-0-20-01-001.00-0 and 074-056-24-0-20-02-001.00-0, and Craig E. Ingram Living Trust and Genine L. Ingram Living Trust; and Dawson plaintiffs Conrad C. and Mary R. Cox,[20] Carol K. Ross and Kay

establish that they have an ownership interest" in the segment of the railroad corridor acquired by condemnation.

[19] Defendant originally disputed that Jonathan and Karen Cozad owned parcel 020-107-25-0-00-00-001-00-0. In its motions for partial summary judgment, plaintiffs submitted to the court deeds proving Jonathan and Karen Cozad owned parcel 020-107-25-0-00-00-001-00-0 on the date the NITU was issued. Defendant did not address plaintiffs' evidence, nor did defendant submit to the court any evidence disputing plaintiffs' evidence.

[20] The parties have stipulated that NKCR's interest in the section of the railroad corridor adjacent to Conrad C. and Mary R. Cox parcel 74-044-180-00-00-003-00-0 was obtained by both Right of Way deed and a 1950 deed discussed below.

L. Lee, Shirley Kats Revocable Trust and Derek Kats Revocable Trust, Rosemary L. Mathes, Duane R. and Darlene McEwen, M. Lee Juenemann and Angela Juenemann, G & M Properties, LP, Joe L. Dawson, Bruce G. Guinn, Jr., Jason and Travis Dial, Larry L. and Iris L. Smith, trustees of the Larry L. Smith and Iris L. Smith Revocable Living Trust, and Lloyd E. and Pamela Y. Edgett. The general language of the deeds was consistent from deed to deed. Only the specific details such as parcel description, grantor, and consideration changed from deed to deed, none of which are pertinent to the issues in this opinion.

In pertinent part, the Right of Way deeds state the following:

Know all men by these presents, that [grantor] of the County of Norton and State of Kansas in consideration of the sum of Twenty (20) dollars, in hand paid the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell and convey unto the Burlington, Kansas & Southwestern Railroad Company, its successors and assigns, the following described Real Estate in Norton, County, State of Kansas, to wit:

A Strip of ground 100 feet Wide, it being 50 feet on each side of the center line of the Railroad of said Company, as located upon the [specific description of lot and section].

To have & to hold the same with the said Railroad Company its successors & assigns forever[.] And in addition to the right of way described above, I hereby grant for myself & my heirs & assigns the right to said Railroad Company to erect & maintain a snow fence for the term of four months each & every year after the date of this instrument at any point within one hundred feet on either or both sides of the centerline of the said Railroad as now located on the above described land, said terms of four months to begin on November 15th & end March 15th, each year.

All of the Right of Way deeds were entered into in 1885 or 1886 and ranged in consideration from $1.00 to $150.00.

<u>1950 Deeds</u>

The Chicago, Burlington & Quincy Railroad Company, one of NKCR's predecessors-in-interest, acquired the land needed to reroute part of the railroad right-of-way around the Harlan County Dam and Reservoir Project through two quitclaim deeds from the United States in 1950. One of the quitclaim deeds was for land located in Harlan County, Nebraska, and the other quitclaim deed was for land located in Phillips County, Kansas. The land the railroad company acquired through the Phillips County, Kansas deed with the United States includes the following plaintiffs' properties: <u>Flying S. Land Co.</u> plaintiffs Culbertson Farms, LLC, Perry and Ila Mae Schelling, James Holterman, and Orville and Pauline Holterman Revocable Trust and <u>Dawson</u> plaintiffs Conrad C. and Mary R. Cox. The land the railroad company acquired through the Harlan County,

Nebraska deed with the United States relates to <u>Flying S. Land Co.</u> plaintiff Silverstone & Dake's Canal, Inc. parcels 260014100, 360004300, 380012500.

The 1950 Phillips County, Kansas deed is reproduced, in pertinent part, below:

THIS DEED, Made this 17th day of November, 1950, by and between the United States of America, acting by and through the Secretary of the Army, pursuant to authority contained in Section 2 of the Act of 20 June 1938 (52 Stat. 804, U.S.C.A. 558b) as extended by Section 3 of the Act of 11 August 1939 (53 Stat. 1414, 33 U.S.C.A. 558b-1), party of the First Part and the Chicago, Burlington & Quincy Railroad Company, a company organized and existing under the laws of the State of Illinois, of the City of Chicago, in the State of Illinois, party of the Second Part.

WHEREAS, The United States of America has undertaken the development of the Harlan County Dam and Reservoir Project in Harlan County, Nebraska; and

WHEREAS, The Chicago, Burlington and Quincy Railroad Company owned and operated a branch line and railroad between Republican City, Nebraska, and Long Island, Kansas, which interfered with the use of the Dam and Reservoir area by the United States of America; and

WHEREAS, Because of such interference, it became necessary for the United States of America to construct a railroad above the maximum Reservoir pool level in lieu of that portion of  such branch line within the area to be inundated; and

WHEREAS, On the first day of August, 1947, an agreement was entered into by and between the party of the First Part and the party of the Second Part for the relocation, rearrangement, and alteration of facilities of the party of the Second Part, which agreement provided further for the exchange of properties of the party of the First Part and party of the Second Part; NOW THEREFORE

KNOW ALL MEN BY THESE PRESENTS:
That the party of the First Part, for and in consideration of the covenants and recitals contained in agreement heretofore referred to and the exchange of properties as provided for therein does by these presents remise, release and quitclaim unto the said party of the Second Part, its successors and assigns, all its right, title and interest in and to the following described property situated in the County of Phillips and State of Kansas, to wit:

[specific description of lot and section and description of the metes and bounds for a series of properties]

TO HAVE AND TO HOLD the above described premises unto the party of the Second Part, its successors and assigns forever, with all appurtenances thereunto belonging.

SUBJECT to the following reservation: All uranium, thorium, and all other materials determined pursuant to Section 5(b)(1) of the Atomic Energy Act of 1945 (60 Stat. 761) to be particularly essential to the production of fissionable material, contained, in whatever concentration, in deposits in the lands covered by this instrument are hereby reserved for the use of the United States, together with the right of the United States through its authorized agents or representatives at any time to enter upon the land and prospect for, mine, and remove the same, making just compensation for any damage or injury occasioned thereby. However, such land may be used, and any rights otherwise acquired by this disposition may be exercised, as if no reservation of such materials had been made; except that, when such use results in the extraction of any such material from the land in quantities which may not be transferred or delivered without a license under the Atomic Energy Act of 1946, as it now exists or may hereafter be amended, such material shall be the property of the United States Atomic Energy Commission, and the Commission may require delivery of such material to it by any possessor thereof after such material has been separated as such from the ores in which it was contained. If the Commission requires the delivery of such material to it, it shall pay to the person mining or extracting the same, or to such person as the Commission determines to be entitled thereto, such sums, including profits, as the Commission deems fair and reasonable for the discovery, mining, development, production, extraction, and other services performed with respect to such material prior to such delivery but such payment shall not include any amount on account of the value of such material before removal from its place of deposit in nature. If the Commission does not require the delivery of such material to it, the reservation hereby made shall be of no further force or effect.

Acceptance by the Second Party of this conveyance shall not constitute a waiver of any of its rights under contract No. W-23-028-ang-1560, dated August 1, 1947, between the parties hereto and all of such rights are expressly reserved to the Second Party.

IN WITNESS WHEREOF, the party of the First Part has caused these presents to be executed in its name by the Secretary of the Army and the Seal of the Department of the Army to be hereunto affixed the day and year first above written.

(capitalization in original).

The Harlan County deed is identical to the Phillips County deed except it includes the following language after the specific descriptions of the properties being conveyed:

> together with all easements appurtenant thereto more particularly described as follows:

> A perpetual easement in connection with the construction, operation, and maintenance of a railroad including the right to make and maintain drainage improvements, to borrow and excavate thereon, to remove dirt and other materials therefrom, and such other uses as may be necessary in connection with said railroad construction, operation, and maintenance upon, over, and across the following described lands:

> [specific description of lot and section and description of the metes and bounds for a series of properties]

**Procedural History**

Plaintiffs in Arnold and Flying S. Land Co. filed their initial complaints against defendant in the United States Court of Federal Claims on October 26, 2015.[21] Plaintiffs in Dawson filed their initial complaint against defendant in this court on October 27, 2015.[22] Plaintiffs in Arnold filed their first and final amended complaint on March 18, 2016; plaintiffs in Flying S. Land Co. filed their third and final amended complaint on January 12, 2017; and plaintiffs in Dawson filed their fifth and final amended complaint on July 20, 2017.[23] The court issued an order on July 7, 2017, instructing plaintiffs each to file their "partial motions for summary judgment regarding title issues, including fee or easement, as well as adjacency and the centerline presumption."[24] Subsequently, the plaintiffs in all

---

[21] Arnold was originally assigned to Judge Braden. On January 12, 2016, Arnold was reassigned to the undersigned for all further proceedings. Flying S. Land Co. was originally assigned to the undersigned on October 26, 2015.

[22] Dawson was originally assigned to Judge Firestone. On November 12, 2015, Dawson was reassigned to Judge Braden. Dawson was reassigned to the undersigned on January 12, 2016 for all further proceedings.

[23] Plaintiffs in Flying S. Land Co. filed their first amended complaint on December 17, 2015 and their second amended complaint on May 20, 2016. Plaintiffs in Dawson filed their first amended complaint on May 6, 2016, their second amended complaint on August 5, 2016, their third amended complaint on October 26, 2016, and their fourth amended complaint on February 1, 2017.

[24] Although defendant initially appeared to indicate that it would dispute the application of the centerline presumption to plaintiffs in these three cases, in its cross motions for partial summary judgment, defendant states that "[t]he United States does not dispute that this [centerline] presumption exists under Kansas and Nebraska law. . . ." As a result, the parties do not dispute the theory of the centerline presumption in Kansas and Nebraska,

three cases filed their motions for partial summary judgment. These motions pertain to adjacency and title issues, as well as fee or easement issues, as the court instructed. Defendant responded to each motion and cross-moved for summary judgment in all three cases.[25] Additionally, the court instructed the parties to file joint transcriptions of the Lincoln Land Company deeds, as the Lincoln Land Company deeds originally submitted to the court were illegible. The court also instructed the parties to submit several filings addressing additional issues found within the parties' partial motions for summary judgments. The cross-motions in all three cases are fully briefed.

On November 17, 2017, following the Supreme Court of Kansas' October 27, 2017 decision in Jenkins v. Chicago Pacific Corp., 403 P.3d 1213 (Kan. 2017), defendant filed its notice of partial withdrawal of its cross-motion for summary judgment in Arnold, Flying S. Land Co., and Dawson. In its notice, defendant stated the "Jenkins opinion expounds upon and clarifies Kansas law regarding the construction of deeds to a railroad company that have all of the attributes of a fee simple conveyance, but are nonetheless implied under state law as conveying only an easement," and that defendant had undertaken a review of the deeds at issue in these cases. Defendant also indicated that it "acknowledges that several of the deeds in this action are similar to the deed in Jenkins that the Kansas Supreme Court ruled should be interpreted to convey only an easement because the language implied a railroad use." Accordingly, defendant withdrew its cross-motions for summary judgment as to the issue of fee ownership of the railroad for the

---

but dispute whether certain plaintiffs are adjacent to the railroad corridor, such that the centerline presumption would apply.

[25] Plaintiffs in Flying S. Land Co. also moved for partial summary judgment on the issue of whether NKCR abandoned the railroad corridor under Kansas law. In their motion for partial summary judgment, Flying S. Land Co. plaintiffs state:

> in the event the Court believes Plaintiffs have not sufficiently shown that the railroad only held an easement for railroad purposes and trail use exceeds the scope of the easement issue, i.e., in the event the Court believes that the grant of the railroad's easement was broad enough to encompass a recreational trail, Plaintiffs now address the abandonment issue.

Flying S. Land Co. plaintiffs argue that "NKCR clearly abandoned the right-of-way." As the court's analysis will show, the easements held by NKCR were limited to railroad purposes. The court, therefore, does not address Flying S. Land Co. plaintiffs' argument regarding abandonment of the railroad corridor under Kansas law.

Additionally, in their motion for partial summary judgment, Flying S. Land Co. plaintiffs argue "that the terms of the railroad's easements were limited to use for railroad purposes, i.e., authorization for recreational use went beyond the scope of the     easement . . . ." As discussed, the court's opinion only addresses issues of title and adjacency. Accordingly, the court does not address Flying S. Land Co. plaintiffs' partial motion for summary judgment regarding whether recreational trail use exceeds the scope of the NKCR's easements.

following plaintiffs: <u>Arnold</u> plaintiffs B&D Farm, LLC parcel 136-14-0-00-00-002-00-0, H. Drake and Karen Gebhard, Cecilia Hillebrand, Jackson Irrevocable Farm Trust, Lee Martin Revocable Trust, Bernice Martin, Harold & Kristelle Mizell parcel 069-151-01-0-00-00-003-00-0-01, Rodney and Tonda Ross 069-101-02-0-00-00-001-00-0-01, Ricky Temple, L&S Tubbs Family, L.P., John C. Tweed Trust and Joan Tweed Trust, Ivan and Cathy Bohl Living Trust, and Morlock Children's Trust, <u>Flying S. Land Co.</u> plaintiffs Dolores M. Koerperich Revocable Living Trust parcel 020-133-05-0-00-00-001.00-0, Sauvage Gas Service, Inc., James and Janice Bricker, Flying S Land Co. parcel 020-109-31-0-00-00-001.00-0, Judith E. Nelson, United Methodist Church, Karen and Jonathan Cozad, Richard and Robert McChesney, Edward Braun, Arnold K. Graham, et al., Arnold K. Graham, Jerry G. and Connie K. Cox, Garth Gebhard, Paul and Tammy Vincent, Silverstone & Dake's Canal, Inc. parcels 074-056-24-0-20-02-001.00-0 and 074-056-24-0-20-01-001.00-0, and Craig E. Ingram Living Trust & Genine L. Ingram Living Trust, and <u>Dawson</u> plaintiffs Conrad C. and Mary C. Cox Trusts No. 1,[26] Carol K. Ross and Kay L. Lee, Trustees of the Carol K. Ross Trust No. 1, Shirley Kats Revocable Trust and Derek Kats Revocable Trust, Rosemary L. Mathes, M. Lee Juenemann and Angela Juenemann, G & M Properties, LP, Joe L. Dawson, Bruce G. Guinn, Jr., Jason and Travis Dial, Larry L. Smith and Iris L. Smith, Trustees of the Larry L. Smith and Iris L. Smith Revocable Living Trust; and Lloyd E. and Pamela Y. Edgett. Defendant also submitted to this court in each case a revised chart regarding title issues, which indicated defendant agreed that NKCR only possessed an easement in the sections of the railroad corridor adjacent to the plaintiffs identified in defendant's November 17, 2017 notice.[27]

## DISCUSSION

The court considers the parties' cross-motions for partial summary judgment. RCFC 56 is similar to Rule 56 of the Federal Rules of Civil Procedure in language and

---

[26] <u>Dawson</u> plaintiff Conrad C. and Mary R. Cox Trusts No. 1 owns two parcels at issue in this case, parcels 74-044-180-00-00-003-00-0 and 74-056-130-00-00-005-00-0. NKCR's predecessor-in-interest acquired its interest in the land underlying the railroad corridor adjacent to parcel 74-044-180-00-00-003-00-0 partially by private Right of Way deed and partially by a 1950s deed from the United States. NKCR's predecessor-in-interest acquired its interest in the land underlying the railroad corridor adjacent to parcel 74-056-130-00-00-005-00-0 entirely by private Right of Way deed. Defendant only withdrew its cross-motion for summary judgment as to the issue of fee ownership for the sections of the parcels that were obtained by Right of Way deed.

[27] Subsequently, on February 23, 2018, defendant submitted a filing to the court that stated "[a]fter reviewing the prior filings and exhibits, it appears that counsel for the United States accidentally included Plaintiffs [Paul and Tammy] Vincent's property in its November 17, 2017 Notice of Partial Withdrawal of its Cross-Motion for Summary Judgment." (capitalization in original). Defendant stated that "the Court should interpret that this deed [Lincoln Land Company Deed] K-488, which is the applicable source deed for both Plaintiffs Vincent's property and Silverstone & Dake's Canal's parcel number 074-056-24-0-20-01-002.00-01, conveyed a fee interest to the railroad." (capitalization in original) (footnote omitted).

effect. Both rules provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a) (2017); Fed. R. Civ. P. 56(a) (2017); see also Alabama v. North Carolina, 560 U.S. 330, 344 (2010); Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Biery v. United States, 753 F.3d 1279, 1286 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Ladd v. United States, 713 F.3d 648, 651 (Fed. Cir. 2013); Minkin v. Gibbons, P.C., 680 F.3d 1341, 1349 (Fed. Cir. 2012); Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1309-10 (Fed. Cir. 2012); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d 1365, 1372 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2012); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1325 (Fed. Cir.), reh'g denied (Fed. Cir. 2010); Consol. Coal Co. v. United States, 615 F.3d 1378, 1380 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 564 U.S. 1004 (2011); 1st Home Liquidating Trust v. United States, 581 F.3d 1350, 1355 (Fed. Cir. 2009); Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1378 (Fed. Cir. 2009); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008), reh'g and reh'g en banc denied, 556 F.3d 1329 (Fed. Cir. 2009); Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2005); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1370-71 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005); Mata v. United States, 114 Fed. Cl. 736, 744 (2014); Leggitte v. United States, 104 Fed. Cl. 315, 317 (2012); Arranaga v. United States, 103 Fed. Cl. 465, 467-68 (2012); Cohen v. United States, 100 Fed. Cl. 461, 469 (2011); Boensel v. United States, 99 Fed. Cl. 607, 610 (2011).

A fact is material if it will make a difference in the result of a case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968 (Fed. Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248); Mata v. United States, 114 Fed. Cl. at 744; Arranaga v. United States, 103 Fed. Cl. at 467-68; Thompson v. United States, 101 Fed. Cl. 416, 426 (2011); Cohen v. United States, 100 Fed. Cl. at 469. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); Gorski v. United States, 104 Fed. Cl. 605, 609 (2012); Walker v. United States, 79 Fed. Cl. 685, 692 (2008); Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; see, e.g., Schlup v. Delo, 513 U.S. 298, 332 (1995); Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); TigerSwan, Inc. v. United States, 118 Fed. Cl. 447, 451 (2014); Dana R. Hodges Trust v. United States, 111 Fed. Cl. 452, 455 (2013); Cohen v. United States, 100 Fed. Cl. at 469-70; Boensel v. United States, 99

Fed. Cl. at 611; Macy Elevator, Inc. v. United States, 97 Fed. Cl. 708, 717 (2011); Dick Pacific/GHEMM, JV ex rel. W.A. Botting Co. v. United States, 87 Fed. Cl. 113, 126 (2009); Johnson v. United States, 49 Fed. Cl. 648, 651 (2001), aff'd, 52 F. App'x 507 (Fed. Cir. 2002), published at 317 F.3d 1331 (Fed. Cir. 2003). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-52; Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1993); Leggitte v. United States, 104 Fed. Cl. at 316. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d at 1372; Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968; Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2008); Rothe Dev. Corp. v. U.S. Dep't of Def., 262 F.3d 1306, 1316 (Fed. Cir. 2001); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such cases, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

In appropriate cases, summary judgment:

> saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

Dehne v. United States, 23 Cl. Ct. 606, 614-15 (1991) (quoting Pure Gold, Inc. v. Syntex, (U.S.A.) Inc., 739 F.2d 624, 626 (Fed. Cir. 1984)), vacated on other grounds, 970 F.2d 890 (Fed. Cir. 1992) (citation omitted); see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 806 (Fed. Cir. 1999) ("The purpose of summary judgment is not to deprive a litigant of a trial, but to avoid an unnecessary trial when only one outcome can ensue."); Metric Constr. Co., Inc. v. United States, 73 Fed. Cl. 611, 612 (2006).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1244 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 555 U.S. 812 (2008); Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1109 (2002); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999); TigerSwan, Inc. v. United States, 118 Fed. Cl. at 451; Stephan v. United States, 117 Fed. Cl. 68, 70 (2014); Gonzales-McCaulley Inv. Grp., Inc. v. United States, 101 Fed. Cl. 623, 629 (2011). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be

resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. See Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Yant v. United States, 588 F.3d 1369, 1371 (Fed. Cir. 2009), cert. denied, 562 U.S. 827 (2010); Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co., 272 F.3d 1365, 1369 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 293 F.3d 1364 (Fed. Cir. 2002), cert. denied, 539 U.S. 957 (2003); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1998); see also Am. Pelagic Co. v. United States, 379 F.3d at 1371 (citing Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1345-46 (Fed. Cir. 2000)); Dana R. Hodges Trust v. United States, 111 Fed. Cl. at 455; Boensel v. United States, 99 Fed. Cl. at 611 ("'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 255) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Casitas Mun. Water Dist. v. United States, 543 F.3d at 1283; Lathan Co. Inc. v. United States, 20 Cl. Ct. 122, 125 (1990))); see also Am. Seating Co. v. USSC Grp., Inc., 514 F.3d at 1266-67; Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807. "However, once a moving party satisfies its initial burden, mere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." Republic Sav. Bank, F.S.B. v. United States, 584 F.3d 1369, 1374 (Fed. Cir. 2009); see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48.

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Riley & Ephriam Constr. Co. v. United States, 408 F.3d 1369, 1371 (Fed. Cir. 2005); Crown Operations Int'l Ltd. v. Solutia Inc., 289 F.3d 1367, 1377 (Fed. Cir.), reh'g denied (Fed. Cir. 2002); Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc., 109 F.3d 739, 741 (Fed. Cir.) (quoting Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994), reh'g denied and en banc suggestion declined (Fed. Cir. 1995)), reh'g denied and en banc suggestion declined (Fed. Cir. 1997); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1569 (Fed. Cir. 1997); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; RQ Squared, LLC v. United States, 119 Fed. Cl. 751, 757-58 (2015), subsequent determination, 129 Fed. Cl. 742 (2017), aff'd, 708 F. App'x 685 (Fed. Cir. 2018). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. at 322; see also Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1354 (Fed. Cir. 2009); Long Island Sav. Bank, FSB v. United States, 503 F.3d at 1244; Fla. Power & Light Co. v. United States, 375 F.3d 1119, 1124 (Fed. Cir. 2004); Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1207 (Fed. Cir. 2001); Am. Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; Rasmuson v. United States, 109 Fed. Cl. 267, 271 (2013). However, "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has

provided evidence sufficient, if unopposed, to prevail as a matter of law." Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006).

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case, and it does not follow that summary judgment should be granted to one side or the other. See Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)); see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968-69; B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001); Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000); Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1037 n.5 (9th Cir. 2000), cert. denied, 532 U.S. 942 (2001); Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998) ("The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other."), reh'g denied and en banc suggestion declined (Fed. Cir. 1999); Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 2 (1st Cir. 1998); Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997); LewRon Television, Inc. v. D.H. Overmyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968), cert. denied, 393 U.S. 1083 (1969); Rogers v. United States, 90 Fed. Cl. 418, 427 (2009), subsequent determination, 93 Fed. Cl. 607 (2010), aff'd, 814 F.3d 1299 (2015); Consol. Coal Co. v. United States, 86 Fed. Cl. 384, 387 (2009), aff'd, 615 F.3d 1378, (Fed. Cir.), and reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 564 U.S. 1004 (2011); St. Christopher Assocs., L.P. v. United States, 75 Fed. Cl. 1, 8 (2006), aff'd, 511 F.3d 1376 (Fed. Cir. 2008); Reading & Bates Corp. v. United States, 40 Fed. Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration, or, otherwise stated, in favor of the non-moving party. See First Commerce Corp. v. United States, 335 F.3d 1373, 1379 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); see also DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1322 (Fed. Cir. 2001); Gart v. Logitech, Inc., 254 F.3d 1334, 1338-39 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1114 (2002); Oswalt v. United States, 85 Fed. Cl. 153, 158 (2008); Telenor Satellite Servs., Inc. v. United States, 71 Fed. Cl. 114, 119 (2006).

"Questions of law are particularly appropriate for summary judgment." Oenga v. United States, 91 Fed. Cl. 629, 634 (2010) (citing Dana Corp. v. United States, 174 F.3d 1344, 1347 (Fed. Cir. 1999) ("Summary judgment was appropriate here [in Dana Corp.] because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law. Moreover, on each issue one party or the other is entitled to judgment as a matter of law.")); see also Santa Fe Pac. R.R. v. United States, 294 F.3d 1336, 1340 (Fed. Cir. 2002) ("Issues of statutory interpretation and other matters of law may be decided on motion for summary judgment.").

In the above-captioned cases plaintiffs allege that defendant effected a taking under the Fifth Amendment to the United States Constitution through operation of the Trails Act. The Takings Clause of the Fifth Amendment to the United States Constitution

provides in pertinent part: "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. The purpose of this Fifth Amendment provision is to prevent the government from "'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)), abrogated on other grounds by Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 (2005), recognized by Hageland Aviation Servs., Inc. v. Harms, 210 P.3d 444 (Alaska 2009); see also Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 123-24, reh'g denied, 439 U.S. 883 (1978); Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536 (2005); E. Enters. v. Apfel, 524 U.S. 498, 522 (1998); Pumpelly v. Green Bay & Miss. Canal Co., 80 U.S. (13 Wall.) 166, 179 (1871) (citing to principles which establish that "private property may be taken for public uses when public necessity or utility requires" and that there is a "clear principle of natural equity that the individual whose property is thus sacrificed must be indemnified"); Rose Acre Farm, Inc. v. United States, 559 F.3d 1260, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2009), cert. denied, 559 U.S. 935 (2010); Janowsky v. United States, 133 F.3d 888, 892 (Fed. Cir. 1998); Res. Invs., Inc. v. United States, 85 Fed. Cl. 447, 469-70 (2009).

"[A] claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." E. Enters. v. Apfel, 524 U.S. at 520 (citing Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016-19 (1984)); see also Acceptance Ins. Cos. v. United States, 503 F.3d 1328, 1336 (Fed. Cir. 2007); Morris v. United States, 392 F.3d 1372, 1375 (Fed. Cir. 2004) ("Absent an express statutory grant of jurisdiction to the contrary, the Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000."). The United States Supreme Court has declared: "If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the [United States Court of Federal Claims] to hear and determine." Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 12 (1990) (Preseault I) (quoting United States v. Causby, 328 U.S. 256, 267 (1946)); see also Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1368 (Fed. Cir. 2005); Narramore v. United States, 960 F.2d 1048, 1052 (Fed. Cir. 1992); Hardy v. United States, 127 Fed. Cl. 1, 7 (2016); Perry v. United States, 28 Fed. Cl. 82, 84 (1993).

To succeed under the Fifth Amendment Takings Clause, a plaintiff must show that the government took a private property interest for public use without just compensation. See Dimare Fresh, Inc. v. United States, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (stating that the "'classic taking'" is one in which the government directly appropriates private property for its own use (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 324 (2002)), cert. denied, 136 S. Ct. 2461 (2016); Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004), cert. denied, 546 U.S. 811 (2005); Arbelaez v. United States, 94 Fed. Cl. 753, 762 (2010); Gahagan v. United States, 72 Fed. Cl. 157, 162 (2006). "The issue of whether a taking has occurred is a question of law based on factual underpinnings." Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1377-78 (Fed. Cir.), cert. denied, 555 U.S. 1045 (2008). The government was operating in its sovereign rather than in its proprietary capacity when it initiates a taking. See St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1385 (Fed. Cir. 2008).

The United States Court of Appeals for the Federal Circuit has established a two-part test to determine whether government actions amount to a taking of private property under the Fifth Amendment. See Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013); Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011); Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (citing M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)). A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged takings. See Casitas Mun. Water Dist. v. United States, 708 F.3d at 1348; Jackson v. United States, 135 Fed. Cl. 436, 444 (2017) (citation omitted). Then, the court must determine whether the government action is a "'compensable taking of that property interest.'" Huntleigh USA Corp v. United States, 525 F.3d 1377 (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372).

To establish a taking, a plaintiff must have a legally cognizable property interest, such as the right of possession, use, or disposal of the property. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (citing United States v. Gen. Motors Corp., 323 U.S. 373 (1945)); Piszel v. United States, 833 F.3d 1366, 1374 (Fed. Cir. 2016), cert. denied, 138 S. Ct. 85 (2017); Rogers v. United States, 814 F.3d 1299, 1303 (Fed. Cir. 2015); Casitas Mun. Water Dist. v. United States, 708 F.3d at 1348; CRV Enters., Inc. v. United States, 626 F.3d 1241, 1249 (Fed. Cir. 2010), cert. denied, 563 U.S. 989 (2011); Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374-75 (Fed. Cir.), reh'g denied and en banc suggestion denied (Fed. Cir. 2000), cert. denied, 532 U.S. 941 (2001). "'It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.'" Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (quoting Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), cert. denied, 353 U.S. 1077 (2002); and citing Cavin v. United States, 956 F.2d 1131, 1134 (Fed. Cir. 1992)). Therefore, "[i]f the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003); and M & J Coal Co. v. United States, 47 F.3d at 1154). The court does not address the second step "without first identifying a cognizable property interest." Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir.) (citing Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1381 and Conti v. United States, 291 F.3d 1334, 1340 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003)), reh'g denied and reh'g en banc denied (Fed. Cir. 2005); see also Balagna v. United States, 135 Fed. Cl. 16, 22 (2017), recons. denied, No. 14-21L, 2017 WL 5952123 (Fed. Cl. Dec. 1, 2017). Only if there is to be a next step, "'after having identified a valid property interest, the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest.'" Huntleigh USA Corp. v. United States, 525 F.3d at 1378 (quoting Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372); see also Casitas Mun. Water Dist. v. United States, 708 F.3d at 1348.

The STB has authority to regulate most railroad lines in the United States. See 49 U.S.C. § 702 (2012). A railroad seeking to abandon any part of its railroad line must either

(1) file an application to abandon or (2) file a notice of exemption to abandon the line. See 49 U.S.C. § 10903 (2012); see also 49 C.F.R. § 1152.50 (2017). "If the STB approves a standard abandonment application or grants an exemption and the railroad ceases operation, the STB relinquishes jurisdiction over the abandoned railroad right-of-way and state law reversionary property interests, if any, take effect." Caldwell v. United States, 391 F.3d 1226, 1228-29 (Fed. Cir. 2004) (citing Preseault I, 494 U.S. at 6-8), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005).

"The Trails Act is designed to preserve railroad rights-of-way by converting them into recreational trails." Bywaters v. United States, 670 F.3d 1221, 1225 (Fed. Cir.), reh'g denied, 684 F.3d 1295 (Fed. Cir. 2012). By operation of the Trails Act, the STB may issue a NITU, "suspending exemption proceedings for 180 days to allow a third party to enter into an agreement with the railroad to use the right-of-way as a recreational trail." Barclay v. United States, 443 F.3d 1368, 1371 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), cert. denied, 846 U.S. 1209 (2007). Section 8(d) of the Trails Act, codified at 16 U.S.C. § 1247(d), "allows a railroad to negotiate with a state, municipal, or private group ('the trail operator') to assume financial responsibility for operating the railroad right of way as a recreational trail." See Bright v. United States, 603 F.3d 1273, 1275 (Fed. Cir.) (citing Caldwell v. United States, 391 F.3d at 1229), reh'g and reh'g en banc denied (Fed. Cir. 2010). If the railroad and an authorized trail provider[28] reach an agreement, the NITU extends indefinitely, and the corridor is railbanked, with interim trail use permitted. See 49 C.F.R. § 1152.29(d)(1)-(2) (2016) ("The NITU will indicate that interim trail use is subject to future restoration of rail service . . . . Additionally, the NITU will provide that if the sponsor intends to terminate interim trail use on all or any portion of the right-of-way covered by the interim trail use agreement, it must send the [STB] a copy of the NITU and request that it be vacated on a specific date."); see also Biery v. United States, 753 F.3d at 1285 ("If the railroad and the [Surface Transportation] Board reach agreement, the land underlying the railway may be transferred to a trail operator (e.g., state, political subdivision, or qualified private organization) for interim trail use." (citing Citizens Against Rails–to–Trails v. Surface Transp. Bd., 267 F.3d 1144, 1149 (D.C. Cir. 2001))); Caldwell v. United States, 57 Fed. Cl. 193, 194 (2003) ("The term railbanking refers to the 'preservation of railroad corridor for future rail use,' while making the corridor available for other activities." (quoting Neb. Trails Council v. Surface Transp. Bd., 120 F.3d 901, 903 n.1 (8th Cir. 1997))), aff'd, 391 F.3d 1226 (Fed. Cir. 2004), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005).

When the NITU extends indefinitely and the corridor is railbanked, the STB retains jurisdiction and abandonment of the railroad corridor is blocked. See 16 U.S.C. § 1247(d) ("[I]n the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such

---

[28] The Trails Act indicates that a trail provider may be "a State, political subdivision, or qualified private organization [that] is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way." 16 U.S.C. § 1247(d).

interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."); see also Rasmuson v. United States, 807 F.3d 1343, 1344 (Fed. Cir. 2015) ("NITUs 'preserve established railroad rights-of-way for future reactivation of rail service' and permit the railroad operator to cease operation without legally abandoning any 'rights-of-way for railroad purposes.'" (quoting 16 U.S.C. § 1247(d))).

> As described by the United States Court of Appeals for the Federal Circuit: Thus, section 8(d) of the Trails Act prevents the operation of state laws that would otherwise come into effect upon abandonment-property laws that would "result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners." Rail Abandonments-Use of Rights-of-Way as Trails, Ex Parte No. 274 (Sub-No. 13), 2 I.C.C. 2d 591, 1986 WL 68617 (1986). A Fifth Amendment taking occurs if the original easement granted to the railroad under state property law is not broad enough to encompass a recreational trail. See Preseault II, 100 F.3d at 1552; see also Toews [v. United States], 376 F.3d at 1376.

Caldwell v. United States, 391 F.3d at 1229; see also Rogers v. United States, 814 F.3d at 1303 ("As we have previously explained in other rails-to-trails cases, a taking, if any, occurs when, pursuant to the Trails Act, the STB issues a Notice of Interim Trail Use ('NITU') to suspend the abandonment of the rail line by a railroad and preserve it for future active railroad use." (citing Barclay v. United States, 443 F.3d at 1373)); BHL Props., LLC v. United States, 135 Fed. Cl. 222, 227-28 (2017) (citing Caldwell v. United States, 391 F.3d at 1233).

The Federal Circuit has established a three-part inquiry to determine takings liability in cases involving the conversion of railroad rights of way for recreational trail use by means of 16 U.S.C. § 1247(d) of the Trails Act, as follows:

> (1) who owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

Preseault v. United States, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (Preseault II). Phrased differently, the Federal Circuit has also indicated:

> the determinative issues for takings liability are (1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate; (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad

purposes, or did they include future use as a public recreational trail (scope of the easement); and (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement).

Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing Preseault II, 100 F.3d at 1533).

According to the United States Court of Appeals for the Federal Circuit, "[i]t is settled law that a Fifth Amendment taking occurs in Rails-to-Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." Ladd v. United States, 630 F.3d 1015, 1019 (Fed. Cir. 2010), reh'g and reh'g en banc denied, 646 F.3d 910 (Fed. Cir. 2011); see also Rogers v. United States, 814 F.3d at 1303; Ellamae Phillips Co. v. United States, 564 F.3d at 1373. "It is the law-created right to own private property, recognized and enforced by the Constitution, legislation, and common law, that gives the owner an historically rooted expectation of compensation." Preseault II, 100 F.3d at 1540. The United States Court of Appeals for the Federal Circuit in Preseault II also indicated

that power includes the power to preempt state-created property rights, including the rights to possession of property when railroad easements terminate. As Justice O'Connor succinctly pointed out in her concurring opinion in Preseault I, however, having and exercising the power of preemption is one thing; being free of the Constitutional obligation to pay just compensation for the state-created rights thus destroyed is another.

Id. at 1537 (citing Preseault I, 494 U.S. at 22).

To determine the nature of the property interest at issue, the court looks to state law. See Rogers v. United States, 814 F.3d at 1305 ("We analyze the property rights of the parties in a rails-to-trails case under the relevant state law."). The United States Court of Appeals for the Federal Circuit, interpreting a takings claim for a railroad right-of-way, stated that, "state law generally creates the property interest in a railroad right-of-way." Barclay v. United States, 443 F.3d at 1374 (citing Preseault I, 494 U.S. at 8, 16). In a footnote on the same page, the United States Court of Appeals for the Federal Circuit repeated, "[i]n Toews v. United States, 376 F.3d 1371 (Fed. Cir. 2004), we reiterated that state law controls the basic issue of whether trail use is beyond the scope of the right-of-way." Barclay v. United States, 443 F.3d at 1374 n.4. "The nature of the interest conveyed is determined according to the law of the state where the conveyance occurred. 'State law creates and defines the scope of the reversionary or other real property interests affected by the ICC's [Interstate Commerce Commission] action pursuant to Section 208 of the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d).'" Chevy Chase Land Co. of Montgomery Cnty. v. United States, 37 Fed. Cl. 545, 565 (1997)

(quoting <u>Preseault I</u>, 494 U.S. at 20 (O'Connor, J., concurring) (citing <u>Ruckelshaus v.</u> <u>Monsanto Co.</u>, 467 U.S. at 1001)), <u>aff'd</u>, 230 F.3d 1375 (Fed. Cir. 1999), <u>reh'g</u> and <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir.), <u>cert.</u> <u>denied</u>, 531 U.S. 957 (2000); <u>see also</u> <u>Whispell Foreign</u> <u>Cars, Inc. v. United States</u>, 97 Fed. Cl. 324, 331 ("Whether an individual has a compensable private property interest is determined by state law."), <u>amended</u> <u>after</u> <u>recons.</u> <u>in part</u>, 100 Fed. Cl. 529 (2011). Moreover, in <u>Ruckelshaus v. Monsanto Co.</u>, 467 U.S. at 1001, the Supreme Court stated, "we are mindful of the basic axiom that '"[p]roperty interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."'" (quoting <u>Webb's Fabulous Pharmacies, Inc. v.</u> <u>Beckwith</u>, 449 U.S. 155, 161 (1980) (quoting <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972))) (omission in original). In <u>Oregon ex rel. State Land Board v. Corvallis Sand &</u> <u>Gravel Co.</u>, 429 U.S. 363 (1977), the United States Supreme Court stated that, "[u]nder our federal system, property ownership is not governed by a general federal law, but rather by the laws of the several States." <u>Id.</u> at 378; <u>see also</u> <u>Davies Warehouse Co. v.</u> <u>Bowles</u>, 321 U.S. 144, 155 (1944) ("The great body of law in this country which controls acquisition, transmission, and transfer of property, and defines the rights of its owners in relation to the state or to private parties, is found in the statutes and decisions of the state.").

As indicated above, the plaintiffs in <u>Arnold</u>, <u>Flying S. Land Co.</u>, and <u>Dawson</u> have moved for partial summary judgment regarding title issues, including fee or easement, as well as adjacency and the centerline presumption. Defendant cross-moved for partial summary judgment in its favor on all of the remaining plaintiffs in each of the three cases. Plaintiffs in all three cases argue that there are no genuine disputes of material fact on the issues presented in the cross-motions and that they are entitled to judgment as a matter of law because they have shown that all plaintiffs owned land adjacent to the railroad corridor on the date the NITU was issued and that the railroad only held easements limited to railroad purposes over the relevant portions of the corridor. Defendant agrees that there are no genuine disputes of material fact, however, it argues that it is entitled to judgment as a matter of law because each plaintiff has failed to establish ownership of the land on the date the NITU was issued, adjacency to the railroad corridor, that the railroad held only an easement for railroad purposes, or ownership of the servient estate underlying any of the portions of the railroad corridor over which the railroad held only an easement. In this decision the court is only deciding title issues, including fee or easement, as well as adjacency and the centerline presumption.

During the briefing period, the parties were ordered to submit brief filings explaining what impact, if any, the STB's extensions of time for NKCR to consummate abandonment has on the claims pending before the court. Plaintiffs in <u>Flying S. Land Co.</u> and <u>Dawson</u> assert that the STB's order does not affect plaintiffs' claims pending before the court and argue that the government's taking began with the STB's issuance of the NITU on October 22, 2015. Defendant asserts that the STB's granting of NKCR's request for an extension of time to consummate abandonment "has no impact on the claims before this court." Defendant argues that:

Plaintiffs' takings claims are premised on the STB's issuance of a NITU and the operation of the Trails Act. The NITU expired on October 16, 2016, and no trail use agreement was reached that would trigger the preemptive effect of the Trails Act. On these facts, the relevant time period for determining whether the United States is liable for a temporary taking in this case begins with the issuance of the NITU on October 22, 2015, and ends with the expiration of that NITU on October 16, 2016.

Plaintiffs in <u>Arnold</u>, however, argue the STB's extensions of time for NKCR to consummate abandonment significantly and prejudicially impacted plaintiffs' pending claims. Plaintiffs contend the STB's approval of NKCR's three requests for an extension of time to consummate abandonment were not ministerial agency actions, but, rather, were government actions within the "agency's exclusive and plenary jurisdictional powers to regulate railroad abandonments." According to the <u>Arnold</u> plaintiffs, "[a] necessary and justifiable consequence of the STB's orders . . . is the extension of the 5th Amendment taking of Plaintiffs' property until March 1, 2018."[29] Plaintiffs in <u>Arnold</u> reason the "5th Amendment taking is continued" because the "STB's jurisdiction to issue further NITUs is retained and Plaintiffs' reversionary rights are blocked."

As discussed above, a taking, if any, occurs under the Trails Act when a railroad right-of-way is converted to interim trail use, thereby blocking reversionary property interests that, under state law, would otherwise vest in the adjacent landowners from so vesting. <u>See</u> <u>Caldwell v. United States</u>, 391 F.3d at 1233 (citing <u>Preseault II</u>, 100 F.3d at 1552); <u>see also</u> <u>Ladd v. United States</u>, 630 F.3d at 1019. The STB's issuance of a NITU "marks the 'finite start' to either temporary or permanent takings claims by halting abandonment and the vesting of state law reversionary interests when issued." <u>Caldwell v. United States</u>, 391 F.3d at 1235; <u>see also</u> <u>Toscano v. United States</u>, 107 Fed. Cl. 179, 184 (2012) (quoting <u>Caldwell v. United States</u>, 391 F.3d at 1228-29). "The issuance of the NITU is the only *government* action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way." <u>Caldwell v. United States</u>, 391 F.3d at 1233-34 (emphasis in original); <u>see also</u> <u>Ladd v. United States</u>, 630 F.3d at 1023 ("The NITU is the government action that prevents landowners from possession of their property unencumbered by the easement."); <u>Barclay v. United States</u>, 443 F.3d 1368, 1374 (Fed. Cir. 2006) ("The barrier to reversion is the NITU, not physical ouster from possession."). A judge of the United States Court of Federal Claims has stated, "[i]n a rails-to-trails takings case, the issue is not whether STB jurisdiction continues or whether the railroad retains a property interest upon the expiration of a NITU, but whether the government has taken any action that forestalls the vesting of the underlying landowners' property rights." <u>Farmers Co-op Co. v. United States</u>, 100 Fed. Cl. 579, 583 (2011) (citation omitted). Once the NITU expires, any original railroad purposes easements remain as burdens on the plaintiffs' property.

---

[29] As noted above, after the plaintiffs had submitted their filing in response to the court's September 18, 2017 Order, the STB granted NKCR an extension of time until March 1, 2019 to consummate abandonment of the railroad corridor.

The issuance of multiple, non-consecutive NITUs may be treated as a single temporary taking, even if there was a gap of time between the issuance of the NITUs, when the subsequently issued NITU serves as an extension of the previously issued NITU. See Barclay v. United States, 443 F.3d at 1376; Farmers Co-op. Co. v. United States, 98 Fed. Cl. 797, 807, recons. denied, 100 Fed. Cl. 579 (2011); Biery v. United States, 99 Fed. Cl. 565, 581 (2011). At least one judge on the United States Court of Federal has found that a temporary taking ends when a railroad "consummates abandonment and plaintiffs' reversionary interests revert to an unencumbered status," or, alternatively, "when the Government shows that it has abandoned the taking, leaving no government claim to jurisdiction or control over the property." See Ladd v. United States, 110 Fed. Cl. 10, 14 (2013).[30] In Ladd v. United States, a railroad requested "numerous extensions" of the time in which it needed to consummate abandonment "before finally allowing the allotted time for abandonment to expire." Id. The railroad had not filed its notice of consummation with the STB as of the date the opinion was issued in Ladd v. United States. Id. The court considered using "the date that the most recent NITU expired" and "the deadline for filing a Notice of Consummation" to measure the duration of a temporary taking, but declined to do so because "new NITU's may be issued after previous NITU's expire" and the deadline to consummate abandonment is "usually extended more than once." Id. at 13-14. The court stated that damages were to be paid to the date of the court's earlier opinion finding the government liable for a temporary taking, with "leave for plaintiffs to return to this court for updated damages on a per diem basis. This would continue until the Railroad files a Notice of Abandonment or defendant shows that it has abandoned the taking." Id. at 15 n.6.

In the above-captioned cases, the STB's issuance of a NITU on October 22, 2015 initiated the government's taking of the plaintiffs' properties. See Caldwell v. United States, 391 F.3d at 1235. Following the expiration of the NITU on October 16, 2016, NKCR and Sunflower had not reached a trail use agreement. At that time, NKCR had the option of exercising its authority to abandon the railroad corridor and filing a notice of consummation, filing a request for an extension of time to consummate abandonment, or retaining the rail line. See 49 C.F.R. § 1152.29(e)(2). Ultimately, as of the date of this opinion, NKCR filed four requests for extensions of time to consummate abandonment, all of which the STB granted, and, currently, NKCR has until March 1, 2019 to consummate its abandonment of the railroad corridor with the STB. The STB's decision to grant NKCR's four requests, however, did not prevent abandonment of the railroad corridor or preclude the vesting of the property owner's reversionary rights under state law. Rather, NKCR's decision not to consummate abandonment and to request four extensions of time for the period in which NKCR has been given to consummate abandonment prevented plaintiffs from receiving their reversionary rights. See Farmers Co-op Co. v. United States, 100 Fed. Cl. at 583-84. As of the date of the issuance of this opinion, the duration of the temporary taking at issue in these cases is unclear and may depend on the actions taken by NKCR and the STB in the future. The duration of the

---

[30] The United States Court of Appeals decision in Ladd v. United States, 630 F.3d 1015, which is discussed above, reversed and remanded to the United States Court of Federal Claims "for a determination of the compensation owed to the appellants for the taking of the Southern Stretch and the Northern Stretch of railway line." Id. at 1025.

temporary taking, however, is not material to the court's resolution of the parties' cross-motions for partial summary judgment currently before the court, and, if necessary, the court will revisit this issue when determining damages.

## Motion to Strike

Plaintiffs in <u>Arnold</u>, <u>Flying S. Land Co.</u>, and <u>Dawson</u> have moved to strike the unofficial chart created by a KDOT employee, and the affidavit of Thad Fowler, another KDOT employee, that defendant attempted to rely on in support its partial motion for summary judgment in all three cases as inadmissible under RCFC 56(c)(2) and RCFC 56(c)(4). Plaintiffs argue that the chart created by the KDOT employee and the affidavit of Mr. Fowler are inadmissible because both exhibits contain improper legal conclusions, contain statements made without personal knowledge by the authors, and lack foundation. Plaintiffs also object to Mr. Fowler being offered as an expert under Federal Rule of Evidence (FRE) 702 (2017) and assert his affidavit contains "explicit contradictions to the parties' stipulations." Additionally, plaintiffs in <u>Dawson</u> assert that the court should strike Mr. Fowler's affidavit because Mr. "Fowler's affidavit contains inadmissible hearsay" and is based upon "unauthenticated documents containing hearsay."

In its response to plaintiffs' motion to strike, defendant does not address whether the chart created by a KDOT employee is admissible in support of its cross-motions for partial summary judgment.[31] Defendant, however, argues that Mr. Fowler's affidavit is admissible. Defendant asserts that the Fowler "affidavit is not offered to prove that the state owned the highway in fee; instead, it shows the documents that KDOT relies on to form the basis of its position regarding title to the highway." Defendant states that Mr. Fowler's "position as the Coordinating Land Surveyor in the Bureau of Right of Way for KDOT involves the 'proper interpretation of legal principles as they apply to land boundaries'" and that he has the "'knowledge, education, and experience to interpret'" the documents attached to his affidavit. Defendant asserts Mr. Fowler's statements are not legal conclusions and notes that the "[c]ourt can certainly review the records presented and reach a different legal conclusion." Additionally, defendant maintains Mr. Fowler's position with KDOT provides the proper foundation for Mr. Fowler to attest to his review of KDOT's records, and that "Mr. Fowler reviewed records in his employer's archives, which are the kind of documents within the purview of his position, so he had personal knowledge of the contents of the documents." Defendant also claims that to Mr. Fowler's affidavit is not based on hearsay because the documents that Mr. Fowler reviewed "are either already in the record or are properly presented and may be considered independently as exceptions to the hearsay rule, because they are records that affect an interest in property under Federal Rule of Evidence ('Fed. R. Evid.') 803(14) and are ancient documents under Fed. R. Evid. 803(16)." Finally, defendant states that Mr. Fowler is not being offered as an expert witness under FRE 702 and alleges the affidavit is not inconsistent with defendant's prior stipulations.

---

[31] The court notes that it appears from the email message included with the chart that the chart was created for this litigation and was created in 2016.

In a motion for summary judgment, a party asserting that a fact is not genuinely disputed must support its contention by citing to materials in the record, such as affidavits, depositions, or stipulations, or by showing that the materials cited do not establish the absence or presence of a genuine dispute of material fact. <u>See</u> RCFC 56(c)(1); <u>see also</u> <u>King v. United States</u>, 130 Fed. Cl. 476, 492 n.27 (2017); <u>Grand Acadian, Inc. v. United States</u>, 87 Fed. Cl. 193, 197 (2007).  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence" under RCFC 56(c)(2). <u>See also</u> <u>King v. United States</u>, 130 Fed. Cl. at 492 n.27.  RCFC 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, present facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The court will not consider an affidavit supporting or opposing a motion for summary judgment that contains statements that are legal conclusions, not based on the affiant's personal knowledge, or would otherwise be inadmissible as evidence. <u>See</u> <u>Found. of Human Understanding v. United States</u>, 88 Fed. Cl. 203, 228 n.19 (2009), <u>aff'd</u>, 614 F.3d 1383 (Fed. Cir. 2010), <u>cert.</u> <u>denied</u>, 562 U.S. 1286 (2011); <u>Adarbe v. United States</u>, 58 Fed. Cl. 707, 712 n.1 (2003); <u>see also</u> <u>Thomas v. United States</u>, 106 Fed. Cl. 467, 476 n.4 (2012) (disregarding an expert witness' affidavit when the affiant outlined his opinion as to whether a plaintiff owned a reversionary interest under Tennessee law).

In its cross-motion for partial summary judgment, defendant offers the chart created by a KDOT employee and the affidavit of Mr. Fowler to support its position that "fee ownership of the land is in the state" and KDOT's position that "it owns the pertinent portion of [K-383] in fee." The chart created by a KDOT employee identifies parcels that are adjacent to a portion of K-383, alleges that some of those parcels were acquired by the state by deed, and purports to state whether KDOT has a fee interest or an easement in each parcel. The determinations in the chart as to whether KDOT owns the parcels in fee are unsupported by the source documentation records. The chart does not contain the deeds that allegedly conveyed the right-of-way for K-383 to KDOT in fee or any other evidence to support defendant's or KDOT's contention that the state of Kansas owns the parcels in fee. Whether legal conclusions or not, as a result of the absence of supporting documents, the court does not consider the conclusions or statements contained in the chart at this time.

Likewise, many of the statements in the affidavit of Mr. Fowler are inadmissible legal conclusions. In the affidavit, Mr. Fowler, who is not being offered as an expert and who does not claim to be a lawyer, declares that "as the Coordinating Land Surveyor, I am responsible for the proper of interpretation of legal principles as they apply to land boundaries," and that he has the "knowledge, education, and experience" to interpret the documents attached to his affidavit. Once again, without explanations of how the attached documents support his conclusions, which as noted above, Mr. Fowler did not create, Mr. Fowler states "[t]hat KDOT has a fee simple absolute ownership interest in a portion of" twenty parcels in Norton County and Phillips County, Kansas. Mr. Fowler's statements offered in his affidavit are unsupported legal conclusions, not subject to cross-examination, and will not be used by the court to resolve the cross-motions for summary judgment. FRE 701 (2017) permits a lay witness to provide opinion testimony, but only if

the testimony is based on relevant facts that the witness perceived, assists the fact finder in understanding the witness' testimony or a matter at issue, and is not based on scientific, technical, or specialized knowledge within the purview of FRE 702. See FRE 701; see also Authentic Apparel Grp., LLC v. United States, 134 Fed. Cl. 78, 81 (2017) ("If a witness's testimony fails to meet any one of the three foundational requirements, it is not admissible." (citing FRE 701)); DataMill, Inc. v. United States, 91 Fed. Cl. 722, 736 (2010) (quoting United States v. Espino, 317 F.3d 788, 797 (8th Cir. 2003) (citations omitted)). Mr. Fowler's assertions that KDOT owns portions of twenty parcels in fee do not explain the circumstances under which K-383 was created because Mr. Fowler does not explain how the attached documents justify his conclusions nor how the determinations about the parcels were reached. Defendant may attempt to call Mr. Fowler as a lay witness or expert witness at a potential trial, but defendant may not rely on Mr. Fowler's affidavit to support its cross-motion for summary judgment. See DataMill, Inc. v. United States, 91 Fed. Cl. at 737-38 (striking a lay witness' declaration as inadmissible under FRE 701 because the declaration was not rationally based on the declarant's perception and did not "aid the court in determining a fact in issue"); Ryco Constr., Inc. v. United States, 55 Fed. Cl. 184, 196 n.6 (2002) (striking portions of a lay witness' declaration that contained legal conclusions). Accordingly, the court has not considered the statements in Mr. Fowler's affidavit in resolving the cross-motions for summary judgment currently before the court.

## Ownership Disputes

The parties have stipulated that plaintiffs in all three cases owned their properties at issue in these cases on the date the NITU was issued with the exception of Flying S. Land Co. plaintiff United Methodist Church. Defendant contends that Flying S. Land Co. plaintiff United Methodist Church is not the proper claimant in the Flying S. Land Co. case because plaintiffs have not provided any evidence that United Methodist Church acquired the property adjacent to the railroad corridor. Plaintiffs respond that, although there is no formal warranty deed for this parcel, there are probate documents indicating that the land was to be devised to United Methodist Church by an individual named Isiah Sharp, should Isiah Sharp's son, Loren Gill Sharp, die without children. Plaintiffs submitted probate documents to establish that Isiah Sharp devised the land adjacent to the railroad corridor to Loren Gill Sharp. The probate documents indicate that, if Loren Gill Sharp should die without children, then the land devised to him should become the property "of the trustees of the Methodist Episcopal Church at Norcatur, Kansas . . . ." Although defendant acknowledges these probate documents, defendant argues that plaintiffs have not provided any evidence to show that United Methodist Church actually acquired the property upon the passing of Loren Gill Sharp or that the United Methodist Church of Norcatur is the successor of the Methodist Episcopal Church at Norcatur. In response, plaintiffs contend the "United Methodist Episcopal Church [of Norcatur, Kansas] became the United Methodist Church" and allege the United Methodist Episcopal Church at Norcatur changed its name to the United Methodist Church. Plaintiffs offer a link to a website in support of their contentions.[32] The website, however, provides the history of the "Rust United Methodist Church" in Oberlin, Ohio, and it does not appear to support

---

[32] Grace Hammond et al., Rust United Methodist Church, OBERLIN (Fall 2003), http://www2.oberlin.edu/external/EOG/AfAmChurches/Rust.htm.

plaintiffs' assertion that the United Methodist Episcopal Church at Norcatur "became" or changed its name to the United Methodist Church.

Although the court finds the probate documents submitted by plaintiffs to be probative and helpful towards resolving the ownership issues pertaining to United Methodist Church, these documents only establish that Isiah Sharp intended to devise property to his son, Loren Gill Sharp, and that, upon the death of Loren Gill Sharp, that property would pass to the Methodist Episcopal Church at Norcatur, Kansas. The court finds, therefore, that there is still a genuine issue of material fact as to whether plaintiff United Methodist Church is the same as or a successor to the Methodist Episcopal Church of Norcatur, Kansas. Accordingly, at this time the court denies plaintiffs' and defendant's motions for partial summary judgment regarding ownership with regard to Flying S. Land Co. plaintiff United Methodist Church, and the issue is deferred to further proceedings. If plaintiff can provide subsequent documentation as to the remaining issues, perhaps the parties can resolve the issue by stipulation and should try to do so

## Adjacency Disputes

The parties have stipulated that all plaintiffs are adjacent to the railroad corridor except the following Kansas landowners: Arnold plaintiffs Rodney and Tonda Ross' parcel 102-03-0-00-00-004.00-0 on the south side of the railroad corridor, Mark and Shayla Bailey, Robert Strevey, and Harold and Kristelle Mizell parcel 107-36-0-10-04-001; Flying S. Land Co. plaintiffs Arnold K. Graham parcel 074-059-31-0-00-00-004.00-0, J & C Partnership, Garth Gebhard, Silverstone & Dake's Canal Inc. parcels 074-056-24-0-20-01-002.00-0 and 074-056-24-0-20-01-001.00-0, Gerry and Theresa Tally parcel 020-141-01-0-30-20-010.00-0, and James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0; and Dawson plaintiffs Conrad C. and Mary R. Cox Trusts No. 1 parcel 740-056-13-0-00-00-005.00-0. In general terms, plaintiffs and defendant state that, under Kansas law, adjacency should be interpreted to mean that a parcel abuts, adjoins, or is "next to" the railroad corridor.[33] Indeed, courts applying the centerline presumption under Kansas law have indicated that a plaintiff claiming the centerline presumption must own property abutting the easement. See Gauger v. State, 815 P.2d 501, 506 (Kan. 1991) ("The rule is thus clear and of long standing that when the owner of real estate conveys land abutting on a railroad right-of-way, and the owner (grantor) owns the servient estate of the railroad right-of-way and the railroad the dominant estate for right-of-way purposes, the grantor passes to the grantee the servient estate, unless the intention not to do so is clearly indicated."); Carpenter v. Fager, 361 P.2d 861, 864 (Kan. 1961) ("It is obvious from the mentioned cases that the highway rule is applicable in a situation where the land abutting a public easement is conveyed."); cf. Sebree v. Bd. of Cty. Comm'rs of the Cty. of Shawnee, 840 P.2d 1125, 1130 (Kan. 1992) (concluding that "'abut' means to touch" when analyzing "the abutting requirement" of a common-law right of access to a public highway claim).

---

[33] The parties have stipulated that all of the plaintiffs' properties that are located in Nebraska are adjacent to the railroad corridor.

K-383

K-383 runs between the following plaintiffs' parcels and the railroad right-of-way: Arnold plaintiffs Rodney and Tonda Ross' parcel on the south side of the railroad corridor 102-03-0-00-00-004.00-0; Flying S. Land Co. plaintiffs Arnold K. Graham parcel 074-059-31-0-00-00-004.00-0, J & C Partnership, Garth Gebhard, and Silverstone & Dake's Canal, Inc. parcels 074-056-24-0-20-01-002.00-0 and 074-056-24-0-20-01-001.00-0; and Dawson plaintiffs Conrad C. and Mary R. Cox Trusts No. 1 parcel 074-056-13-0-00-00-005.00-0. Plaintiffs argue, "[s]ince K383 is a state highway, it is deemed to be an easement under Kansas law and, as a result, the claimants still own to the centerline of the railroad's right-of-way."[34] Plaintiffs submitted to the court condemnation proceedings for a state highway in Phillips County, Kansas, titled "In the Matter of Condemnation of Land for State Highway Purposes." (capitalization in original). Although it appears that the Kansas State Highway Commission acquired the land for a state highway in Phillips County, Kansas, through this condemnation proceeding, it is unclear if that state highway was K-383. Conversely, defendant argues that KDOT owns the highway in fee. In support, defendant pointed to the stricken unofficial chart discussed above sent from a KDOT employee to defendant's counsel via email in support of its position that KDOT owns K-383 in fee. The chart purports to identify parcels that are adjacent to a portion of the highway owned in fee that was acquired by deed in 1933 and 1935. As noted above, defendant does not provide the 1933 or 1935 deeds that allegedly conveyed the right-of-way for K-383 to KDOT in fee or other evidence to support its contention that KDOT owned the land in fee. Defendant has submitted to this court several deeds titled "DEED FOR HIGHWAY PURPOSES," although, as with the condemnation proceeding submitted to the court by plaintiff, it is unclear whether the referenced highway was K-383. (capitalization in original).

If the highway was dedicated at common law, then KDOT holds only an easement and abutting property owners, the plaintiffs in this case, retain fee interest in the right-of-way. If the highway, however, was statutorily dedicated, then the fee vests in the public. The circumstances under which a highway was created determines whether KDOT holds K-383 right-of-way in fee. See Sw. Bell Tel. Co. v. State Corp. Comm'n of Kan., 664 P.2d 798, 801 (Kan. 1983) ("[F]ee title to public highways in Kansas may or may not be governmentally owned, depending upon the circumstances which established the highway."). "The public obtains a mere easement to the land" laid out or dedicated at common law, and "[t]he fee in the land never passes to the public, but remains in the original owner." Comm'rs of Shawnee Co. v. Beckwith, 10 Kan. 603, 607 (1873). In Southwestern Bell Telephone Co. v. State Corp. Commission of Kansas, the Supreme Court of Kansas reaffirmed the statement of law earlier set out in Atchison & N.R. Co. v. Garside, stating "the fee of a street dedicated under what is now K.S.A. [Kan. Stat. Ann.] 12–406 . . . vest[s] 'absolutely' in the county. It has long been established that the fee of

---

[34] Plaintiffs cite to a case in which KDOT obtained an easement over a right-of-way by condemnation. See Carson v. Kansas City, 506 P.2d 1111 (Kan. 1973). Although this case is one instance of eminent domain laws being used to condemn a right-of-way and of providing the state with only an easement, this case does not hold that KDOT acquired an easement over K-383 under Kansas eminent domain law.

a statutorily dedicated street vests in the county . . . ."  Sw. Bell Tel. Co. v. State Corp. Comm'n of Kan., 664 P.2d at 801 (citing Atchison & N.R. Co. v. Garside, 10 Kan. 552, 564-65 (1873)).

Given the evidence in the record, it is unclear whether K-383 was dedicated statutorily or at common law. The records submitted to the court indicate that there is a genuine issue of material fact as to whether K-383 was established pursuant to an easement, or if the State of Kansas owns the land underlying K-383 in fee simple. Therefore, based on the information currently before the court, the court cannot determine whether KDOT holds only an easement over the K-383 right-of-way or whether it holds fee simple interest in the right-of-way.

Additionally, Dawson plaintiffs Conrad C. and Mary R. Cox Trusts No. 1 parcel 074-056-13-0-00-00-005.00-0 argue that the "Cox Trusts own the property underlying K383 by the plain language of their deed." The deed to the Cox Trusts No. 1 property conveys:

An undivided one-half interest in and to all that portion of the Northwest Quarter (NW/4) lying Southeasterly of the Burlington Railroad right-of-way, the North Half of the Southwest Quarter (N/2 SW/4), and the Southeast Quarter of the Southwest Quarter (SE/4 SW/4) South of Burlington Railroad, all in Section Eighteen (18), Township (1) South, Range Nineteen (19) West of the 6th P.M., in Phillips County, Kansas; and

An undivided one-half interest in and to all that portion of the Southeast Quarter (SE/4) lying Southeasterly of the Burlington Railroad right-of-way in Section Thirteen (13), the Southeast Quarter (SE/4) of Section Three, and the Northwest Quarter (NW/4) of Section Four (4), all in Township One (1) South, Range Twenty (20) West of the 6th P.M. in Philips County, Kansas . . . .

together with all its appurtenances and warrant the title to the same, subject to all prior mineral reservations, oil and gas leases, rights-of-way, easements and protective covenants of record, if any.

According to plaintiffs, "the Cox's Trust's property includes K383" because K-383 is south of the railroad corridor. As discussed, the evidence before the court does not demonstrate whether KDOT holds an easement or a fee interest in K-383. Accordingly, the court denies both plaintiffs' and defendant's motions for summary judgment on the issue of adjacency for all parcels adjacent to K-383 and defers the issue for further proceedings.

Miscellaneous Adjacency Issues

W. Opelik Street, which is distinct from K-383, appears to lay between the parcel owned by Arnold plaintiffs Mark and Shayla Bailey and the railroad corridor. N. Decatur Street, which is also distinct from K-383, appears to lay between both the parcel owned

by Arnold plaintiff Robert Strevey and parcel 107-36-0-10-04-001 owned by Arnold plaintiffs Harold and Kristelle Mizell and the railroad corridor. Plaintiffs allege that these properties are adjacent to the railroad corridor and that defendant has failed to prove the existence of these roads, even though the roads are apparent in the maps submitted to the court by defendant. Plaintiffs further allege that the railroad right-of-way pre-existed these roads, and the subsequent construction of the roads did not sever plaintiffs' claim in the land continuing to the railroad right-of-way. Defendant argues that plaintiffs' properties are, in fact, separated from the railroad corridor by W. Opelik Street and N. Decatur Street, and plaintiffs have not provided evidence that these intervening roads are not intervening and are mere easements.

There is a genuine dispute of material fact and no evidence before the court at this time as to whether the public holds fee simple interest in or only an easement over these roads. If the public owned these roads in fee, then these roads keep these plaintiffs' parcels from being adjacent to the railroad right-of-way. If, however, the public only held an easement over these plaintiffs' properties, then plaintiffs own the servient estate in the road and are adjacent to the railroad right-of-way. Accordingly, the court denies both plaintiffs' and defendant's motions for summary judgment on adjacency regarding Arnold plaintiffs Mark and Shayla Bailey parcel 107-36-0-20-13-005, Robert Strevey parcel 107-36-0-10-04-002, and Harold and Kristelle Mizell parcel 107-36-0-10-04-001.

In addition, the parties dispute the adjacency of certain parcels belonging to Flying S. Land Co. plaintiffs Gerry and Theresa Tally and James and Janice Bricker.[35] Plaintiffs contend that Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-20-010.00-0 and James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0 are adjacent to the railroad corridor, and defendant contends that these parcels are not adjacent to the railroad corridor. As discussed above, plaintiffs hired an outside firm to review the adjacency of these properties to the railroad corridor, and plaintiffs try to rely on the firm's findings to argue that Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-20-010.00-0 is adjacent to the railroad corridor. According to the firm's findings, Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-20-010.00-0 "is adjacent to the railroad corridor for approximately 345 feet. There is no road or parcel in between the parcel and the corridor on the eastern 345 feet of the parcel. The western portion of this parcel is blocked by the Church of Christ of Oberlin." Plaintiffs also submit to the court that "[t]he County reported that a former street, South Mill Street, was vacated and the south half of the road sent to the Tally parcel and the north half of the road went to the Church of Christ Parcel." Plaintiffs have not provided any evidence that South Mill Street was, indeed, vacated or who retained the property interest in the street upon this alleged vacation.

---

[35] As noted above, defendant contends that neither Gerry and Theresa Tally parcel 020-141-01-0-30-20-010.00-0 nor James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0 are adjacent to the railroad corridor, but defendant stipulates to the adjacency of the claims for Gerry and Theresa Tally parcel 020-141-01-0-30-19-005.00-0 and James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0 and 020-124-18-0-00-01-001.00-0.

Defendant argues, "[p]laintiffs' own maps show that the claim . . . for parcel number 020-141-01-0-30-20-010.00-0, is not adjacent to the rail line as a strip of land not owned by Plaintiffs Tally separates their property from the rail line." Plaintiffs' map does, indeed, show that no portion of Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-20-010.00-0 abuts the railroad corridor, as there is a strip of unmarked land lying between the portion of Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-20-010.00-0 that is not blocked by the Church of Christ parcel and the railroad corridor. Additionally, plaintiffs' own maps show that the railroad corridor lies north of Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-20-010.00-0. If the road that allegedly lies between Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-20-010.00-0 and the railroad corridor was vacated and the north half of the road "went to the Church of Christ parcel," according to plaintiffs' maps, Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-20-010.00-0 would still not be adjacent to the railroad corridor because the Church of Christ's interest in the vacated road would lie between Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-20-010.00-0 and the railroad corridor. Because the parcel is not adjacent to the railroad corridor, the court grants defendant's motion for summary judgment on the issue of adjacency against <u>Flying S. Land Co.</u> plaintiffs Gerry and Theresa Tally parcel 020-141-01-0-30-20-010.00-0.

With regard to the James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0, plaintiffs submit that "[a] road, South Railroad Street, is in between this parcel and the railroad corridor." Plaintiffs allege that South Railroad Street is a dedicated road that has not been vacated, although they provide little or no evidence to support these conclusory allegations. Plaintiffs allege that, "[u]nder Kansas law, roads are easements and, as a result, the abutting landowners own the underlying fee."[36] Similarly, defendant does not address the presence of the road and simply alleges that this parcel "is not adjacent to the rail line on Plaintiffs' own maps as a strip of land not owned by Plaintiffs Bricker separates their property from the rail line." As discussed above, not all Kansas roads are easements. <u>See Sw. Bell Tel. Co. v. State Corp. Comm'n of Kan.</u>, 664 P.2d at 801. If the road was dedicated at common law, then the public holds only an easement and James and Janice Bricker retain fee interest in the road right-of-way. <u>See id.</u> If the road was statutorily dedicated, however, then the fee vests in the public. <u>Id.</u> Given the absence of evidence in the record, there remains a genuine dispute of material fact as to whether the road between James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0 and the railroad corridor was statutorily dedicated or dedicated at common law. Accordingly, the court denies both plaintiffs' and defendant's motions for summary judgment regarding the James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0.

---

[36] Plaintiffs cite to <u>J & S Building Co. v. Columbian Title & Trust Co.</u>, 563 P.2d 1086 (Kan. App. 1977) in support of their argument that "[u]nder Kansas law, roads are easements . . . ." This citation is not dispositive. Although the decision states, "[a]t common law the dedication of a street or highway for public use does not operate to divest the owner of the adjoining land from which the roadway was taken of the fee title," it does not indicate that all roads in Kansas are easements. <u>Id.</u> at 1090.

## Conveyances

As indicated above, the railroad obtained its interest in the railroad corridor in five ways: condemnation proceedings, the General Railroad Right-of-Way Act of 1875, private "Right of Way Deeds," 1950 deeds from the United States, and deeds from the Lincoln Land Company. The parties have stipulated to the applicable conveyance documents from plaintiffs' predecessors-in-interest to the railroad company's predecessor-in-interest for all remaining plaintiffs except <u>Flying S. Land Co.</u> plaintiffs Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00-0, Oberlin Concrete Co., James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0, 020-124-18-0-00-03-001.00-0, and 020-124-18-0-00-01-001.00-0, Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0, Garth Gebhard, Paul and Tammy Vincent, and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0. Additionally, although not directly addressed in their submissions to the court, the parties appear to disagree about the source conveyance to <u>Flying S. Land Co.</u> plaintiffs Cecil and Lavon Wright and AG Valley Cooperative. While defendant states in its motion for partial summary judgment that the NKCR's predecessor-in-interest obtained its interest in the portion of the railroad corridor adjacent to Cecil and Lavon Wright and the AG Valley Cooperative by private deed, plaintiffs assert that the railroad obtained its interest in the railroad corridor adjacent to these plaintiffs' properties by condemnation and private deeds.

### Lincoln Land Co. Deeds or Condemnation

The parties dispute the applicable source conveyances from plaintiffs' predecessors-in-title to NKCR's predecessor-in-interest for the following <u>Flying S. Land Co.</u> plaintiffs: Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00-0,[37] Oberlin Concrete Co., James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0, 020-124-18-0-00-03-001.00-0, and 020-124-18-0-00-01-001.00-0, Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0, Garth Gebhard, Paul and Tammy Vincent, and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0.[38] Plaintiffs contend that the Burlington, Kansas & Southwestern Railroad Company acquired the right-of-way over these plaintiffs' properties through condemnation proceedings in Decatur and Phillips Counties, Kansas that occurred in 1885. Plaintiffs argue that the condemnation proceedings only provided NKCR's predecessor-in-interest with an easement for railroad purposes. In contrast, defendant contends that the applicable

[37] The parties also dispute the applicable source conveyance document for <u>Flying S. Land Co.</u> plaintiff Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-20-010.00-0. As discussed, the court has granted defendant's motion for summary judgment against <u>Flying S. Land Co.</u> plaintiff Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-20-010.00-0 because it is not adjacent to the railroad corridor.

[38] As discussed above, the court has denied both plaintiffs' and defendant's motions for partial summary judgment for <u>Flying S. Land Co.</u> plaintiffs James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0, Garth Gebhard, and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0 because a genuine issue of material fact exists as to whether plaintiffs' properties are adjacent to a portion of the railroad corridor.

source conveyances for the railroad's interest in the land adjacent to <u>Flying S. Land Co.</u> plaintiffs Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00-0, Oberlin Concrete Co., James and Janice Bricker, Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0, Garth Gebhard, Paul and Tammy Vincent, and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0 are four deeds in which the Lincoln Land Company granted the land to NKCR's predecessor-in-interest in fee. Defendant contends that the applicable source conveyance document for <u>Flying S. Land Co.</u> plaintiffs Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00-0 and Oberlin Concrete Co. is the Lincoln Land Company deed located at Book 4, Page 330 (Lincoln Land Company Deed 4-330), the applicable source conveyance document for James and Janice Bricker is the Lincoln Land Company deed located at Book 4, Page 426 (Lincoln Land Company Deed 4-426), the applicable source conveyance document for Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0 and Garth Gebhard is the Lincoln Land Company deed located at Book M, Page 242 (Lincoln Land Company Deed M-242), and the applicable source conveyance document for Paul and Tammy Vincent is the Lincoln Land Company Deed located at Book K, Page 488 (Lincoln Land Company Deed K-488). Defendant also asserts that the applicable source conveyance documents for <u>Flying S. Land Co.</u> plaintiff Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0 are Lincoln Land Company Deed M-242 and Lincoln Land Company Deed K-488. Defendant alleges that "[a]ssuming that the railroad initially acquired only an easement by condemnation, in these cases, the railroad subsequently acquired fee title to those same lands through the Lincoln Land Company deeds."

In its motion for summary judgment, defendant originally asserted that the grants in the deeds from the Lincoln Land Company did not contain any restrictions, and NKCR's predecessor-in-interest acquired an estate in fee through these conveyance documents. In its notice of partial withdrawal of its motion for summary judgment, defendant states that the Lincoln Land Company deeds relevant to <u>Flying S. Land Co.</u> plaintiffs James and Janice Bricker, Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0, Garth Gebhard, and Paul and Tammy Vincent should be interpreted to convey an easement. Defendant also submitted "a revised chart showing the current status of the disputed title issues," which indicated that the NKCR only possessed an easement over the section of the railroad corridor adjacent to <u>Flying S. Land Co.</u> plaintiffs James and Janice Bricker, Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0, Garth Gebhard, and Paul and Tammy Vincent.[39]   Nevertheless, defendant maintains that the Lincoln Land Company deeds conveyed a fee interest to NKCR's predecessor-in-interest in the land adjacent to <u>Flying S. Land Co.</u> plaintiffs Gerry and Theresa Tally parcel 020-141-01-0-30-

---

[39] Although the parties dispute the applicable source conveyance document for <u>Flying S. Land Co.</u> plaintiffs James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0 and 020-124-18-0-00-01-001.00-0, Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0, and Garth Gebhard, as the court's analysis below demonstrates, regardless of whether the applicable source conveyance document was a Lincoln Land Company deed or condemnation proceedings, the NKCR only obtained an easement in the land adjacent to <u>Flying S. Land Co.</u> plaintiffs James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0 and 020-124-18-0-00-01-001.00-0, Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0, and Garth Gebhard.

19-005.00-0, Oberlin Concrete Co., and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0. Additionally, on February 23, 2018, in response to an order issued by the court, defendant submitted a filing to the court that stated "[a]fter reviewing the prior filings and exhibits, it appears that counsel for the United States accidentally included Plaintiffs [Paul and Tammy] Vincent's property in its November 17, 2017 Notice of Partial Withdrawal of its Cross-Motion for Summary Judgment." (capitalization in original). Defendant also asserted that "the Court should interpret that this deed [Lincoln Land Company Deed] K-488, which is the applicable source deed for both Plaintiffs Vincent's property and Silverstone & Dake's Canal's parcel number 074-056-24-0-20-01-002.00-01, conveyed a fee interest to the railroad." (capitalization in original) (footnote omitted).

<u>Decatur County, Kansas Condemnation Proceedings or Lincoln Land Company Deed 4-430</u>

Plaintiffs assert that the applicable source conveyance document for <u>Flying S. Land Co.</u> plaintiffs Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00-0 and Oberlin Concrete Co. is the Decatur County condemnation proceeding. Conversely, defendant asserts the applicable source conveyance document for <u>Flying S. Land Co.</u> plaintiffs Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00-0 and Oberlin Concrete Co. is Lincoln Land Company Deed 4-330. Defendant correctly notes that a valuation chart created by the ICC in 1917 identifies Lincoln Land Company Deed 4-330 as the applicable source conveyance document for the Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00-0 and Oberlin Concrete Co.'s parcel. Defendant also states that plaintiffs had previously filed a chart titled "Parcel Legal Descriptions Comparison to Lincoln Land Co.," which, according to defendant, "seems to contradict" plaintiffs' position on the applicability of Lincoln Land Company Deed 4-330 to Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00-0 and Oberlin Concrete Co.'s parcel. In plaintiffs' "Parcel Legal Descriptions Comparison to Lincoln Land Co." chart, plaintiffs state that Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00-0 and Oberlin Concrete Co.'s parcel are "on the south side of the former corridor and adjacent to the legal description in the Lincoln Land Company deed. The Lincoln Land Company deeds lots and blocks match with the valuation maps parcel ID numbers, which matches the maps provided by plaintiffs." In response, plaintiffs assert that the Lincoln Land Company Deed 4-330 "does not involve the railroad right-of-way at all and only applies to surrounding lots." Plaintiffs also assert that "it is obvious that the condemnations do apply, even if partially because the Lincoln Land Company deed is for lots and does not cover the entire condemnation area."

The purpose of the Decatur County condemnation proceeding, which occurred in 1885, was "to lay out a [illegible] and Right of Way for the Burlington Kansas and Southwestern Railroad Company in Decatur County Kansas." (capitalization in original). Plaintiffs fail to cite to specific portions of the Decatur County condemnation proceeding to support their position that the Decatur County condemnation proceeding was the applicable source conveyance document. The Decatur County condemnation proceeding, however, does appear to include legal descriptions of parcels that belonged

to the Gerry N. and Theresa M. Tally's predecessor-in-title and Oberlin Concrete Co.'s predecessor-in-title.

As plaintiffs acknowledge in their "Parcel Legal Descriptions Comparison to Lincoln Land Co." chart, however, the ICC valuation chart does identify Lincoln Land Company Deed 4-330 as the applicable source conveyance document for the sections of the railroad corridor adjacent the Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00-0 and Oberlin Concrete Co.'s parcel. The pertinent portion of Lincoln Land Company Deed 4-330 provides:

> In consideration of the Payment of Seventeen hundred and Fifty (1750) Dollars. The Lincoln Land Company hereby sells and conveys to The Burlington Kansas and South Western Railroad Company the following described Real Estate situated in the County of Decatur and State of Kansas to wit:

> Lot Nos. Eleven (11) and Twelve (12) in Block No. Twelve (12); Lot Nos. Twenty one (21), Twenty two (22), Twenty three (23), Twenty four (24), Thirty Five (35) and Thirty-six (36) in Block No. Thirteen (13); Lot Nos. Thirty three (33), Thirty four (34), Thirty five (35) and Thirty-six (36) in Block no. Fourteen (14); Lot nos. One (1), Two (2), Six and Seven (7) in Block no. Twenty one (21); Lot Nos. One (1), Two (2), Three (3), Four (4), Five (5), Six (6), Seven (7), Eight (8), Eleven (11), Twelve (12), Thirteen (13), Fifteen (15), Sixteen (16), Seventeen (17) and Eighteen (18) in Block No. Twenty two (22); Lot nos. One (1), Two (2), Three (3), Nine (9), Ten (10), Eleven (11), Twelve (12), Thirteen (13) and Fourteen (14) in Block no. Twenty three (23); Lot nos. One (1), Two (2), Three (3), Four (4), Five (5), Six (6), Seven (7), Eight (8) and Ten (10) in Block No. Twenty four (24); Lot Nos. One (1), Two (2), Three (3), Four (4), Five (5), Six (6), Seven (7), Eight (8), Nine and Ten (10) in Block no. Twenty five (25); Lot nos. One (1), Three (3) and Five (5) in Block No. Twenty six (26); all in the city of Oberlin, also the South one hundred (100) feet of commercial place of said City according to the recorded plat thereof.

Neither party, however, supports their position regarding the applicability of Lincoln Land Company Deed 4-330 with citation to a map that clearly divides the railroad corridor into lots and blocks in a manner that is similar to the language used in the granting clause contained in Lincoln Land Company Deed 4-330. The court, therefore, is unable at this time to determine from the evidence before the court whether Lincoln Land Company Deed 4-330 conveyed the entire railroad corridor to NKCR's predecessor-in-interest, or, as plaintiff asserts, whether Lincoln Land Company Deed 4-330 only conveyed certain lots within the railroad corridor to NKCR's predecessor-in-interest. As a result, there is a genuine dispute of material fact as to whether the Decatur County condemnation proceeding or Lincoln Land Company Deed 4-330 is the applicable source conveyance document for the sections of the railroad corridor adjacent to Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00-0 and Oberlin Concrete Co.'s parcel.

Accordingly, the court denies both plaintiffs' and defendant's motions for partial summary judgment for <u>Flying S. Land Co.</u> plaintiffs Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00-0 and Oberlin Concrete Co. parcel 020-141-01-0-30-19-001.00-0.

<u>Phillips County, Kansas Condemnation Proceedings, Lincoln Land Company Deed M-242, or Lincoln Land Company Deed K-488</u>

Additionally, the parties dispute the applicable source conveyance document for <u>Flying S. Land Co.</u> plaintiffs Paul and Tammy Vincent and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0. Plaintiffs contend that NKCR's predecessor-in-interest acquired its interest in the railroad corridor adjacent to Paul and Tammy Vincent and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0 through condemnation proceedings in Phillips County, Kansas. Plaintiffs also assert that the deed defendant identifies as the applicable source conveyance document, Lincoln Land Company Deed K-488, "is not actually the applicable deed because the Lincoln Land Company issued a correcting deed in 1886, Book M, Page 242, which 'take(s) the place of' the deed dated June 30, 1885, located at Book K, Page 488." Defendant, however, argues that Lincoln Land Company Deed K-488 is the applicable source conveyance document for Paul and Tammy Vincent and "for most of claim 27.A [Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0]" because the ICC "valuation schedule does not indicate that one deed replaced the other here." Defendant also states that it has "identified a portion of claim 27.A [Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0] is closest [sic] to the Lincoln Land Co. deed recorded at Book M, Page 242, but this property is not adjacent to the railroad corridor because of the intervening state highway, K-383."[40] Defendant notes that the ICC valuation chart states that the "[d]eed [is] not in file" for the section of the railroad corridor adjacent to Silverstone & Dake's Canal parcel 074-056-24-0-20-01-002.00-0. Defendant, however, states that the next four parcels on the ICC valuation chart identify Lincoln Land Company Deed K-488 as the applicable source conveyance document, which, according to defendant, "clearly indicates it [Lincoln Land Company Deed K-488] is a different deed than the one that was corrected." Defendant also argues that, although the ICC valuation chart states the Lincoln Land Company Deed M-242 "is correcting and taking the place of a deed dated June 30, 1885, this reference could easily refer to a different document that was not recorded." Additionally, defendant argues that Lincoln Land Company Deed K-488 and Lincoln Land Company Deed M-242 "cover different legal descriptions."

The Phillips County condemnation proceeding was filed in 1885 for "laying off right of way . . . for the Burlington, Kansas and South Western Rail Road." Plaintiffs correctly note the Phillips County condemnation proceeding appears to condemn land for railroad

---

[40] In its February 23, 2018 filing, defendant states that the "United States notes that Lincoln Land Company deed M-242 covers approximately one-quarter of the relevant railroad corridor across Highway [K-]383, which separates this parcel [Silverstone & Dake's Canal's parcel 074-056-24-0-20-01-002.00-0] from the rail line. The other 75% of the railroad corridor is contained in Lincoln Land Company deed K-488." (internal references omitted).

purposes beginning in the northeast quarter of Section Six, Township One, Range Eighteen West through the southwest quarter of Section Thirty-One, Township One, Range Twenty West. Plaintiffs, once again, fail to cite to specific sections of the Phillips County condemnation proceeding to support plaintiffs' claim that the applicable source conveyance document for Paul and Tammy Vincent and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0 is the Phillips County condemnation proceeding, which does not appear to include a legal description matching the legal description of either Paul and Tammy Vincent's parcel or Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0. Consequently, it is unclear whether the Phillips County condemnation proceeding applies to the section of the railroad corridor adjacent to Flying S. Land Co. plaintiffs Paul and Tammy Vincent and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0.

Lincoln Company Deed K-488 was executed on June 30, 1885 and conveyed a tract of land to the Burlington, Kansas & Southwestern Railroad Company "for it use [sic] as Depot grounds at said town of Long Island," which included land "[c]ommencing at a point in the East line of Atchinson Avenue in the town of Long in said [Phillips] County, extended . . . to a point in the South West 1/4 of the North West 1/4 of section no. Twenty four (24) in Township No. one (1) South of Range no. Twenty (20) West . . . ."[41] (capitalization in parties' original joint transcription). Plaintiffs correctly state in their "Parcel Legal Descriptions Comparison to Lincoln Land Co." chart that the legal description for Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0 "appears to match the boundary legal description listed in" the legal description of Lincoln Land Company Deed K-488.[42] The legal description contained in

---

[41] The parties' joint transcription of Lincoln Land Company Deed K-488 provides "In Witness Whereof the President of the said Lincoln Land Company has herewith set his hand and affixed the seal of the company this this 30th day of June 1883." (capitalization in parties' original joint transcription). The parties, however, both state in their partial cross-motions that Lincoln Land Company Deed K-488 was executed on June 30, 1885, and the ICC valuation chart indicates that Lincoln Land Company Deed K-488 was executed on June 30, 1885. The copy of Lincoln Land Company Deed K-488 that the parties submitted to the court, which is largely illegible, appears to state "this 30th day of June 1885." Thus, the parties' joint transcription of Lincoln Land Company Deed K-488 incorrectly provides that Lincoln Land Company Deed K-488 was executed in 1883.

[42] Plaintiffs state that the legal description of Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0 is:

East Half of Northwest Quarter (E1/2NW1/4) of Sec. 24, Twp 1 South, R.20West AND West Half of the Northeast Quarter (W1/2NE1/4) and all that part of the West Half of the Northwest Quarter (W1/2NW1/4) lying South and East of the Burlington, Kansas, Southwestern Railroad right-of-way and depot grounds, except that paart [sic] included in plat and survey of Original Town of First Addition to Town of Long Island, Kansas, all in Section

the granting clause of Lincoln Land Company Deed K-488 also appears to include Paul and Tammy Vincent's parcel, as the maps submitted to the court by plaintiffs show that Paul and Tammy Vincent's parcel is east of Atchinson Avenue in the direction of Section 24.[43]

The ICC valuation chart, however, also identifies Lincoln Land Company Deed M-242 as an applicable source conveyance document for a section of the railroad corridor and indicates that Lincoln Land Company Deed M-242 was "made to correct error in deed dated 6/30/85 from same Grantor. Deed not in file." The pertinent portion of Lincoln Land Company Deed M-242 states:

> In consideration of the Payment of One ($1.00) Dollars, the Lincoln Land Company hereby sells and conveys to the Burlington Kansas and South Western Railroad Company all of its right, title and interest in and to the following described real estate situate in Phillips County and State of Kansas to wit: The right of way one hundred feet wide being fifty feet on each side of the center line of the B. K. and S.W. R.R. and commencing at the North East end of the tract of land used by said Railroad Co. as Depot grounds at the town of Long Island in said county and state, which said tract was by deed bearing date June 30, 1885 conveyed by the said Land Co. to said R.R. Co. and from thence running in a North Easterly direction to the East line of the West half of the North West Quarter of section no. Twenty four (24) in Township no. One (1) South of Range no. Twenty 20 West of 6th P.M. Also the right of way as aforesaid beginning a the South West end of the aforesaid Depot grounds and running [illegible] thence in a South westerly direction to the West line of the South East quarter (SE¼) of section no. Twenty three (23) in Tp. No. One (1) South of Range no. Twenty (20) West of the Sixth Principal Meridian.
>
> This deed is made to correct and take the place of a certain other deed bearing date June 30, 1885 and made by the grantor hereof to the grantee hereto the intentions of which was to convey the right of way as above described but in which several errors in describing directions of lines [illegible] were made. This deed being intended to [illegible] [illegible] said former deed, subject to the taxes of the year (1885) and thereafter.

(capitalization and alterations in the parties' original joint transcription).

---

Twenty-Four (24), Township One (1) South, Range Twenty (20) West of the 6th P.M., Phillips County, Kansas.

(capitalization in original).

[43] Plaintiffs state that the legal description of Paul and Tammy Vincent parcel 074-056-23-0-10-01-001.00-0 is "Northeast Quarter (NE/4) of Section Twenty-three (23), Township One (1), South, Range Twenty (20), West of the Sixth (6th) P.M. except irregular tract #2822." (capitalization in original).

47

Lincoln Land Company Deed M-242 indicates that it was issued to correct errors in the legal description contained in a deed that executed on June 30, 1885, which is the date Lincoln Land Company Deed K-488 was executed, between the Lincoln Land Company and the Burlington, Kansas & Southwestern Railroad Company, who were the parties that executed Lincoln Land Company Deed K-488. Lincoln Land Company Deed K-488 conveyed a tract of land to the Burlington, Kansas & Southwestern Railroad Company "for it [sic] use as Depot grounds . . . ." (capitalization in parties' original joint transcription). The pertinent portion of Lincoln Land Company Deed M-242 states that the Lincoln Land Company is conveying a one-hundred foot wide "right of way" to the Burlington, Kansas & Southwestern Railroad Company that extends northeast from "the tract of land used by said Railroad Co. as Depot grounds," to the "East line of the West half of the North West Quarter of section no. Twenty four (24) in Township no. One (1) South of Range no. Twenty 20 West of 6th P.M." (capitalization in parties' original joint transcription). Lincoln Land Company Deed M-242 also conveys a "right of way" beginning at the "South West end of the aforesaid Depot grounds and running [illegible] thence in a South westerly direction to the West line of the South East quarter (SE¼) of section no. Twenty three (23) in Tp. No. One (1) South of Range no. Twenty (20) West . . . ." (capitalization and alterations in parties' original joint transcription). Lincoln Land Company Deed's M-242 reference to the date that Lincoln Land Company Deed K-488 was executed on, to the parties that executed Lincoln Land Company Deed K-488, and to the subject matter conveyed in Lincoln Land Company Deed K-488 indicates that Lincoln Land Company Deed M-242 was "made to correct" errors in Lincoln Land Deed K-488's description of the "right of way[s]" that extend from the depot grounds. Additionally, the legal descriptions contained in Lincoln Land Company Deed M-242 also appear to match the legal descriptions of Paul and Tammy Vincent's parcel and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0.

The parties, however, have not established where "the tract of land used by said Railroad Co. as Depot grounds" ends and where the "right of way[s]" described in Lincoln Land Company Deed M-242 begin. The maps depicting Paul and Tammy Vincent's parcel and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0, which were submitted to the court by plaintiffs and utilized by defendant, appear to show that there are several structures near Paul and Tammy Vincent's parcel and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0 that could have been used as depot grounds. Some of those structures appear to be adjacent to Paul and Tammy Vincent's parcel and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0, but it is unclear whether any of the structures on the maps submitted to the court are the depot grounds referenced in Lincoln Land Company Deed M-242. Consequently, there remains a genuine issue of material fact as to whether the Phillips County condemnation proceeding, Lincoln Land Company Deed K-488, or Lincoln Land Company Deed M-242 conveyed the land adjacent to Paul and Tammy Vincent's parcel and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0 to NKCR's predecessor-in-interest. The court, therefore, denies both plaintiffs' and defendant's motions for partial summary judgment for <u>Flying S. Land Co.</u> Paul and Tammy Vincent parcel 074-056-23-0-10-01-001.00-0 and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0.

**Fee or Easement**

The parties have stipulated that NKCR's predecessor-in-interest obtained only an easement over the portion of the railroad corridor obtained via condemnation proceedings and the General Railroad Right-of-Way Act of 1875. The parties initially disagreed, however, as to whether NKCR's predecessor-in-interest obtained fee interest or an easement over the portions of the railroad corridor it obtained via private "Right of Way" deeds, 1950 deeds from the United States, and the deeds from the Lincoln Land Company. In its notice of partial withdrawal of its cross-motion for summary judgment, defendant stated that "has determined and acknowledges that several of the deeds in this action are similar to the deed in *Jenkins* that the Kansas Supreme Court ruled should be interpreted to convey only an easement because the language implied a railroad use."[44]

Condemnation

The parties have stipulated the following plaintiffs' properties are adjacent to a portion of the railroad corridor obtained by condemnation: <u>Arnold</u> plaintiffs John Arnold and Susan Bolek parcels 107-35-0-00-00-003-00-0, and B & D Farm, LLC parcel 136-14-0-00-00-002-00-0; <u>Flying S. Land Co.</u> plaintiffs Dolores M. Koerperich Revocable Living Trust 020-133-05-0-00-00-004.00-0, Clem Koerperich parcels 020-133-05-0-00-00-003.00-0 and 020-133-08-0-00-00-004.00-0, William C. and Bertha G. Rea parcel 020-135-15-0-00-00-003.00-0, Leo and Carolyn Zodrow 020-122-09-0-00-00-001.00-0, Flying S. Land Company parcels 020-123-08-0-00-00-004.00-0, 020-122-04-0-00-00-002.00-0, and 020-121-01-0-00-00-001.00-0, Flying S. Partnership parcel 020-108-34-0-00-00-003.00-0, Dale and Lenora Soderland parcel 020-123-08-0-00-00-001.00-0, and Clayton and Catherine Cox parcel 074-058-27-0-00-00-002.00-0; and <u>Dawson</u> plaintiffs G & M

---

[44] In <u>Jenkins v. Chicago Pacific Corp.</u>, the plaintiff sought to quiet title to land that was located under an abandoned railroad line. <u>See</u> <u>Jenkins v. Chicago Pac. Corp.</u>, 403 P.3d at 1215. The plaintiff asserted her interest in the land derived from a deed executed by a railroad company in 1886. <u>Id.</u> The Supreme Court of Kansas noted that:

> The 1886 deed shows that the grantors conveyed to the railroad company a strip of land running through a larger collection of parcels the grantors owned. The deed itself reveals that the company had staked and located the railway's proposed route before the conveyance. The deed fixed the strip's location on the grantors' properties as the land on either side of the centerline. It described those portions of the grantors' collection of parcels included in the conveyance as land within a given number of feet of the centerline—both as the centerline passes through a large tract and as that swath crossed parts of city lots and those whole city lots through which the centerline ran.

<u>Id.</u> at 1219. The Supreme Court of Kansas concluded the 1886 deed conveyed an easement because "the deed reflects the property was conveyed as the right of way for the grantee's planned railroad." <u>Id.</u> at 1220.

Properties, LP, Linda J. Tomasch, John E. Bremer, and David G. Bremer parcels 13-209-000-00-30-00 and 13-516-000-00-00-20-00. The parties also have stipulated that the railroad held only an easement over the portion of the right-of-way it obtained via condemnation proceedings in the State of Kansas.[45] Kansas established the right of condemnation for railroad companies in 1868:

> Any duly chartered and organized railway corporation may apply to the board of county commissioners of any county through which such corporation proposes to construct its road, to lay off, along the line of such proposed railroad, as located by such company, a route for such proposed railroad, not exceeding one hundred feet in width . . . a right of way over adjacent lands sufficient to enable such company to construct and repair its roads and stations, and a right to conduct water by aqueducts, and the right of making proper drains.

Kan. Gen. Stat. Ch. 23, § 81 (1868). In Kansas Central Railway Company v. Allen, the Supreme Court of Kansas interpreted this statute to limit any easement a railroad company may obtain via condemnation to railroad purposes, stating:

> [T]he perpetual use of the land condemned shall vest in the railroad company to which it is appropriated for the use of the railroad . . . . Under the law of 1868 a mere easement is only granted . . . . This includes the right to employ the land taken for the purposes of constructing, maintaining, and operating a railroad thereon. Under this right, the company has the free and perfect use of the surface of the land, so far as necessary for all its purposes, and the right to use as much above and below the surface as may be needed.

Kan. Cent. Ry. Co. v. Allen, 22 Kan. 285, 293 (1879); see also Anna F. Nordhus Family Tr. v. United States, 98 Fed. Cl. 331, 336 (2011) ("Under Kansas law, it is clear that railroads exercising statutory powers of condemnation acquired easements in the right-of-way.").

This statute, as interpreted by the Supreme Court of Kansas in Kansas Central Railway Company v. Allen, supports the parties' stipulation that NKCR's predecessor-in-interest obtained only an easement over the portion of the railroad corridor obtained by condemnation because the Supreme Court of Kansas makes clear that "a mere easement only is granted." Id. The Supreme Court of Kansas' interpretation of the statute in Kansas Central Railway Company v. Allen supports plaintiffs' contention that the easement was limited to railroad purposes because it interprets the statute to give a railroad company "the free and perfect use of . . . the land, so far as necessary for all its purposes . . . ." Id. (emphasis added).

---

[45] The portion of the railroad corridor the railroad company's predecessor-in-interest obtained via condemnation is entirely in the State of Kansas. Accordingly, only Kansas state law is applicable to determine whether the condemnation conveyed this portion of the corridor to the railroad company in fee or as an easement.

Accordingly, as the parties have stipulated, NKCR's predecessor-in-interest obtained only an easement over the portion of the railroad corridor obtained via condemnation in Kansas. The parties have stipulated the following plaintiffs' land are adjacent to a portion of the railroad corridor obtained by condemnation: Arnold plaintiffs John Arnold and Susan Bolek parcels 107-35-0-00-00-003-00-0, and B & D Farm, LLC parcel 136-14-0-00-00-002-00-0[46]; Flying S. Land Co. plaintiffs Dolores M. Koerperich Revocable Living Trust 020-133-05-0-00-00-004.00-0, Clem Koerperich parcels 020-133-05-0-00-00-003.00-0 and 020-133-08-0-00-00-004.00-0, William C. and Bertha G. Rea parcel 020-135-15-0-00-00-003.00-0,[47] Leo and Carolyn Zodrow 020-122-09-0-00-00-001.00-0, Flying S. Land Company parcels 020-123-08-0-00-00-004.00-0, 020-122-04-0-00-00-002.00-0, and 020-121-01-0-00-00-001.00-0, Flying S. Partnership parcel 020-108-34-0-00-00-003.00-0, Dale and Lenora Soderland parcel 020-123-08-0-00-00-001.00-0, and Clayton and Catherine Cox parcel 074-058-27-0-00-00-002.00-0; and Dawson plaintiffs G & M Properties,[48] LP, Linda J. Tomasch, John E. Bremer, and David G. Bremer parcels 13-209-000-00-30-00 and 13-516-000-00-00-20-00. The court, therefore, grants Arnold, Flying S. Land Co., and Dawson plaintiffs' motions for partial summary judgment regarding title and adjacency for those plaintiffs who owned property on the date the NITU was issued that was adjacent to a portion of the railroad corridor, which the parties have stipulated was all of the above named plaintiffs, over which NKCR holds only an easement limited to railroad purposes.[49] [50]

General Railroad Right–of–Way Act of 1875

As discussed above, the Burlington, Kansas & Southwestern Railroad Company, NKCR's predecessor-in-interest, acquired a portion of the land needed to construct the railroad corridor via the General Railroad Right–of–Way Act of 1875. The land acquired

---

[46] The court only grants partial summary judgment for the portion of B & D Farm, LLC's parcel obtained by condemnation. The court analyzes the portion of B & D Farm, LLC's parcel obtained by Right of Way deed separately.

[47] The court only grants partial summary judgment for the portion of William C. and Bertha G. Rea's parcel obtained by condemnation. The court analyzes the portion of William C. and Bertha G. Rea's parcel obtained through the General Railroad Right–of–Way Act of 1875 separately.

[48] The court only grants partial summary judgment for the portion of G & M Properties, LP's parcel obtained by condemnation. The court analyzes the portion of G & M Properties, LP's parcel obtained through the Right of Way deed separately.

[49] The court notes that ownership of the land underlying the railroad corridor is only one of the determinative issues for takings liability under the Trails Act. See Ladd v. United States, 630 F.3d at 1019.

[50] See Preseault II, 100 F.3d at 1537 (concluding plaintiffs owned the land underlying the railroad corridor when the railroad company only acquired an easement in the railroad corridor).

through the General Railroad Right–of–Way Act of 1875 includes the following <u>Flying S. Land Co.</u> plaintiffs' properties: William C. and Bertha G. Rea, Leo and Carolyn Zodrow parcel 020-136-13-0-00-00-002.1-0, and GRS Revocable Trust.

In <u>United States v. Brandt</u>, the United States Supreme Court held that the United States Congress only granted railroad companies easements over land obtained via the General Railroad Right-of-Way Act of 1875. <u>United States v. Brandt</u>, 134 S. Ct. at 1268. Because the railroad corridor at issue in <u>United States v. Brandt</u> had been abandoned, the United States Supreme Court did not address the scope of the easement conveyed by the General Railroad Right-of-Way Act of 1875.[51] <u>Id.</u> at 1266.

Defendant does not dispute that the railroad company's predecessor-in-interest obtained only an easement limited to railroad purposes over the portion of the railroad corridor obtained via the General Railroad Right–of–Way Act of 1875. Accordingly, the court grants <u>Flying S. Land Co.</u> plaintiffs' motion for partial summary judgment regarding title and adjacency for William C. and Bertha G. Rea parcel 020-135-15-0-00-00-003.00-0, Leo and Carolyn Zodrow parcels 020-136-13-0-00-00-002.01-0 and 020-122-09-0-00-00-001.00-0, and GRS Revocable Trust parcels 020-113-06-0-00-00-003.00-0, 020-113-06-0-00-00-002.00-0, and 020-108-33-0-00-00-003.00-0, all of whom owned property on the date the NITU was issued that is adjacent to a portion of the railroad corridor over which NKCR holds only an easement limited to railroad purposes.[52]

<u>Right of Way Deeds</u>

The railroad obtained its interest in the railroad corridor, in part, via private "Right of Way" deeds between plaintiffs' predecessors-in-title and the railroad company's predecessor-in-interest. The general language of these Right of Way deeds is consistent from deed to deed. Only the specifics, such as parcel description, grantor, and consideration change from deed to deed. All of the deeds are titled "Right of Way Deed;" all of the deeds convey a "Strip of ground" ranging between 100 to 150 feet in width that are described in relation to the centerline of the railroad; all of the deeds use the language "assigns forever;" all of the deeds permit the railroad to construct and maintain a snow

---

[51] Despite the fact that the United States Supreme Court did not address the scope of the easement conveyed by the 1875 Act in <u>United States v. Brandt</u>, plaintiffs contend that, "the Supreme Court has already ruled that the 1875 Act of Congress conveyed an easement . . . limited to railroad purposes only. . . ." Additionally, a judge of the United States Court of Federal Claims cited <u>United States v. Brandt</u> in a footnote in support of a statement that "the 1875 Act did not provide or suggest that easements granted to railroads under that Act would encompass any additional uses beyond railroad purposes." <u>Geneva Rock Products, Inc. v. United States</u>, 119 Fed. Cl. 581, 585 n.4 (2015), <u>rev'd</u> <u>in part</u> <u>on</u> <u>other</u> <u>grounds</u> <u>sub</u> <u>nom.</u>, <u>Longnecker v. United States</u>, 2016 WL 9445914 (Fed. Cir. Nov. 14, 2016).

[52] <u>See</u> <u>Preseault II</u>, 100 F.3d at 1537 (concluding plaintiffs owned the land underlying the railroad corridor when the railroad company only acquired an easement in the railroad corridor).

fence; and all of the deeds describe the conveyance as a "right of way." Plaintiffs contend that the railroad company holds only an easement limited to railroad purposes over the portions of the railroad corridor obtained via these Right of Way deeds. Defendant originally contended that the railroad company holds fee interest in the portion of the railroad corridor obtained via these Right of Way deeds. Defendant "acknowledges" in its notice of partial withdrawal of its cross-motion for summary judgment that almost all of the Right of Way deeds "should be interpreted to convey only an easement because the language implied a railroad use." Defendant, however, asserts that the private Right of Way deed from A. L. Hicks (Hicks deed), which conveyed to NKCR's predecessor-in-interest the land underlying the railroad corridor adjacent to <u>Flying S. Land Co.</u> plaintiff AG Valley Cooperative, should be interpreted to convey fee simple. Defendant argues the Hicks deed conveyed fee interest to NKCR's predecessor-in-interest because the Hicks deed was executed after the railroad corridor was constructed.

Kansas courts have "uniformly held that railroads do not own fee titles to narrow strips of land taken as a right-of-way, regardless of whether they are taken by condemnation or right-of-way deed." <u>Harvest Queen Mill & Elevator Co. v. Sanders</u>, 370 P.2d 419, 423 (Kan. 1962) (reaffirming the rule established in <u>Abercrombie v. Simmons</u>, 81 P. 208 (Kan. 1905)); <u>see</u> <u>also</u> <u>Jenkins v. Chicago Pac. Corp.</u>, 403 P.3d at 1216-17 ("When a railroad company acquires a strip of land for a right of way it generally takes only an easement. This is the rule whether the strip is acquired by condemnation or deed."). To determine whether a deed conveyed land to a railroad as a right-of-way, Kansas courts first look to the deed itself. <u>Stone v. Haddan</u>, 91 P.3d 1194, 1203-04 (Kan. 2004).

Kansas law holds that, in construing a deed, the first step is to determine whether the deed is ambiguous. <u>Cent. Natural Res., Inc. v. Davis Operating Co.</u>, 201 P.3d 680, 687 (Kan. 2009) (citing <u>Wood River Pipeline Co. v. Willbros Energy Servs. Co.</u>, 738 P.2d 866 (Kan. 1987)). In making this determination, Kansas courts apply "the plain, general, and common meaning of the terms used in the instrument." <u>Id.</u> (citing <u>Johnson v. Johnson</u>, 645 P.2d 911 (Kan. 1982)). "An instrument is ambiguous when the application of pertinent rules of interpretation to the whole 'fails to make certain which one of two or more meanings is conveyed by the words employed by the parties.'" <u>Id.</u> (quoting <u>Wood v. Hatcher</u>, 428 P.2d 799 (Kan. 1967)).

If language in the deed is unambiguous, then the court should not look beyond the four corners of the deed. <u>See</u> <u>Stone v. Haddan</u>, 91 P.3d at 1203. The court should analyze the deed according to the general rule in Kansas "that deeds purporting to convey to railroads a strip, piece, parcel, or tract of land which do not describe or refer to its use or purpose or directly or indirectly limit the estate conveyed are generally construed as passing an estate in fee." <u>Id.</u> at 1204. Therefore, when a deed executed by a railroad company contains express or implied use restrictions, reversionary clauses, or anything indicating that the land is for a right-of-way, the railroad company receives only an easement limited to railroad purposes over that property. <u>See id.</u>; <u>see also</u> <u>Jenkins v. Chi. Pac. Corp.</u>, 403 P.3d at 1217 ("[O]ur caselaw consistently holds that when the source of the railroad company's interest is a deed, the railroad acquires only an easement if the

deed expressly or impliedly conveyed the property for use as a right of way." (citations omitted)); <u>Abercrombie v. Simmons</u>, 81 P. at 211.

Plaintiffs claim that NKCR's predecessor-in-interest obtained only an easement over the portion of the railroad corridor acquired by the Right of Way deeds. Plaintiffs argue that "[a]ll of the deeds are form deeds entitled 'Right-of-way deed' and contain the same 'right-of-way' language in the body of the deed." Therefore, according to plaintiffs, "[a]ll of the deeds at issue clearly refer to and grant a right-of-way for the construction of the railroad and, under the statutory scheme in Kansas, granted easements to the railroad for railroad purposes."

Because the court is able to discern the meaning of the Right of Way deeds from the plain language of the deeds, the Right of Way deeds are unambiguous. The plain language of the Right of Way deeds indicates that the parties to these Right of Way deeds understood the conveyance to be for a railroad right-of-way. Under Kansas law, "[w]hen a railroad company acquires a strip of land for a right of way it generally takes only an easement." <u>Jenkins v. Chi. Pac. Corp.</u>, 403 P.3d at 1216-17; <u>see also</u> <u>Abercrombie v. Simmons</u>, 81 P. at 211. The deeds described the conveyances as a "Strip of ground 100 feet wide it being 50 feet on each side of the center line of the Railroad of said Company." In numerous cases, Kansas courts have found that parties to a conveyance contemplated that the conveyance was for a right-of-way when the conveyance was for a narrow strip of land described in relation to the centerline of the railroad. <u>See</u> <u>Jenkins v. Chi. Pac. Corp.</u>, 403 P.3d at 1216-17; <u>Harvest Queen Mill & Elevator Co. v. Sanders</u>, 370 P.2 at 423; <u>Abercrombie v. Simmons</u>, 81 P. at 209; <u>Atchison, Topeka & Santa Fe Rwy. Co. v. Humberg</u>, 675 P.2d 375, 376 (Kan. App. 1984). In <u>Biery v. United States</u>, the United States Court of Appeals for the Federal Circuit found that, under Kansas law, a deed intended to convey to a railroad company a right-of-way, in part because the deed described the tract of land "in relation to the centerline of the railway . . . ." <u>Biery v. United States</u>, 753 F.3d at 1289. The fact that the Right of Way deeds conveyed narrow strips of land that were described in relation to the centerline of the railroad weighs significantly in favor of the court finding that the parties intended the conveyances to be for a right-of-way.

Additionally, a number of factors considered together lead the court to conclude that the parties intended the conveyances to be for a right-of-way. As mentioned above, the deeds conveyed a narrow strip of ground described in relation to the center line of the railroad. Further, the deeds were labeled "Right of Way" deeds, and the bodies of the instruments describe the conveyance as a "right of way." The use of the term "right of way" in the bodies of the Right of Way deeds at issue in <u>Dawson</u>, <u>Arnold</u>, and <u>Flying S. Land Co.</u> indicates "that the parties expressly, or at a minimum, impliedly, intended to convey or confirm an easement," as was the case in <u>Biery v. United States</u>. <u>See</u> <u>Biery v. United States</u>, 753 F.3d at 1290. Although the deeds state "assigns forever," given the other language in the deeds, this language does not definitively establish that the land was transferred in fee. <u>See</u> <u>Biery v. United States</u>, 753 F.3d at 1280 (applying Kansas law and concluding that a deed that said "right-of-way" in the body of the deed conveyed only an easement to the railroad despite pre-printed language using the words "fee

54

simple"); Jenkins v. Chi. Pac. Corp., 403 P.3d at 1218-19 (determining a deed that conveyed a strip of land to a railroad company and provided the railroad company was "To have and to Hold the Same Together with all and singular tenements, hereditaments and appurtenances Hereunto belonging or in anywise appertaining forever" only conveyed an easement (capitalization in original); Abercrombie v. Simmons, 81 P. at 210 ("The fact that the deed contains covenants of warranty, or that the right acquired is designated as a fee, is not necessarily controlling."); see also Gilman v. Blocks, 235 P.3d 503, 511 (Kan. App. Ct. 2010) (citation omitted) (noting that easements may be granted in perpetuity).

The court also finds defendant's argument that the Hicks deed conveyed fee simple to be unavailing. The Hicks deed provided:

> That A. L. Hicks and Effie L. Hicks . . . in consideration of the sum of One ($1.00) Dollars . . . do hereby grant, bargain, sell and convey unto Chicago, Burlington & Quincy Railroad Company, its successors and assigns, the following described Real Estate, situated in Norton County, State of Kansas, to-wit: A strip of land One Hundred Fifty (150) Feet wide on the northerly side of, and adjoining the northerly side of the present Right of Way of the Rail of said railroad Company, extending over and across the [legal descriptions of lots and sections] the northerly line of the present Right of Way being a line drawn Fifty (50) Feet distant from, parallel to and on the northerly side of the center line of the railroad of said railroad company, as the same is now located and constructed over and across the land above described. To have and to hold the same unto the said railroad company, its successors and assigns forever. And in addition to the Right of Way described above, they hereby grant, for themselves, and their heirs and assign the right to said Railroad Company to erect and maintain a snow fence for the term of four months, each and every year . . . .

Defendant argues the Hicks deed conveyed fee simple to the railroad and contends the deed is similar to the deeds analyzed by the Court of Appeals of Kansas in Schoenberger v. United States, 26 P.3d 700 (Kan. Ct. App. 2000), because the Hicks deed provides that the railroad corridor had already been constructed and conveys a strip of land on the northerly side of a preexisting railroad corridor. Conversely, plaintiffs contend the Hicks deed was a voluntary grant under Kansas law because it granted the railroad a right-of-way for the consideration of one dollar, which, according to plaintiffs, indicates that NKCR's predecessor-in-interest only received an easement limited to railroad purposes.

In Schoenberger v. United States, the Court of Appeals of Kansas found that a warranty deed executed in 1887 and a warranty deed executed in 1888 conveyed fee simple to a railroad company. Schoenberger v. United States, 26 P.3d at 701. Although the Court of Appeals of Kansas did not provide the entire text of 1887 or 1888 deed in its opinion, the Court of Appeals of Kansas did state that the 1887 deed "provided that for consideration, the grantor conveyed the described property to 'Have and to Hold the Same Together with all and singular the tenements, hereditaments, and appurtenances

thereunto belonging or in anywise appertaining *forever*," warranted the property "was 'lawfully seized in [its] own right of an absolute and indefeasible estate,'" and did not contain a reversionary clause. Id. (emphasis and alteration in original). Similarly, the 1888 deed "provided that for consideration, the grantor conveyed the described property 'to have and to hold the same together with all and singular the tenements hereditaments and appurtenances thereunto belonging or in anywise appertaining *forever*,'" warranted the property "was 'lawfully seized in its own right of an absolute and indefeasible estate of inheritance in fee simple,'" and did "not contain any expressed use restriction." Id. (emphasis in original). The court stated "the lack of any express or implied use restriction require[d]" the court to concluded the deeds conveyed fee simple. Id.

The Hicks deed, however, does contain implied restrictions. The Hicks deed is titled as a "RIGHT OF WAY DEED." (capitalization in original). After describing the land being conveyed to the Chicago, Burlington & Quincy Railroad Company, the Hicks deed states "in addition to the Right of Way described above, they hereby grant . . . the right to the said Railroad Company to erect and maintain a snow fence." As discussed, the use of the term "right of way" in the body of a Right of Way deed to describe the land being conveyed indicates "that the parties expressly, or at a minimum, impliedly, intended to convey or confirm an easement." See Biery v. United States, 753 F.3d at 1290. Unlike the deeds at issue in Schoenberger v. United States, in which the Court of Appeals of Kansas stated the absence of "any express or implied restrictions require[d]" the court to find the deeds conveyed easements, the Hicks deed contains at least an implied restriction. See Schoenberger v. United States, 26 P.3d at 701. The court, therefore, finds that the Hicks deed only conveyed an easement to NKCR's predecessor-in-interest the land underlying the section of the railroad corridor that is adjacent to Flying S. Land Co. plaintiff AG Valley Cooperative.

Because it appears from the language of all of the Right of Way deeds that the conveyances in Arnold, Flying S. Land Co., and Dawson were intended as a right-of-way by both parties, the railroad company obtained only an easement over the portions of the railroad corridor obtained by Right of Way deeds. Accordingly, the court grants Arnold, Flying S. Land Co., and Dawson plaintiffs' motions for partial summary judgment regarding title and adjacency for the following plaintiffs who owned property on the date the NITU was issued that is adjacent to a portion of the railroad corridor over which NKCR holds only an easement limited to railroad purposes.[53] The portions of the right-of-way obtained by Right of Way deeds pertain to the following plaintiffs' lands: Arnold plaintiffs B & D Farms, LLC parcel 136-14-0-00-00-002-00-0, H. Drake and Karen Gebhard parcel 069-101-02-0-00-00-002-02-0-01, Cecilia Hillebrand parcels 069-101-02-0-00-00-002-01-0-01, 069-101-02-0-00-00-002-03-0-01, and 069-144-17-0-00-00-002-00-0-01, Jackson Irrevocable Farm Trust parcel 069-30-0-00-00-001-00-0-01, Lee Martin Revocable Trust parcel 135-15-0-00-00-002, Bernice Martin parcel 121-02-0-00-00-004-

---

[53] See Preseault II, 100 F.3d at 1537 (concluding plaintiffs owned the land underlying the railroad corridor when the railroad company only acquired an easement in the railroad corridor).

00-0, Harold and Kristelle Mizell parcel 069-151-01-0-00-00-003-00-0-01,[54] Rodney and Tonda Ross's parcel 069-101-02-0-00-00-001-00-0-01 on northern side of railroad corridor, Ricky Temple parcel 069-067-35-0-00-00-002-00-0-01, L & S Tubbs Family parcel 074-058-28-0-00-00-001-02-0, L.P., John C. Tweed Trust and Joann Tweed Trust parcel 069-143-07-0-00-00-004-00-0-01, Ivan and Cathy Bohl Living Trust parcel 069-151-01-0-00-00-002-00-0-01, and Morlock Children's Trust parcel 069-068-27-0-00-00-003-00-0-01; <u>Flying S. Land Co.</u> plaintiffs Dolores M. Koerperich Revocable Living Trust parcel 020-133-05-0-00-00-001.00-0, Sauvage Gas Service parcel 020-136-13-0-00-00-003.00-0, Flying S. Land Company parcel 020-109-31-0-00-00-001.00-0, Judith E. Nelson parcel 020-122-03-0-00-00-002.00-0, Jonathan and Karen Cozad parcel 020-107-25-0-00-00-001.00-0, Cecil and Lavon Wright parcel 069-151-02-0-00-00-002.00-0-01,[55] AG Valley Cooperative parcel 069-151-02-0-00-00-001.00-0-01, Richard and Robert McChesney parcel 069-143-07-0-00-00-001.00-0-01, Edward Braun parcel 069-144-17-0-00-00-002.00-0-01, Arnold K. Graham, et al. parcel 074-059-31-0-00-00-001.00-0, Jerry G. and Connie K. Cox parcel 074-056-23-0-00-00-003.00-0, Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-02-001.00-0, and Craig E. Ingram Living Trust and Genine L. Ingram Living Trust parcel 074-044-18-0-00-00-002.00-0; and <u>Dawson</u> plaintiffs Conrad C. and Mary R. Cox parcel 74-044-180-00-00-003-00-0,[56] Carol K. Ross and Kay L. Lee parcel 74-059-310-00-00-003-00-0, Shirley Kats Revocable Trust and Derek Kats Revocable Trust parcels 069-104-18-0-00-00-003-00-0-01 and 069-104-19-0-00-00-002-00-0-01, Rosemary L. Mathes parcel 069-132-03-0-00-03-001-00-0-01, Duane R. and Darlene McEwen parcel 069-132-03-0-00-03-00101-0-01, M. Lee and Angela Juenemann parcels 069-143-06-0-00-00-002-00-0-01 and 069-143-07-0-00-00-002-00-0-01, G & M Properties, LP parcel 069-068-34-0-00-00-003-00-0-01, Joe L. Dawson parcel 069-069-29-0-00-00-003-00-0-01, Bruce G. Guinn, Jr. parcel 13-306-020-01-01-80-00, Jason and Travis Dial parcels 069-088-34-0-40-32-003-00-0-01 and 069-088-34-0-40-32-004-00-0-01, Larry L. and Iris L. Smith, trustees of the Larry L. Smith and Iris L. Smith Revocable Living Trust parcel 069-088-34-0-40-32-002-00-0-01, and Lloyd E. and Pamela Y. Edgett parcel 069-088-34-0-30-07-004-00-0-01.

---

[54] As noted above, Harold and Kristelle Mizell own two land parcels at issue in this case. The parties dispute the adjacency of parcel 107-36-0-10-04-001, but the parties do not dispute adjacency for parcel 069-151-01-0-00-00-003-00-0-01. The court grants plaintiffs' partial motion for summary judgment only with regard to parcel 069-151-01-0-00-00-003-00-0-01. As discussed above, parcel 107-36-0-10-04-001 remains in dispute as to adjacency.

[55] As noted above, the parties appear to dispute the source conveyance document pertinent to Cecil and Lavon Wright's and AG Valley Cooperative's property. Regardless of whether the source conveyance to the railroad was through condemnation or a private Right of Way deed, as the analysis above demonstrates, NKCR held an easement under either analysis.

[56] The court only grants partial summary judgment for the portion of Conrad C. and Mary R. Cox parcel 74-044-180-00-00-003-00-0 obtained by Right of Way deed. The court analyzes the portion of Conrad C. and Mary R. Cox's parcel obtained through the 1950 deeds separately.

<u>1950 Deeds</u>

The railroad company's predecessor-in-interest obtained its interest in in sections of the railroad corridor located in Phillips County, Kansas, and Harlan County, Nebraska, in part, via 1950 deeds executed by the United States and the railroad company. The Harlan County, Nebraska, deed reads, "the party of the First Part . . . does by these presents remise, release and quitclaim unto the said party of the Second Part, its successors and assigns, all its right, title and interest in and to the following described property . . . ." After the specific descriptions of the property being conveyed, the Harlan County deed says, "together with all easements appurtenant thereto more particularly described as follows: A perpetual easement in connection with the construction, operation and maintenance of a railroad . . ." and goes on to describe the parcels of land being conveyed that are subject to that easement. Plaintiffs argue that the 1950 deeds between the United States and the railroad company's predecessor-in-interest for land in Harlan County, Nebraska, "conveyed an easement to the railroad which was limited to railroad purposes only." Conversely, defendant argues, "the plain language of the deeds shows the parties' intent to convey the entire interest held by the United States to the railroad."

A Nebraska statute explains the legal approach to deed interpretation in Nebraska:

In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true intent of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law.

Neb. Rev. Stat. § 76-205 (2018); <u>see also</u> <u>Elrod v. Heirs, Devisees, Etc.</u>, 55 N.W.2d 673, 674 (Neb. 1952) ("The court in interpreting a conveyance of real estate is by legislative declaration required to carry into effect the true intent of the parties so far as it can be ascertained from the whole instrument, if not inconsistent with law." (citing Neb. Rev. Stat. § 76-205 (1943)). "In construing a deed, it is the duty of the courts to carry into effect the true intent of the parties as far as it can be ascertained from the entire instrument and as far as that intent is consistent with the rules of law." <u>Antelope Prod. Co. v. Shriners Hosp. for Crippled Children</u>, 464 N.W.2d 159, 161 (Neb. 1991) (citations omitted)); <u>see also</u> <u>Ottaco Acceptance, Inc. v. Larkin</u>, 733 N.W.2d 539, 549 (Neb. 2007) ("In the construction of a deed, courts will give effect to the intent of the parties." (citing <u>Anson v. Murphy</u>, 32 N.W.2d 271 (Neb. 1948)); <u>Elton Schmidt & Sons Farm Co. v. Kneib</u>, 507 N.W.2d 305, 307 (Neb. Ct. App. 1993) (citation omitted). The plain language of the Harlan County, Nebraska, deed makes clear the parties' intention. The first granting clause in the Harlan County, Nebraska deed quitclaims, without reservation, the land to the railroad company and states, "assigns forever." The deed conveys to the railroad company's predecessor-in-interest fee interest in the land conveyed under the first granting clause. The pieces of property that are not conveyed in fee are conveyed under the second granting clause as "[a] perpetual easement in connection with the construction, operation, and maintenance of a railroad . . . ." The plain language of the Harlan County, Nebraska, deed shows that

the parties intended to convey the first set of parcels of land in fee and the remaining parcels of land as easements limited to railroad purposes.

Neither the Nebraska plaintiff in <u>Flying S. Land Co.</u>, Silverstone & Dake's Canal, Inc. parcels 260014100, 360004300, and 380012500, nor the defendant, has provided evidence indicating whether the portion of the railroad corridor adjacent to <u>Flying S. Land Co.</u> plaintiff Silverstone & Dake's Canal, Inc. parcels 260014100, 360004300, and 380012500 was conveyed to the railroad in fee or easement by the 1950 Harlan County deed. <u>Flying S. Land Co.</u> plaintiff Silverstone & Dake's Canal, Inc. has failed to demonstrate to the court which part of the Harlan County deed is applicable to the portion of the railroad corridor adjacent to its Nebraska property. Because there is a genuine dispute of fact regarding whether the portion of the railroad corridor adjacent to <u>Flying S. Land Co.</u> plaintiff Silverstone & Dake's Canal, Inc. parcels 260014100, 360004300, and 380012500 was conveyed to the railroad by the 1950 deed in fee or easement, the court will not grant either plaintiffs' or defendant's motions for partial summary judgment on this issue at this time for the following plaintiff who owned property in Nebraska on the date of the NITU: <u>Flying S. Land Co.</u> plaintiff Silverstone & Dake's Canal, Inc. parcels 260014100, 360004300, and 380012500.

The deed between the United States and the railroad company's predecessor-in-interest for the property in Phillips County, Kansas, only includes one granting clause, which states: "the party of the First Part . . . does by these presents remise, release and quitclaim unto the side party of the Second Part, its successors and assigns, all its right, title and interest in and to the following described property . . . ." (capitalization in original). The habendum clause reads, "TO HAVE AND TO HOLD the above described premises unto the party of the Second Part, its successors and assigns forever, with all appurtenances thereunto belonging." No part of the 1950 deed for Phillips County, Kansas, deed conveys an easement.

As discussed above, under Kansas law the initial step when construing a deed is to determine whether the deed is ambiguous. <u>Cent. Natural Res., Inc. v. Davis Operating Co.</u>, 201 P.3d at 687 (citing <u>Wood River Pipeline Co. v. Willbros Energy Servs. Co.</u>, 738 P.2d 866). Kansas courts apply "the plain, general, and common meaning of the terms used in the instrument" rule when determining whether a deed is ambiguous. <u>Id.</u> (citing <u>Johnson v. Johnson</u>, 645 P.2d 911). "An instrument is ambiguous when the application of pertinent rules of interpretation to the whole 'fails to make certain which one of two or more meanings is conveyed by the words employed by the parties.'" <u>Id.</u> (quoting <u>Wood v. Hatcher</u>, 428 P.2d 799). If the language of a deed is unambiguous, the court will not look beyond the four corners of the deed. <u>Id.</u>

The plain language of the 1950 Phillips County, Kansas deed makes clear the land is quitclaimed to the railroad company and states, "assigns forever." The 1950 Phillips County, Kansas deed does not contain any restrictions limiting NKCR's predecessor-in-interest's interest in the land to an easement. The 1950 Phillips County, Kansas deed, therefore, conveyed to NKCR's predecessor-in-interest fee interest in the land. <u>See</u> <u>Stone v. Haddan</u>, 91 P.3d at 1204. Accordingly, the court grants defendant's motion for partial

summary judgment to defendant and against the following plaintiffs whose properties are adjacent to the portion of the railroad corridor the railroad company obtained by the 1950 Phillips County, Kansas, land grant with the United States:  Flying S. Land Co. plaintiffs Culbertson Farms, LLC parcel 074-043-07-0-00-00-005.00-0, Perry and Ila Mae Schelling parcel 074-043-07-0-00-00-001.00-0, James Holterman parcel 074-043-07-0-00-00-002.00-0, and Orville and Pauline Holterman Revocable Trust parcel 074-043-06-0-00-00-002.02-0 because the railroad holds fee interest in that portion of the railroad corridor.[57]

Lincoln Land Company Deeds

Plaintiffs and defendant assert that NKCR only possessed an easement in the land underlying the section of the railroad corridor adjacent to Flying S. Land Co. plaintiffs James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0 and 020-124-18-0-00-01-001.00-0,[58] Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0.[59] Defendant alleges that Lincoln Land Company Deed 4-426 conveyed an easement to NKCR's predecessor-in-interest in the section of the railroad corridor adjacent to Flying S. Land Co. plaintiffs James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0 and 020-124-18-0-00-01-001.00-0. Similarly, plaintiffs assert that Lincoln Land Company Deed 4-426 only conveyed "an easement for railroad purposes under Kansas law

---

[57] Dawson plaintiff Conrad C. and Mary R. Cox, trustees of the Conrad C. and Mary C. Cox Trust No. 1, own a parcel in Kansas that is adjacent to a portion of the right-of-way over which the railroad company's predecessor-in-interest obtained its interest in via private Right of Way deeds and is adjacent to a portion of the right-of-way that the railroad company's predecessor-in-interest obtained its interest in via the 1950 Phillips County, Kansas, deed with the United States. The court does not grant defendant's motion for summary judgment regarding this parcel, parcel 74-044-180-00-00-003-00-0, because part of the parcel is adjacent to land over which the railroad holds only an easement. It is important to note for valuation purposes, however, that the railroad did hold fee over the part of the railroad corridor adjacent to this parcel that was obtained via the 1950 Phillips County, Kansas, deed with the United States.

[58] Both plaintiffs and defendant state that NKCR only possessed an easement in the land underlying the section of the railroad corridor adjacent to James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0. As discussed, the court has denied both plaintiffs' and defendant's motion for partial summary judgment for James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0 because a genuine issue of material fact exists regarding the adjacency of James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0.

[59] As discussed, the parties dispute NKCR's predecessor-in-interest obtained its interest in the railroad corridor adjacent to James and Janice Bricker, Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0, and Paul and Tammy Vincent through Lincoln Land Company deeds or condemnation. As the court's analysis demonstrates, regardless of whether the source conveyance to the railroad was through condemnation or a Lincoln Land Company deed, the railroad held only an easement.

because it specifically grants a right-of-way . . . ." Lincoln Land Company Deed 4-426 describes a strip of land and then conveys

> the right of way for said Railroad, being one hundred (100) feet in width, fifty (50) feet on each [side] of the center line of said Railroad and commencing at the Southwest end of the tract of ground herein before described and same being with said center line to its intersection with the west line of north east Quarter of Section No. eighteen (18) aforesaid . . . .

(alteration in the parties' original joint transcription). The Lincoln Land Company Deed 4-426, therefore, conveyed a narrow strip of land measured from the centerline of the railroad as a "right of way for said railroad . . . ." The language limiting the NKCR's predecessor-in-interest's interest in the narrow strip of land to a "right of way" indicates that the Lincoln Land Company Deed 4-426 conveyed an easement limited to railroad purposes in the land underlying the section of the railroad corridor adjacent to Flying S. Land Co. plaintiffs James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0 and 020-124-18-0-00-01-001.00-0. See Jenkins v. Chi. Pac. Corp., 403 P.3d at 1217 ("[O]ur caselaw consistently holds that when the source of the railroad company's interest is a deed, the railroad acquires only an easement if the deed expressly or impliedly conveyed the property for use as a right of way." (citations omitted)); Harvest Queen Mill & Elevator Co. v. Sanders, 370 P.2d at 423.

Additionally, both plaintiffs and defendant allege that Lincoln Land Company Deed M-242 conveyed an easement to NKCR's predecessor-interest in the land adjacent to Flying S. Land Co. plaintiffs Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0. As discussed, Lincoln Land Company Deed M-242 provides:

> In consideration of the Payment of One ($1.00) Dollars, the Lincoln Land Company hereby sells and conveys to the Burlington Kansas and South Western Railroad Company all of its right, title and interest in and to the following described real estate situate in Phillips County and State of Kansas to wit: The right of way one hundred feet wide being fifty feet on each side of the center line of the B. K. and S.W. R.R. and commencing at the North East end of the tract of land used by said Railroad Co. as Depot grounds at the town of Long Island in said county and state, which said tract was by deed bearing date June 30, 1885 conveyed by the said Land Co. to said R.R. Co. and from thence running in a North Easterly direction to the East line of the West half of the North West Quarter of section no. Twenty four (24) in Township no. One (1) South of Range no. Twenty 20 West of 6th P.M. Also the right of way as aforesaid beginning a the South West end of the aforesaid Depot grounds and running [illegible] thence in a South westerly direction to the West line of the South East quarter (SE¼) of section no. Twenty three (23) in Tp. No. One (1) South of Range no. Twenty (20) West of the Sixth Principal Meridian.

Lincoln Land Company Deed M-242 conveys two one-hundred feet wide strips of land which extend in opposite directions from the "tract of land used by said Railroad Co. as Depot grounds . . . ." (capitalization in parties' original joint transcription). Each of the one-hundred feet wide strips of land are referred to as a "right of way." Accordingly, the plain language of Lincoln Land Company Deed M-242 limits NKCR's predecessor-in-interest's interest in the land being conveyed to a right of way, which indicates that NKCR's predecessor-in-interest only obtained an easement in the land adjacent to Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0 and Garth Gebhard. See Jenkins v. Chi. Pac. Corp., 403 P.3d at 1213; Harvest Queen Mill & Elevator Co. v. Sanders, 370 P.2d at 423 (noting that Kansas courts have "uniformly held that railroads do not own fee titles to narrow strips of land taken as a right-of-way, regardless of whether they are taken by condemnation or right-of-way deed").

Therefore, the court grants Flying S. Land Co. plaintiffs' motions for partial summary judgment regarding title and adjacency for the following plaintiffs who owned property on the date the NITU was issued that is adjacent to a portion of the railroad corridor over which NKCR holds only an easement limited to railroad purposes for the following plaintiffs: Flying S. Land Co. plaintiffs James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0 and 020-124-18-0-00-01-001.00-0, and Jerry G. and Connie K. Cox parcel 074-056-23-0-40-02-002.00-0.[60]

Lincoln Land Company Deed 4-424

The parties also dispute whether NKCR held a fee interest or an easement in a section of the railroad corridor that is adjacent to Arnold plaintiffs Edwin and Phyllis Yeater parcels 107-36-0-20-12-007 and 107-36-0-20-12-008. The Edwin and Phyllis Yeater parcels are adjacent to a section of the railroad corridor originally conveyed by the Lincoln Land Company to the Burlington, Kansas & Southwestern Railroad Company via Lincoln Land Company Deed 4-424. Plaintiffs contend that Lincoln Land Company Deed 4-424 conveyed an easement to the Burlington, Kansas & Southwestern Railroad Company because Lincoln Land Company Deed 4-424 conveyed real estate "for the inadequate consideration of $1," which, according to plaintiffs, is a "classic example of a 'voluntary grant'" of real estate to a railroad company. Plaintiffs do not cite any case law indicating that the conveyance of property to a railroad company in exchange for one dollar is a "classic example of a 'voluntary grant'" of real estate to a railroad company, nor do plaintiffs cite any case law indicating that a railroad company cannot acquire a fee interest in land in exchange for one dollar. Plaintiffs also assert that "the deed language conveyed a 'right of way' to parts of an overall right-of-way 100 feet in width, widening to 300 feet as it entered the city of Norcatur, and reducing to 100 feet as the CB&Q left Norcatur." In contrast, defendant contends the NKCR's predecessor-in-interest obtained a fee interest in the land underlying the section of the railroad corridor that is adjacent to Arnold plaintiffs Edwin and Phyllis Yeater parcels 107-36-0-20-12-007 and 107-36-0-20-12-008 because Lincoln Land Company Deed 4-424 did not contain any restrictions limiting the Burlington,

---

[60] See Preseault II, 100 F.3d at 1537 (concluding plaintiffs owned the land underlying the railroad corridor when the railroad company only acquired an easement in the railroad corridor).

Kansas & Southwestern Railroad Company's interest in the railroad corridor to an easement. Moreover, defendant divides the language of Lincoln Land Company Deed 4-424 into two granting clauses. Defendant states that the first granting clause in Lincoln Land Company Deed 4-424 "states 'the Lincoln Land Company hereby sells and conveys to the Burlington, Kansas and Southwestern Railroad Company, all of its right, title and interest in and to the following described real estate in Decatur County'" and then conveys a large parcel "that is north of the northeast corner of lot one in block three in the town of Norcatur." According to defendant, there are no restrictions in the first granting clause that would limit the conveyance contained in the first granting clause of Lincoln Land Company Deed 4-424 to an easement. Defendant contends that the "second granting clause is for a railroad right-of-way for a one-hundred-foot wide strip of land that runs through the northern portion of Section 36, Township 2 South, Range 26 West." Defendant argues that the second granting clause in Lincoln Land Company Deed 4-424 "does not apply to this [the Yeaters'] property." Additionally, the parties have identified Lincoln Land Company Deed 4-424 as the applicable source conveyance document for <u>Arnold</u> plaintiff John Arnold and Susan Bolek parcel 107-36-0-20-02-009-00-0. The parties, however, have stipulated that the NKCR's predecessor-in-interest only obtained an easement in the land underlying the railroad corridor adjacent to <u>Arnold</u> plaintiff John Arnold and Susan Bolek parcel 107-36-0-20-02-009-00-0.

Lincoln Land Company Deed 4-424 is titled "Quit Claim Deed No 2637." The pertinent portion of Lincoln Land Company Deed 4-424 states:

In consideration of the payment of One ($1.00[)], Dollar, The Lincoln Land Company hereby sells and conveys to The Burlington Kansas and South Western Railroad Company, all of its, right, title, and interest in and to the following described real estate in Decatur County, and State of Kansas to wit: Commencing at a point Thirty five & 85/100 35.85 feet North of the North East corner of Lot No One (1) in Block no. three (3) in the town of Norcatur in said County & State, which point is one hundred & fifty (150) feet distant from the center line of the Burlington, Kansas & South Western Railroad, measured at right angles there to, and is also. in the west line of Desota Avenue, said town, produced north; from thence running North one hundred nineteen & 50/100 (119.50/100) feet, to a point fifty (50) feet, distant at right angles from the center line aforesaid; thence north 33 ° 11 [minutes] West One hundred (100) feet; thence west one hundred eighty two & 71/100 (182 71/100) feet to a point one hundred and fifty (150) feet distant from said center line measured at right angles thereto and as the north side thereof; thence south 56 ° 49 [minutes] west, parallel with said Railroad Seventeen hundred eighty one & 69/100 (1781.69) feet; thence South, one hundred nineteen and 50/100 (119.50) feet, to a point fifty (50) feet, distant, at right angles from said Railroad center line; thence South 33 ° 11 [minutes] East one hundred (100) feet, thence East, one hundred eighty two & 71/100 (182.71) feet to a point one hundred & fifty (150) feet, distant from said center line measured at right angles thereto, & on the south side thereof; thence north, 56 ° 49 [minutes] East, parallel with said Rail road, Seventeen

hundred eighty one & 69/100 feet to the place of begining [sic], The West line of Desota Avenue being taken as a meridian from which to measure all angles.

Also conveying to said Railroad Company the right of way for the railroad One hundred feet in width being fifty (50) feet on each side of the center line thereof and commencing at the North East end of the tract of land herein before described and running with said center line to its intersection with the north line of Section No. Thirty six (36) in Township No. Two (2) South, of Range No. Twenty six (26) west, of the Sixth Principal Meridian. Also the right of way as aforesaid, commencing at the South West end of said tract, and running in a South Westerly direction with said Railroad, to intersect the west line of said Section No. Thirty six (36), subject to the taxes of the year – 1885 and thereafter. In Witness Whereof, The President of the Lincoln Land Company has hereunto set his hand, and affixed the seal of the Company this 29th day of February, 1886.

(capitalization and first five alterations in the parties' joint transcription).

Both plaintiffs and defendant, as do the maps submitted by both parties, indicate that the parcels owned by <u>Arnold</u> plaintiffs Edwin and Phyllis Yeater, parcels 107-36-0-20-12-007 and 107-36-0-20-12-008, are located in Section 36, Township 2, Range 26, and are adjacent to the larger, 300 foot wide tract of land conveyed in the first paragraph of the above-quoted language from Lincoln Land Company Deed 4-424. <u>Arnold</u> plaintiffs John Arnold and Susan Bolek parcel 107-36-0-20-02-009.00-0 is also located in Section 36, Township 2, Range 26 and is located to the southwest of the parcels owned by <u>Arnold</u> plaintiffs Edwin and Phyllis Yeater. <u>Arnold</u> plaintiffs John Arnold and Susan Bolek parcel 107-36-0-20-02-009.00-0 is adjacent to the second 100 foot wide strip land of land described in the second paragraph of the above-quoted language in Lincoln Land Company Deed 4-424.

The language of Lincoln Land Company Deed 4-424 is clear and unambiguous, and the court will not look beyond the plain language of Lincoln Land Company Deed 4-424. <u>See</u> <u>Stone v. Haddan</u>, 91 P.3d at 1203. The first above-quoted paragraph of Lincoln Land Company Deed 4-424 indicates that the Lincoln Land Company conveyed to the Burlington, Kansas & Southwestern Railroad Company, in exchange for one dollar, "all of its, right, title, and interest in and to the following described real estate in Decatur County . . . ." Lincoln Land Company Deed 4-424 then conveys a long, 300 foot wide tract of land without indicating the purpose of the 300 foot wide tract of land. In the paragraph immediately following the conveyance of the three-hundred foot wide tract of land, Lincoln Land Company Deed 4-424 states that the Lincoln Land Company is "[a]lso conveying" a one-hundred foot wide "right of way" extending from the north end of the three-hundred tract of land, as well as a one-hundred foot wide "right of way" extending from the south end of the three-hundred foot tract of land.

The first above-quoted paragraph of Lincoln Land Company Deed 4-424 does not contain language expressly or impliedly limiting the NKCR's predecessor-in-interest's interest in the 300 foot wide tract of land to an easement. Indeed, the words "right of way" do not appear until the second above-quoted paragraph of Lincoln Land Company Deed 4-424 when describing the two 100 foot wide strips of land that extend out of the 300 foot wide tract of land. Although the second above-quoted paragraph of Lincoln Land Company Deed 4-424 refers to each of the two 100 foot wide strips of land as a "right of way," the second above-quoted paragraph of Lincoln Land Company Deed 4-424 does not refer to the 300 foot wide tract of land a "right of way;" rather, the second above-quoted paragraph of Lincoln Land Company Deed 4-424 refers to the 300 foot wide tract of land as "the tract of land herein before described" and "said tract . . . ." Because the first above-quoted paragraph of Lincoln Land Company Deed 4-424 did not contain any express or implied restrictions limiting the Burlington, Kansas & Southwestern Railroad Company's interest in the land being conveyed, the Burlington, Kansas & Southwestern Railroad Company, NKCR's predecessor-in-interest, acquired a fee interest in the land adjacent to <u>Arnold</u> plaintiffs Edwin and Phyllis Yeater parcels 107-36-0-20-12-007 and 107-36-0-20-12-008. <u>See</u> <u>Stone v. Haddan</u>, 91 P.3d at 1204 ("The general rule is that deeds purporting to convey to railroads a strip, piece, parcel, or tract of land which do not describe or refer to its use or purpose or directly or indirectly limit the estate conveyed are generally construed as passing an estate in fee."); <u>see</u> <u>also</u> <u>Biery v. United States</u>, 753 F.3d at 1289 (analyzing a deed conveying two tracts of land and determining that the first tract of land was conveyed as an easement and the second tract of land was conveyed in fee because "[t]he second tract of land—lots 168 and 170—was conveyed with no use restrictions, reversionary clause, or anything else limiting its use to a right-of-way" (citing <u>Stone v. Haddan</u>, 91 P.3d at 1203-04). The court, therefore, grants defendant's motion for summary judgment against <u>Arnold</u> plaintiffs Edwin and Phyllis Yeater parcels 107-36-0-20-12-007 and 107-36-0-20-12-008.

NKCR's predecessor-in-interest, however, only obtained an easement in the two 100 foot wide strips of land conveyed in the second above-quoted paragraph of Lincoln Land Company Deed 4-424. Although Lincoln Land Company Deed 4-424 provides that the Lincoln Land Company is "conveying all of its, right, title, and interest in and to the following described real estate in Decatur County," Lincoln Land Company Deed 4-424 refers to each of the two 100 foot wide strips of land as a "right of way." That the two 100 foot wide strip of land are measured from the center line of the railway and are referred to as a "right of way" indicates that the parties intended to only convey an easement in the two 100 foot wide strip of land. <u>See</u> <u>Biery v. United States</u>, 753 F.3d at 1290; <u>Jenkins v. Chi. Pac. Corp.</u>, 403 P.3d at 1217 (citations omitted); <u>Harvest Queen Mill & Elevator Co. v. Sanders</u>, 370 P.2d at 423. Accordingly, NKCR only possessed an easement in the 100 foot "right of way" adjacent to <u>Arnold</u> plaintiff John Arnold and Susan Bolek parcel 107-36-0-20-02-009-00-0. The court grants <u>Arnold</u> plaintiffs' motion for partial summary judgment regarding title and adjacency for the following plaintiffs owned property on the date the NITU was issued that is adjacent to a portion of the railroad corridor over which

NKCR holds only an easement limited to railroad purposes for the following plaintiffs: John Arnold and Susan Bolek parcel 107-36-0-20-02-009-00-0.[61]

## CONCLUSION

The court has reviewed the parties' numerous, and often generalized, arguments regarding each of the plaintiffs in the above-captioned cases. Although there are multiple, unresolved title and adjacency issues, in many instances, the court, not the parties, has identified the problems and the information which remains necessary to resolve the issues of material fact currently in the record before the court. The outstanding issues should in many instances, if not all, be amenable to stipulation by the parties, and the parties, carefully, should review the court's opinion and confer as to how the remaining issues can be addressed.

For the foregoing reasons, the court **GRANTS, in part**, and **DENIES, in part**, Arnold, Flying S. Land Co., and Dawson plaintiffs' motions for partial summary judgment, and the court **GRANTS, in part**, and **DENIES, in part**, defendant's motions for partial summary judgment in Arnold, Flying S . Land Co., and Dawson. In addition to the summary below, the court has attached a chart to this opinion summarizing whether the court grants, in part, or denies, in part, Arnold, Flying S. Land Co., and Dawson plaintiffs' and defendant's motions for partial summary judgment.

The court **GRANTS** defendant's motion for partial summary judgment against Flying S. Land Co. plaintiffs Gerry and Theresa Tally for failure to establish adjacency to the railroad corridor, with regard to Tally parcel 020-141-01-0-30-020-010.00.

The court **GRANTS** defendant's motion for partial summary judgment against Arnold plaintiffs Edwin and Phyllis Yeater parcels 107-36-0-20-12-007 and 107-36-0-20-12-008 and Flying S. Land Co. plaintiffs Culbertson Farms, LLC parcel 074-043-07-0-00-00-005.00-0, Perry and Ila Mae Schelling parcel 074-043-07-0-00-00-001.00-0, James Holterman parcel 074-043-07-0-00-00-002.00-0, and Orville and Pauline Holterman Revocable Trust parcel 074-043-06-0-00-00-002.02-0, because the railroad company holds fee interest in the portion of the railroad corridor adjacent to these plaintiffs' properties.

The court **DENIES** at this time Flying S. Land Co. plaintiffs' partial motion for summary judgment as it relates to whether recreational trail use exceeds the scope of the NKCR's easements and whether NKCR abandoned the railroad corridor under state law.

The court **DENIES** both plaintiffs' and defendant's motions for partial summary judgment regarding Flying S. Land Co. plaintiff United Methodist Church, parcel 020-108-34-0-00-00-005.00-0, because a genuine issue of material fact exists regarding ownership.

---

[61] See Preseault II, 100 F.3d at 1537 (concluding plaintiffs owned the land underlying the railroad corridor when the railroad company only acquired an easement in the railroad corridor).

The court **DENIES** both plaintiffs' and defendant's motions for partial summary judgment against the following plaintiffs because there is a genuine dispute of material fact as to whether these plaintiffs are adjacent to a portion of the railroad corridor: <u>Arnold</u> plaintiffs Rodney and Tonda Ross parcel 102-03-0-00-00-004.00-0, Mark and Shayla Bailey parcel 107-36-0-20-13-005, Robert Strevey parcel 000-107-36-0-10-04-002, and Harold and Kristelle Mizell parcel 107-36-0-10-04-001; <u>Flying S. Land Co.</u> plaintiffs Arnold K. Graham parcel 074-59-31-0-00-00-004.00-0, James and Janice Bricker parcel 020-124-18-0-00-03-001.00-0, J & C Partnership parcel 074-058-27-0-00-00-001.00-0, Garth Gebhard parcel 074-056-23-0-40-07-009.00-0, and Silverstone & Dake's Canal, Inc. parcels 074-056-24-0-20-01-002.00-0 and 074-056-24-0-20-01-001.00-0; and <u>Dawson</u> plaintiffs Conrad C. and Mary R. Cox Trusts No. 1 parcel 740-056-130-00-00-005.00-0.

There is a genuine dispute of material fact regarding the applicable conveyance from certain <u>Arnold</u> and <u>Flying S. Land Co.</u> plaintiffs' predecessors-in-interest to the railroad company. Accordingly, the court **DENIES** both plaintiffs' and defendant's motions for partial summary judgment for the following plaintiffs: <u>Flying S. Land Co.</u> plaintiffs Gerry N. and Theresa M. Tally parcel 020-141-01-0-30-19-005.00, Oberlin Concrete Co. parcel 020-141-01-0-30-19-001.00-0, Paul and Tammy Vincent parcel 074-056-23-0-10-01-001.00-0, and Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-01-002.00-0.

There is a genuine dispute of material fact as to whether the railroad corridor is adjacent to the following plaintiff's property, which the railroad obtained by the 1950 Harlan County, Nebraska, deed, was held by the railroad company in fee. Accordingly, the court **DENIES** both plaintiffs' and defendant's motions for partial summary judgment for the <u>Flying S. Land Co.</u> plaintiff Silverstone & Dake's Canal, Inc. parcels 260014100, 360004300, and 380012500.

The court **GRANTS** plaintiffs' motions for partial summary judgment that the following plaintiffs owned land on the date the NITU was issued, that the land is adjacent to a portion of the railroad corridor affected by the NITU, and that the railroad company held only an easement limited to railroad purposes over the portion of the railroad corridor adjacent to these plaintiffs' properties: <u>Arnold</u> plaintiffs John Arnold and Susan Bolek parcels 107-35-0-00-00-003-00-0 and 107-36-0-20-02-009-00-0, B&D Farm, LLC parcel 136-14-0-00-00-002-00-0, Rodney and Tonda Ross's parcel 069-101-02-0-00-00-001-00-0-01, H. Drake and Karen Gebhard parcel 069-101-02-0-00-00-002-02-0-01, Cecilia Hillebrand parcels 069-101-02-0-00-00-002-01-0-01, 069-101-02-0-00-00-002-03-0-01, and 069-144-17-0-00-00-002-00-0-01, Jackson Irrevocable Farm Trust parcel 069-30-0-00-00-001-00-0-01, Lee Martin Revocable Trust parcel 135-15-0-00-00-002, Bernice Martin parcel 121-02-0-00-00-004-00-0, Harold and Kristelle Mizell parcel 069-151-01-0-00-00-003-00-0-01, Ricky Temple parcel 069-067-35-0-00-00-002-00-0-01, L & S Tubbs Family, L.P. parcel 074-058-28-0-00-00-001-02-0, John C. and Joann Tweed Trusts parcel 069-143-07-0-00-00-004-00-0-01, Ivan and Cathy Bohl Living Trust parcel 069-151-01-0-00-00-002-00-0-01, and Morlock Children's Living Trust parcel 069-068-27-0-00-00-003-00-0-01; <u>Flying S. Land Co.</u> plaintiffs Dolores M. Koerperich Revocable Living Trust parcels 020-133-05-0-00-00-001.00-0 and 020-133-05-0-00-00-004.00-0, Clem

Koerperich parcels 020-133-05-0-00-00-003.00-0 and 020-133-08-0-00-00-004.00-0, William C. and Bertha G. Rea parcel 020-135-15-0-00-00-003.00-0, Leo and Carolyn Zodrow parcels 020-136-13-0-00-00-002.01-0 and 020-122-09-0-00-00-001.00-0, Sauvage Gas Service parcel 020-136-13-0-00-00-003.00-0, James and Janice Bricker parcels 020-124-18-0-00-09-004.00-0 and 020-124-18-0-00-01-001.00-0, Flying S. Land Company parcels 020-123-08-0-00-00-004.00-0, 020-122-04-0-00-00-002.00-0, 020-121-01-0-00-00-001.00-0, and 020-109-31-0-00-00-001.00-0, Flying S. Partnership parcel 020-108-34-0-00-00-003.00-0, Dale and Lenora Soderland parcel 020-123-08-0-00-00-001.00-0, Judith E. Nelson parcel 020-122-03-0-00-00-002.00-0, GRS Revocable Trust parcels 020-113-06-0-00-00-003.00-0, 020-113-06-0-00-00-002.00-0, and 020-108-33-0-00-00-003.00-0, Jonathan and Karen Cozad parcel 020-107-25-0-00-00-001.00-0, Cecil and Lavon Wright parcel 069-151-02-0-00-00-002.00-0-01, AG Valley Cooperative parcel 069-151-02-0-00-00-001.00-0-01, Richard and Robert McChesney parcel 069-143-07-0-00-00-001.00-0-01, Edward Braun parcel 069-144-17-0-00-00-002.00-0-01, Arnold K. Graham, et al. parcel 074-059-31-0-00-00-001.00-0, Clayton and Catherine Cox parcel 074-058-27-0-00-00-002.00-0, Jerry G. and Connie K. Cox parcel 074-056-23-0-00-00-003.00-0 and 074-056-23-0-40-02-002.00-0, Paul and Tammy Vincent parcel 074-056-23-0-10-01-001.00-0, Silverstone & Dake's Canal, Inc. parcel 074-056-24-0-20-02-001.00-0, and Craig E. Ingram and Genie L. Ingram Living Trust parcel 074-044-18-0-00-00-002.00-0; and Dawson plaintiffs Conrad C. and Mary R. Cox parcel 74-044-180-00-00-0003-00-0,[62] Carol K. Ross and Kay L. Lee parcel 74-059-310-00-00-003-00-0, Shirley and Derek Kats Revocable Trusts parcels 069-104-18-0-00-00-003-00-0-01 and 069-104-19-0-00-00-002-00-0-01, Rosemary L. Mathes, parcel 069-132-03-0-00-03-001-00-0-01, M. Lee and Angela Juenemann parcels 069-143-06-0-00-00-002-00-0-01 and 069-143-07-0-00-00-002-00-0-01, G & M Properties, LP parcel 069-068-34-0-00-00-003-00-0-01, Joe L. Dawson parcel 069-069-29-0-00-00-003-00-0-01, Linda J. Tomasch, John E. Bremer, and David G. Bremer parcels 13-209-000-00-30-00 and 13-516-000-00-00-20-00, Bruce G. Guinn, Jr. parcel 13-306-020-01-01-80-00, Jason and Travis Dial parcels 069-088-34-0-40-32-003-00-0-01 and 069-088-34-0-40-32-004-00-0-01, Larry L. and Iris L. Smith, trustees of the Larry L. Smith and Iris L. Smith Revocable Living Trust parcel 069-088-34-0-40-32-002-00-0-01, Lloyd E. and Pamela Y. Edgett parcel 069-088-34-0-30-07-004-00-0-01, and Duane R. and Darlene McEwen parcel 069-132-03-0-00-03-00101-0-01.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**

---

[62] As noted above, Dawson plaintiffs Conrad C. and Mary R. Cox acquired parcel 74-044-180-00-00-0003-00-0 through the 1950 U.S. Deed and through a private right-of-way deed (Follett Deed). The court only grants partial summary judgment in favor of plaintiffs Conrad C. and Mary R. Cox, trustees of the Conrad Cox Trust No. 1 and the Mary Cox Trust No. 1, for the portion of the railroad corridor that is adjacent to parcel 74-044-180-00-00-0003-00-0 and was acquired through the private right-of-way Follett deed.

| Arnold, et al. v. United States, No. 15-1252L | | | |
|---|---|---|---|
| Claim No. | Parcel No. | Plaintiff | Disposition |
| 1 | 107-35-0-00-00-003-00-0 | Bolek, Susan & Arnold, John | The court grants plaintiffs' motion for partial summary judgment. |
| 1 | 107-36-0-20-02-009-00-0 | Bolek, Susan & Arnold, John | The court grants plaintiffs' motion for partial summary judgment. |
| 2 | 136-14-0-00-00-002-00-0 | B&D Farm, LLC | The court grants plaintiffs' motion for partial summary judgment. |
| 3 | 107-36-0-20-13-005 | Bailey, Mark & Shayla | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 5 | 069-101-02-0-00-00-002-02-0-01 | Gebhard, H. Drake & Karen | The court grants plaintiffs' motion for partial summary judgment. |
| 6 | 069-101-02-0-00-00-002-01-0-01 | Hillebrand, Cecilia (Griffin) | The court grants plaintiffs' motion for partial summary judgment. |
| 6 | 069-101-02-0-00-00-002-03-0-01 | Hillebrand, Cecilia (Griffin) | The court grants plaintiffs' motion for partial summary judgment. |
| 6 | 069-144-17-0-00-00-002-00-0-01 | Hillebrand, Cecilia (Griffin) | The court grants plaintiffs' motion for partial summary judgment. |
| 7 | 069-30-0-00-00-001-00-0-01 | Jackson Irrevocable Farm Trust | The court grants plaintiffs' motion for partial summary judgment. |
| 9 | 135-15-0-00-00-002 | Lee Martin Revocable Trust, Lee Martin | The court grants plaintiffs' motion for partial summary judgment. |
| 10 | 121-02-0-00-00-004-00-0 | Martin, Bernice | The court grants plaintiffs' motion for partial summary judgment. |
| 11 | 069-151-01-0-00-00-003-00-0-01 | Mizell, Harold & Kristelle | The court grants plaintiffs' motion for partial summary judgment. |
| 11 | 107-36-0-10-04-001 | Mizell, Harold & Kristelle | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |

| 12 | 069-101-02-0-00-00-001-00-0-01 | Ross, Rodney & Tonda | The court grants plaintiffs' motion for partial summary judgment. |
|----|---------------------------------|----------------------|-------------------------------------------------------------------|
| 12 | 102-03-0-00-00-004-00-0-00 | Ross, Rodney & Tonda | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 13 | 107-36-0-10-04-002 | Strevey, Robert | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 14 | 069-067-35-0-00-00-002-00-0-01 | Temple, Ricky | The court grants plaintiffs' motion for partial summary judgment. |
| 15 | 074-058-28-0-00-00-001-02-0 | L & S Tubbs Family, L.P. | The court grants plaintiffs' motion for partial summary judgment. |
| 16 | 069-143-07-0-00-00-004-00-0-01 | John C. Tweed Trust & Joann Tweed Trust | The court grants plaintiffs' motion for partial summary judgment. |
| 17 | 107-36-0-20-12-007 | Yeater, Edwin & Phyllis | The court grants defendant's motion for partial summary judgment. |
| 17 | 107-36-0-20-12-008 | Yeater, Edwin & Phyllis | The court grants defendant's motion for partial summary judgment. |
| 18 | 069-151-01-0-00-00-002-00-0-01 | Ivan & Cathy Bohl Living Trust | The court grants plaintiffs' motion for partial summary judgment. |
| 19 | 069-068-27-0-00-00-003-00-0-01 | Morlock Children's Trust | The court grants plaintiffs' motion for partial summary judgment. |

| Flying S. Land Co., et al. v. United States, No. 15-1253L | | | |
|---|---|---|---|
| Claim No. | Parcel No. | Plaintiff | Disposition |
| 1.A | 020-141-01-0-30-20-010.00-0 | Tally, Gerry & Theresa | The court grants defendant's motion for partial summary judgment. |
| 1.B | 020-141-01-0-30-19-005.00-0 | Tally, Gerry & Theresa | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 2 | 020-141-01-0-30-19-001.00-0 | Oberlin Concrete Co. | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 4.A | 020-133-05-0-00-00-001.00-0 | Dolores M. Koerperich Revocable Living Trust | The court grants plaintiffs' motion for partial summary judgment. |
| 4.B | 020-133-05-0-00-00-004.00-0 | Dolores M. Koerperich Revocable Living Trust | The court grants plaintiffs' motion for partial summary judgment. |
| 5.A | 020-133-05-0-00-00-003.00-0 | Koerpich, Clem | The court grants plaintiffs' motion for partial summary judgment. |
| 5.B | 020-133-08-0-00-00-004.00-0 | Koerperich, Clem | The court grants plaintiffs' motion for partial summary judgment. |
| 6 | 020-135-15-0-00-00-003.00-0 | Rea, William C. & Bertha G. | The court grants plaintiffs' motion for partial summary judgment. |
| 7.A | 020-136-13-0-00-00-002.01-0 | Zodrow, Leo & Carolyn | The court grants plaintiffs' motion for partial summary judgment. |
| 7.B | 020-122-09-0-00-00-001.00-0 | Zodrow, Leo & Carolyn | The court grants plaintiffs' motion for partial summary judgment. |
| 8 | 020-136-13-0-00-00-003.00-0 | Sauvage Gas Service, Inc. | The court grants plaintiffs' motion for partial summary judgment. |
| 9.A | 020-124-18-0-00-09-004.00-0 | Bricker, James & Janice | The court grants plaintiffs' motion for partial summary judgment. |
| 9.B | 020-124-18-0-00-03-001.00-0 | Bricker, James & Janice | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |

| 9.C | 020-124-18-0-00-01-001.00-0 | Bricker, James & Janice | The court grants plaintiffs' motion for partial summary judgment. |
|---|---|---|---|
| 10.A | 020-123-08-0-00-00-004.00-0 | Flying S Land Co. | The court grants plaintiffs' motion for partial summary judgment. |
| 10.B | 020-122-04-0-00-00-002.00-0 | Flying S Land Co. | The court grants plaintiffs' motion for partial summary judgment. |
| 10.C | 020-121-01-0-00-00-001.00-0 | Flying S Land Co. | The court grants plaintiffs' motion for partial summary judgment. |
| 10.D | 020-109-31-0-00-00-001.00-0 | Flying S Land Co. | The court grants plaintiffs' motion for partial summary judgment. |
| 10..E | 020-108-34-0-00-00-003.00-0 | Flying S Partnership | The court grants plaintiffs' motion for partial summary judgment. |
| 11 | 020-123-08-0-00-00-001.00-0 | Soderland, Dale & Lenora | The court grants plaintiffs' motion for partial summary judgment. |
| 12 | 020-122-03-0-00-00-002.00-0 | Nelson, Judith E. | The court grants plaintiffs' motion for partial summary judgment. |
| 13.A | 020-113-06-0-00-00-003.00-0 | GRS Revocable Trust | The court grants plaintiffs' motion for partial summary judgment. |
| 13.B | 020-113-06-0-00-00-002.00-0 | GRS Revocable Trust | The court grants plaintiffs' motion for partial summary judgment. |
| 13.C | 020-108-33-0-00-00-003.00-0 | GRS Revocable Trust | The court grants plaintiffs' motion for partial summary judgment. |
| 14 | 020-108-34-0-00-00-005.00-0 | United Methodist Church | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 15 | 020-107-25-0-00-00-001.00-0 | Cozad, Jonathan & Karen | The court grants plaintiffs' motion for partial summary judgment. |
| 16 | 069-151-02-0-00-00-002.00-0-01 | Wright, Cecil & LaVon | The court grants plaintiffs' motion for partial summary judgment. |
| 17 | 069-151-02-0-00-00-001.00-0-01 | AG Valley Cooperative | The court grants plaintiffs' motion for partial summary judgment. |

| 18 | 069-143-07-0-00-00-001.00-0-01 | McChesney, Richard & Robert | The court grants plaintiffs' motion for partial summary judgment. |
|---|---|---|---|
| 19 | 069-144-17-0-00-00-002.00-0-01 | Braun, Edward | The court grants plaintiffs' motion for partial summary judgment. |
| 20.A | 074-059-31-0-00-00-001.00-0 | Arnold K. Graham, et al. | The court grants plaintiffs' motion for partial summary judgment. |
| 20.B | 074-059-31-0-00-00-004.00-0 | Arnold K. Graham | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 22 | 074-058-27-0-00-00-002.00-0 | Cox, Clayton & Catherine | The court grants plaintiffs' motion for partial summary judgment. |
| 23 | 074-058-27-0-00-00-001.00-0 | J&C Partnership | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 24.A | 074-056-23-0-00-00-003.00-0 | Cox, Jerry G. & Connie K. | The court grants plaintiffs' motion for partial summary judgment. |
| 24.B | 074-056-23-0-40-02-002.00-0 | Cox, Jerry G. & Connie K. | The court grants plaintiffs' motion for partial summary judgment. |
| 25 | 074-056-23-0-40-07-009.00-0 | Gebhard, Garth | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 26 | 074-056-23-0-10-01-001.00-0 | Vincent, Paul & Tammy | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 27.A | 074-056-24-0-20-01-002.00-0 | Silverstone & Dake's Canal, Inc. | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 27.B | 074-056-24-0-20-02-001.00-0 | Silverstone & Dake's Canal, Inc. | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |

| 27.C | 074-056-24-0-20-01-001.00-0 | Silverstone & Dake's Canal, Inc. | The court grants plaintiffs' motion for partial summary judgment. |
|---|---|---|---|
| 27.D | 260014100 | Silverstone & Dake's Canal, Inc. | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 27.E | 360004300 | Silverstone & Dake's Canal, Inc. | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 27.F | 380012500 | Silverstone & Dake's Canal, Inc. | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 28 | 074-044-18-0-00-00-002.00-0 | Craig E. Ingram Living Trust & Genine L. Ingram Living Trust | The court grants plaintiffs' motion for partial summary judgment. |
| 29 | 074-043-07-0-00-00-005.00-0 | Culbertson Farms, LLC | The court grants defendant's motion for partial summary judgment. |
| 30 | 074-043-07-0-00-00-001.00-0 | Schelling, Perry & Ila Mae | The court grants defendant's motion for partial summary judgment. |
| 31 | 074-043-07-0-00-00-002.00-0 | Holterman, James | The court grants defendant's motion for partial summary judgment. |
| 32 | 074-043-06-0-00-00-002.02-0 | Orville & Pauline Holterman Revocable Trust | The court grants defendant's motion for partial summary judgment. |

| Dawson, et al. v. United States, No. 15-1268L | | | |
|---|---|---|---|
| **Claim No.** | **Parcel No.** | **Plaintiff** | **Disposition** |
| 6 | 74-044-180-00-00-003-00-0 | Conrad C. Cox & Mary R. Cox, Trustees of the Conrad C. Cox Trust No. 1 and the Mary C. Cox Trust No. 1 | The court grants plaintiffs' motion for partial summary judgment. |
| 6 | 74-056-130-00-00-005-00-0 | Conrad C. Cox & Mary R. Cox, Trustees of the Conrad C. Cox Trust No. 1 and the Mary C. Cox Trust No. 1 | The court denies both plaintiffs' and defendant's motions for partial summary judgment. |
| 8 | 74-059-310-00-00-003-00-0 | Carol K. Ross and Kay L. Lee, Trustees of the Carol K. Ross Trust No. 1 | The court grants plaintiffs' motion for partial summary judgment. |
| 9 | 069-104-18-0-00-00-003-00-0-01 | Shirley Kats Revocable Trust & Derek Kats Revocable Trust | The court grants plaintiffs' motion for partial summary judgment. |
| 9 | 069-104-19-0-00-00-002-00-0-01 | Shirley Kats Revocable Trust & Derek Kats Revocable Trust | The court grants plaintiffs' motion for partial summary judgment. |
| 10 | 069-132-03-0-00-03-001-00-0-01 | Mathes, Rosemary L., and McEwen, Duane and Darlene | The court grants plaintiffs' motion for partial summary judgment. |
| 11 | 069-143-06-0-00-00-002-00-0-01 | M. Lee Juenemann and Angela Juenemann, Trustees of the M. Lee Juenemann Living Trust and Angela Juenemann Living Trust | The court grants plaintiffs' motion for partial summary judgment. |

| 11 | 069-143-07-0-00-00-002-00-0-01 | M. Lee Juenemann and Angela Juenemann, Trustees of the M. Lee Juenemann Living Trust and Angela Juenemann Living Trust | The court grants plaintiffs' motion for partial summary judgment. |
|---|---|---|---|
| 12 | 069-068-34-0-00-00-003-00-0-01 | G & M Properties, LP | The court grants plaintiffs' motion for partial summary judgment. |
| 13 | 069-069-29-0-00-00-003-00-0-01 | Dawson, Joe L. | The court grants plaintiffs' motion for partial summary judgment. |
| 14 | 13-209-000-00-30-00 | Tomasch, Linda J; Bremer, John E.; & Bremer, David G. | The court grants plaintiffs' motion for partial summary judgment. |
| 14 | 13-516-000-00-00-20-00 | Tomasch, Linda J; Bremer, John E.; & Bremer, David G. | The court grants plaintiffs' motion for partial summary judgment. |
| 16 | 13-306-020-01-01-80-00 | Guinn, Bruce G. Jr. | The court grants plaintiffs' motion for partial summary judgment. |
| 17 | 069-088-34-0-40-32-003-00-0-01 | Dial, Jason & Travis | The court grants plaintiffs' motion for partial summary judgment. |
| 17 | 069-088-34-0-40-32-004-00-0-01 | Dial, Jason & Travis | The court grants plaintiffs' motion for partial summary judgment. |
| 18 | 069-088-34-0-40-32-002-00-0-01 | Larry L. Smith & Iris L. Smith, Trustees of the Larry L. Smith and Iris L. Smith Revocable Living Trust | The court grants plaintiffs' motion for partial summary judgment. |
| 19 | 069-088-34-0-30-07-004-00-0-01 | Edgett, Lloyd E. & Pamela Y. | The court grants plaintiffs' motion for partial summary judgment. |
| | 069-132-03-0-00-03-00101-0-01 | McEwen, Duane and Darlene | The court grants plaintiffs' motion for partial summary judgment. |